UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNETT HOLDINGS, INC. d/b/a TMC TRANSPORTATION, INC. and YELLOWSTONE TRUCKING, INC., <br><br> Plaintiffs, <br><br> v <br><br> CERTAIN UNDERWRITERS AT LLOYDS AND THOSE COMPANIES SEVERALLY SUBSCRIBING TO BOEING POLICY NUMBER 509/JC487006, RLI INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, TOKIO MARINE & NICHIDO FIRE INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, ROYAL & SUN ALLIANCE INSURANCE PLC, ST. PAUL FIRE & MARINE INSURANCE COMPANY, MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA, XL SPECIALTY INSURANCE COMPANY, THE BALOISE INSURANCE COMPANY, LTD., HARTFORD FIRE INSURANCE COMPANY, ZURICH GLOBAL CORPORATE, UK LTD., <br><br> Defendants. | CASE NO.: 08 C 1106 (JHL) (NRN) <br> Honorable Judge Lefkow |

**MOTION TO TRANSFER TO THE WESTERN DISTRICT
OF WASHINGTON PURSUANT TO 28 U.S.C.
SECTION 1404(a)**

1

Defendants, Certain Underwriters at Lloyds and those companies severally subscribing to Boeing Policy Number 509/JC487006, Royal & Sun Alliance Insurance plc, RLI Insurance Company, St. Paul Fire & Marine Insurance Company, Great American Insurance Company, Mitsui Sumimoto Insurance Company of America, Tokio Marine & Nichido Fire Insurance Company, XL Specialty Insurance Company, Fireman's Fund Insurance Company, The Baloise Insurance Company, Ltd., Hartford Fire Insurance Company and Zurich Global Corporate, UK Ltd. (hereinafter "Defendants"), do hereby move this Honorable Court for an order: Transferring this action to the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

## MEMORANDUM OF LAW

### INTRODUCTION

There can be no doubt that Plaintiffs have instituted the instant action in Illinois for one reason: to avoid the State of Washington at all costs. In fact, this dispute—until the surprising filing of this complaint for declaratory relief in Illinois—was predictably on a path towards amicable resolution in Washington. This makes sense given the facts of the case. The Boeing Company (hereinafter "Boeing") entered into a "Full Truckload Transportation Contract" (hereinafter the "Boeing-TMC Contract") with Plaintiff TMC Transportation, Inc. (hereinafter "TMC").[1] (Declaration of Todd A. Barton ("Barton Decl."), Exh. A). Pursuant to this agreement, TMC arranged for the shipment of two newly-manufactured Boeing jet engines from a General Electric[2] facility in Ohio to Boeing's facility in Tukwila, Washington. On June 12, 2006, Yellowstone Trucking, Inc. (hereinafter "Yellowstone") dispatched two truckers to pick up

---

[1] As indicated *infra*, this agreement initially was between Boeing and Yellowstone Trucking, Inc. (hereinafter "Yellowstone"). However, effective June 1, 2006, Yellowstone was replaced as the "Service Provider" under the Boeing-TMC Contract by TMC.

[2] General Electric is not a party to this dispute.

2

the jet engines in Ohio. In the early morning of June 13, 2006, the driver of the truck fell asleep at the wheel, careened into a ditch and caused severe damage to both jet engines. The defendant insurance companies collectively paid out $5,750,000.00 to Boeing as a result of this accident, and now seek to recover that sum in subrogation from TMC and Yellowstone as the carriers. (Barton Decl., Exh. B).

Washington is the proper forum for this litigation. Washington is where the jet engine at issue was headed, Washington is where the Commercial Airplanes Division of Boeing is located, the parties in this case contractually agreed that the law of Washington should govern any disputes arising from their contract, and even the truckers who were hauling the jet engine at issue lived a mere thirty miles from Washington's border in Oregon City, Oregon. The parties in this case had even scheduled for some months a mediation in Washington, through the auspices of the American Arbitration Association (hereinafter "AAA") with the retired Chief Justice of the Washington Supreme Court, the Honorable Robert F. Utter, for March 4, 2008, to consider the issue of Plaintiff TMC Transportation, Inc.'s (hereinafter "TMC") contractual liability. (Barton Decl., Exh. H) In fact, the only conclusion Defendants can reach as to why this action has been filed in Illinois is that Plaintiffs want to avoid a Washington forum.

Perhaps Plaintiffs are wary of the law in Washington and think that an Illinois forum will improve their chances at trial. As is evident from their Complaint, Plaintiffs hope to enforce a $2.50 per pound limitation of liability in this case. However, it is well established under the law of Washington—the law contractually agreed to by Boeing and TMC (Barton Decl., Exh. A)—as a matter of public policy that limitations on liability will not apply if the actor in question has engaged in gross negligence. *Reeder v. Western Gas & Power Co.*, 256 P.2d 825, 830 (Wash. 1953) (en banc) (limitation on liability for gross negligence will not be

3

enforced); *VodoPest v. MacGregor*, 913 P.2d 779, 783 (Wash. 1996) (contractual exculpatory clauses will not be enforced as to acts which fall "greatly below" the legal standard); *Jennings v. Brinks Home Security*, 1999 WL 615058, at *4 (Wash. App. Div. 2, 1999) (unpubl.) (limit of liability not enforceable where actions were grossly negligent); *Eifler v. Shurgard Capital Management Corp.*, 861 P.2d 1071, 1078-79 (Wash. App. Div. 2, 1993) (accepting limitation on claims for "simple negligence" only). A central issue to be determined in this case is whether or not the truck driver's conduct—**intentionally driving after becoming fatigued (for an additional 139 miles past three rest stops)—a charge to which the driver did plead guilty in court**—constitutes gross negligence under Washington law, for which proposition there is plenty of legal support. *See, e.g., Gastkill v. Forest*, 414 P.2d 613 (Wash. 1966); *Pickering v. Sterns*, 46 P.2d 394 (Wash. 1935). Even if federal law were to apply, Plaintiffs' conduct here has been so egregious that no limit of liability will be enforced.

Or perhaps Plaintiffs are trying to avoid Boeing. After all, a number of Boeing witnesses will likely be required to testify in this case, and, as is discussed further *infra*, most of these witnesses are presumably located in and around the Seattle, Washington area.

What is absolutely clear, however, is that Plaintiffs have been less than cooperative and forthcoming during the present dispute. Case in point is how they have handled the required mediation and arbitration of this matter. The Boeing-TMC Contract contains the following express mediation and arbitration clause:

> If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through direct discussions, the parties agree to first endeavor to settle the dispute in an amicable manner by mediation administered by the American Arbitration Association under its Commercial Mediation Rules, before resorting to arbitration. If mediation is unsuccessful after thirty (30) days, any unresolved controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration administered

4

> by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. All mediation and arbitration shall be held at a mutually agreed upon location.

(Barton Decl., Exh. A, ¶ 21) In addition, the agreement explicitly requires the application of Washington law:

> This Agreement shall be governed by the laws of the State of Washington, United States of America, without regard to conflict of law provisions.

(Barton Decl., Exh. A, ¶ 20). Pursuant to the mediation and arbitration clause and the choice-of-law provision, Defendants filed a formal Request for Mediation on November 13, 2007, with the American Arbitration Association (hereinafter "AAA"), requesting Seattle, Washington as the situs for the mediation. (Barton Decl., Exh. C). From this point on, TMC allowed Defendants to believe that it would participate in the mediation:

> On November 16, 2007, AAA advised Defendants' counsel and TMC via facsimile that both parties were required to submit to AAA a list of preferred mediators from a batch of resumes provided by AAA. (Barton Decl., Exh. D). The defendants submitted their list by facsimile on November 20, 2007; TMC failed to submit its choices.[3] (Barton Decl., Exh. E).
>
> 1. On December 5, 2007, AAA notified the parties that Justice Robert F. Utter, retired Chief Justice of the Washington Supreme Court, had been appointed to serve as the mediator in this matter. (Barton Decl., Exh. H). TMC offered no immediate response indicating its unwillingness to participate.
>
> 2. By letter dated January 4, 2008, newly-appointed counsel for TMC notified AAA that he and Defendants' counsel had "agreed that we would be available for a mediation date in early March." (Barton Decl., Exh. J).
>
> 3. TMC again confirmed its availability for a March mediation by email dated January 15, 2008. (Barton Decl., Exh. K).

---

[3] TMC did acknowledge receipt of AAA's fax via email on November 20, 2007, in which TMC also claimed that it was "under contract with Boeing with a specified release value of $2.50 per pound. We are not agreeing to mediation at this time." (Barton Decl., Exh. F). As indicated above, however, TMC subsequently indicated that it would proceed with the mediation.

4. By letter dated January 24, 2008, TMC advised that "if your client absolutely insists on conducting a mediation under the currently-existing circumstances, we would be willing to participate in a mediation by telephone conference call . . . ." (Barton Decl., Exh. M).

In fact, the first time Plaintiffs expressly declined to participate in the mediation was by letter dated February 29, 2008—<u>after</u> the mediation had already been scheduled, <u>after</u> Defendants had already expended thousands of dollars in preparation for the mediation, <u>after</u> Defendants had already served its mediation statement on TMC, <u>after</u> retired Chief Justice Utter had already begun working on the matter,[4] and <u>after</u> Plaintiffs filed the instant action in this Court. (Barton Decl., Exh. N). Now, virtually on the eve of the scheduled mediation, Plaintiffs filed the instant Complaint For Declaratory Relief to resolve the identical issue that would have been the subject of the mediation. This is bad faith in its truest form and Plaintiffs should not be permitted to evade a Washington forum—whether in mediation and arbitration or in the federal courts.[5]

## I. THE COURT HAS BROAD DISCRETION TO AND SHOULD TRANSFER THIS ACTION AS TO BOTH PLAINTIFFS TO THE WESTERN DISTRICT OF WASHINGTON PURSUANT TO 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), this Court should transfer this action as to both Plaintiffs to the Western District of Washington.

Title 28, Section 1404(a) of the United States Code provides, in pertinent part:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). This statute requires a lesser showing of inconvenience than was required under the common law doctrine of *forum non conveniens*, and "[d]istrict courts were given more

---

[4] Plaintiff TMC has since also refused to pay the AAA and retired Chief Justice Utter's charges. (Barton Decl., Exh. O).
[5] Given Plaintiffs' conduct, Defendants have, at this point, decided to waive mediation and arbitration and to proceed in Court.

6

discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981).

In the Seventh Circuit, "[t]ransfer is appropriate when '(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice.'" *First National Bank v. El Camino Resources, Ltd.*, 447 F.Supp.2d 902, 911 (N.D. Ill. 2006) (quoting *Federated Dep't Stores, Inc. v. U.S. Bank Nat'l Ass'n*, 2001 WL 503039, at *1 (N.D. Ill. 2001)).

### A. <u>This Action Is Proper In The Transferee District[6]</u>

As to both Plaintiffs, venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391(c). This action could have been brought in the Western District of Washington because both Yellowstone and TMC have sufficient contacts with said district to subject them to personal jurisdiction there as if it were a separate state. *See* 28 U.S.C. § 1391(c). TMC and Yellowstone are regular carriers for Boeing and routinely make shipments to Boeing's facility just outside Seattle, Washington, regularly utilizing the roadways of the Western District of Washington. Indeed, the Boeing-TMC Contract is evidence of this relationship. (Barton Decl., Exh. A). Furthermore, Yellowstone describes itself as a "coast-to-coast service provider" on its own website.[7] Similarly, TMC's website claims that it has "thousands of tractor-trailers running coast to coast, and from Mexico to Canada . . . ."[8]

Should the Carmack Amendment be found to apply, venue would also be appropriate in the Western District of Washington pursuant to 49 U.S.C. § 11706(d)(1) as

---

[6] Defendants do not dispute that venue is appropriate—albeit inconvenient—in the Northern District of Illinois.
[7] http://www.yellowstonetrucking.com/whois.asp.
[8] http://www.tmctrans.com/.

7

"against a delivering carrier in a district court of the United States . . . in a judicial district . . . through which the defendant carrier operates." As Plaintiffs operate truck routes through the Western District of Washington, venue is appropriate there.

### B. Transfer To The Western District of Washington Would Be More Convenient For The Parties, The Witnesses And Would Better Serve The Interests of Justice

As stated above, the transfer to the Western District of Washington must "serve the convenience of the parties and the witnesses as well as the interests of justice.'" *First National Bank*, 447 F.Supp.2d at 911. "Among the factors bearing on this inquiry are the plaintiff's choice of forum, the locations of the material events, the relative ease of access to sources of proof, the convenience of the parties, and the convenience of the witnesses." *Electroplated Metal Solutions, Inc. v. American Services, Inc.*, 500 F.Supp.2d 974, 978 (N.D. Ill. 2007) (citing *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000)).

#### 1. Plaintiff's Choice of Forum

"[T]he trial court must give some weight to the plaintiff's choice of forum." *Federal Deposit Ins. Corp. v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 368 (7th Cir. 1979). However, when the plaintiffs do not sue in their home forum, their choice should be accorded less weight. *See In re Factor VIII or IX Concentrate Blood Products Litigation*, 484 F.3d 951, 956 (7th Cir. 2007) ("[I]f the plaintiff is suing far from home, it is less reasonable to assume that the [selected] forum is a convenient one and therefore 'the presumption in the plaintiff's favor "applies with less force . . . ."'" (quoting *Piper Aircraft*, 454 U.S. at 266)); *see also First National Bank*, 447 F.Supp.2d at 912 ("[A] plaintiff's choice of forum is given substantial weight when, as here, it is the plaintiff's home forum."). Here, according to the Amended Complaint, Plaintiffs are both headquartered in Iowa. (Amended Complaint, ¶ 1) Therefore, Plaintiffs' choice of Illinois as the forum for their declaratory judgment action should not be afforded much, if any, weight.

#### 2. Locations of the Material Events

The only "material event" that occurred in Illinois was the truck accident in question. However, the shipment in this case was en route to Boeing's facility in Tukwila,

8

Washington. It was only by happenstance that the accident occurred on the highways of Illinois, and not one of several intervening states between Ohio (the pick-up location) and Washington. A random occurrence cannot be the sole basis to reject a transfer to a more convenient forum.

### 3. Ease of Access to Sources of Proof

No quantum of documents or other sources of proof are located in Illinois. Instead, most of Boeing's documents regarding, *inter alia*, damages applicable to this loss are presumably located in Washington. (*See* Declaration of Timothy Owen, ¶ 5). Furthermore, any corporate records Plaintiffs will rely upon presumably will be found at their headquarters in Iowa. Therefore, Washington is certainly the more convenient forum with regard to access to proof.

### 4. Convenience of the Parties

"This factor concerns the parties' 'respective residences and abilities to bear the expense of trial in a particular forum.'" *First National Bank*, 447 F.Supp.2d at 912 (quoting *Medi USA v. Jobst Inst., Inc.*, 791 F.Supp. 208, 210 (N.D. Ill. 1992)). Plaintiffs are, according to the Amended Complaint, Iowa corporations with principal places of business in Des Moines, Iowa. (Amended Complaint, ¶1). The several Defendants are foreign and domestic insurance companies with scattered states and countries of incorporation and principle places of business. However Defendants' assured, Boeing—a non-party, but with the most proof and witnesses concerning condition of the cargo, the Boeing-TMC Contract and damages—is located in and around Seattle, Washington. Therefore, because no party is located in Illinois and, therefore, all parties will be required to travel, the location of Defendants' assured, Boeing, in Washington favors a Washington forum.

### 5. Convenience of the Witnesses

"The convenience of the witnesses is often the most important factor in determining whether to grant a motion to transfer." *First National Bank*, 447 F.Supp.2d at 913. "In assessing this factor, the number of witnesses located in each forum and the importance of each witness' testimony must be considered." *Id.* "The party seeking transfer must specify the key witnesses to be called and make a generalized statement of their testimony." *Id.* Boeing, a non-party to the present suit, will be required to provide a number of witnesses in this case concerning the Boeing-TMC Contract, the condition and value of the cargo and/or the damages incurred by the jet engines. *See, e.g., American Nat Fire Ins Co ex rel Tabacalera Contreras Cigar Co. v. Yellow Freight Systems, Inc.*, 325 F.3d 924, 929 (7th Cir. 2003) ("[T]he shipper establishes a *prima facie* case when it shows (1) delivery in good condition; (2) arrival in damaged condition; and (3) the amount of damages."). First, because most Boeing damages documentation applicable to this case is likely located in Washington, their custodial witnesses are there as well. (*See* Owen Decl., ¶ 5). Second, the Boeing representative who attended an inspection of the damaged jet engines is located in and around Seattle, Washington. (Owen Decl., ¶ 5). Third, the insurance adjustor of this claim is located in Lynnwood, Washington. (Owen Decl., ¶ 4). Also, both of the truck drivers who were in the Yellowstone truck's cab during the subject accident live in Oregon City, Oregon, which the Court can take judicial notice is much closer to Washington than Illinois. (Owen Decl., ¶¶ 6 & 7). Furthermore, one of Defendants' two damages expert witnesses, Cosentino Consulting, is headquartered in Northern California. (Owen Decl., ¶ 9). Again, the Court can take judicial notice that this location is in much closer proximity to Washington than Illinois. In fact, the only material non-party witness located in Illinois is Officer Underwood, the Illinois State Police Officer who arrived at the scene of the accident after the fact, and who can offer little, if any, testimony concerning the circumstances before and during the crash.[9] Therefore, the Western District of Washington is the most convenient forum.

In sum, the Court should transfer this case to the Western District of Washington for the convenience of the parties, witnesses and in the interest of justice.

## CONCLUSION

The Court should grant Defendants' Motion to Transfer this action to the Western District of Washington.

Respectfully Submitted,

Schoen Mangan & Smith

By: s/Thomas P. Mangan
Thomas P. Mangan, Esq.
200 W. Adams, Suite 1005

---

[9] There may be other witnesses to the accident located in Illinois. The extent and relevance of their testimony is unknown, however, since there is no real dispute that the damage to the jet engines was caused when the TMC/Yellowstone truck flipped over.

10

Chicago, IL 60606
Tel: (312) 726-5151
Fax: (312) 726-0884
Email: tmangan@schoenmslaw.com

and

MALOOF BROWNE & EAGAN, LLC
David I. Maloof, Esq.
Thomas M. Eagan, Esq.
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580
Tel: (914) 921-1200
Fax: (914) 921-1023
Email: dmaloof@maloofandbrowne.com
*Attorneys for Defendants*