UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNETT HOLDINGS, INC. d/b/a TMC TRANSPORTATION, INC. and YELLOWSTONE TRUCKING, INC., <br><br> Plaintiffs, <br><br> v <br><br> CERTAIN UNDERWRITERS AT LLOYDS AND THOSE COMPANIES SEVERALLY SUBSCRIBING TO BOEING POLICY NUMBER 509/JC487006, RLI INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, TOKIO MARINE & NICHIDO FIRE INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, ROYAL & SUN ALLIANCE INSURANCE PLC, ST PAUL FIRE & MARINE INSURANCE COMPANY, MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA, XL SPECIALTY INSURANCE COMPANY, THE BALOISE INSURANCE COMPANY, LTD, HARTFORD FIRE INSURANCE COMPANY, ZURICH GLOBAL CORPORATE, UK LTD., <br><br> Defendants | CASE NO.: 08 C 1106 (JHL) (NRN) <br><br><br> **DECLARATION OF TODD A. BARTON IN SUPPORT OF MOTION TO COMPEL MEDIATION AND ARBITRATION AND TO TRANSFER A PORTION OF THE ACTION TO THE WESTERN DISTRICT OF WASHINGTON** |

I, Todd A. Barton, declare that I am an associate of Maloof Browne & Eagan

LLC, attorneys for Defendants, Certain Underwriters at Lloyds and those companies severally

subscribing to Boeing Policy Number 509/JC487006, Royal & Sun Alliance Insurance plc, RLI

Insurance Company, St Paul Fire & Marine Insurance Company, Great American Insurance

Company, Mitsui Sumimoto Insurance Company of America, Tokio Marine & Nichido Fire

*ExT. "A"*

Insurance Company, XL Specialty Insurance Company, Fireman's Fund Insurance Company, The Baloise Insurance Company, Ltd., Hartford Fire Insurance Company and Zurich Global Corporate, UK Ltd. (hereinafter "Defendants"). I declare the following upon information and belief.

1. The Boeing Company (hereinafter "Boeing") has a "Full Truckload Transportation Contract" (hereinafter the "Boeing-TMC Contract") with Plaintiff TMC Transportation, Inc. (hereinafter "TMC"), which I attach hereto a true copy of as Exhibit A.

2. Paragraph 21 of the Boeing-TMC Contract, Exhibit A hereto, contains an express mediation and arbitration clause, which provides as follows:

> If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through direct discussions, the parties agree to first endeavor to settle the dispute in an amicable manner by mediation administered by the American Arbitration Association under its Commercial Mediation Rules, before resorting to arbitration. If mediation is unsuccessful after thirty (30) days, any unresolved controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. All mediation and arbitration shall be held at a mutually agreed upon location.

3. Paragraph 20 of the Boeing-TMC Contract, Exhibit A hereto, explicitly requires the application of Washington law:

> This Agreement shall be governed by the laws of the State of Washington, United States of America, without regard to conflict of law provisions.

4. On June 13, 2006, while transporting Boeing jet engines from Ohio to Washington pursuant to the Boeing-TMC Contract, the truck was involved in an accident that caused damage to the jet engines. (Plaintiffs' Complaint, ¶ 23).

5. Defendants collectively paid $5,750,000.00 to Boeing as a result of this accident, and Boeing issued a "Subrogation Receipt And Assignment," which I attach hereto a true copy of as Exhibit B.

6 Pursuant to the arbitration and choice-of-law provisions in the Boeing-TMC Contract, Defendants submitted a "Request For Mediation" to the American Arbitration Association ("AAA") on November 13, 2007, which I attach hereto a true copy of as Exhibit C.

7. On November 16, 2007, AAA advised Defendants' counsel and TMC via facsimile that both parties were required to submit to AAA a list of preferred mediators from a batch of resumes provided by AAA. I attach hereto a true copy of this correspondence as Exhibit D. The defendants submitted their list by facsimile on November 20, 2007, which I attach hereto a true copy as Exhibit E. TMC failed to submit its choices.

8. On November 20, 2007, TMC notified AAA via email, which was eventually transmitted to Defendants' counsel, that it would not participate in a mediation because of its alleged contractual limit of liability with Boeing. I attach a true copy of said correspondence as Exhibit F.

9 Via email on November 26, 2007, Defendants' counsel copied TMC on an email that advised that Defendants would be willing to go to court to order Plaintiffs to mediate and arbitrate if they continued to refuse to do so in bad faith. I attach a true copy of said correspondence as Exhibit G.

10. On December 5, 2007, AAA notified the parties via email that Justice Robert F. Utter, retired Chief Justice of the Washington Supreme Court, had been appointed to serve as the mediator in this matter. I attach a true copy of this correspondence from AAA as

Exhibit H. I also attach a true copy of Justice Utter's resume as Exhibit I    TMC offered no immediate response indicating its unwillingness to participate.

11.    By letter dated January 4, 2008, newly-appointed counsel for TMC notified AAA that he and Defendants' counsel had "agreed that we would be available for a mediation date in early March." TMC's counsel also advised that it reserved the right "to decline to participate in a mediation." I attach a true copy of said correspondence as Exhibit J.

12    TMC again confirmed its availability for a March mediation by email dated January 15, 2008. I attach a true copy of said correspondence as Exhibit K.

13    By letter dated January 23, 2008, TMC's counsel stated that "we do not feel there is an absolute obligation on the part of TMC, under the applicable contract, to engage in mediation under the presently existing circumstances of this case." However, TMC's counsel then proceeded to offer dates for a mediation in the month of March, and planning by defense counsel, AAA and the mediator, retired Washington Supreme Court Chief Justice Robert F. Utter, all proceeded to go forward  I attach a true copy of said correspondence as Exhibit L

14.    By letter dated January 24, 2008, TMC advised that "if your client absolutely insists on conducting a mediation under the currently-existing circumstances, we would be willing to participate in a mediation by telephone conference call . . . ," while trying to stick Defendants alone with the mediation costs  I attach a true copy of said correspondence as Exhibit M.

15.    The first time Defendants expressly declined to participate in the mediation was by letter dated February 29, 2008—after the mediation had already been scheduled, after Defendants had already expended thousands of dollars in preparation for the mediation, after Defendants had already served its mediation statement on TMC, and after

Plaintiffs filed the instant action in this Court. I attach a true copy of said correspondence as Exhibit N.

16.    In a letter dated February 29, 2008, addressed to AAA, TMC's counsel notified AAA that it "has repeatedly and consistently advised the Claimant's attorneys and AAA that it had no obligation to participate in the mediation which has been pursued by the Claimants in this matter and has, in fact, refused to do so." TMC's counsel then informed AAA that it was unwilling to even contribute for the fees incurred to date in the mediation process. I attach a true copy of said correspondence as Exhibit O.

17.    I attach as Exhibit P a true copy of a facsimile dated March 10, 2008, from AAA. This correspondence states that this mediation case will be held in abeyance for six months, or until September 10, 2008  This correspondence also states that Claimant (Defendants herein) will be billed $1,225.00 for the cancellation of the mediation scheduled for March 4, 2008.

I declare the foregoing is true and correct under penalty of perjury of the laws of the United States.

Dated: Rye, New York
        March 18 , 2008

_____
Todd A. Barton

# FULL TRUCKLOAD TRANSPORTATION CONTRACT

## THE BOEING COMPANY

### FREIGHT/TRANSPORTATION SERVICES AGREEMENT

This Freight/Transportation Services Agreement (the "Agreement"), dated as of February 1, 2006 (the "Effective Date"), is between The Boeing Company, a Delaware corporation (hereafter called "Boeing"), acting through its Shared Services Group for the benefit of its subsidiaries, operating groups, divisions, and affiliates in which it maintains a minimum of 51% ownership interests, and Yellowstone Trucking Inc (hereafter called "Service Provider")

The parties agree as follows:

## 1. SCOPE OF SERVICES

Service Provider shall provide the freight and transportation services described in the Statement of Work (the "Statement of Work") attached hereto as Attachment D and incorporated herein by this reference (the "Services")

## 2. BILLS OF LADING AND AIR WAYBILLS

Unless the parties use Boeing's standard bill of lading or air waybill, the bill of lading or air waybill terms and conditions applicable to the Services shall be those indicated in Service Provider's standard bill of lading or air waybill in effect on the date the shipment was tendered to the Service Provider; provided, however, that as described in Article 32 below, the terms of this Agreement will control in the event of any inconsistency between a bill of lading or an air waybill and this Agreement. The terms and conditions of any other bill of lading or air waybill will not apply to the Services, and the signature of the Service Provider on the same will only acknowledge receipt of the transported property (the "Cargo") by the Service Provider and identify the entity to receive the Cargo. Continued use of an unauthorized bill of lading or air waybill by Boeing will not constitute an implied acceptance by Boeing.

## 3. SATISFACTORY PERSONNEL

Service Provider shall assign personnel satisfactory to Boeing. At any time and for any reason, Boeing may require Service Provider to withdraw the services of any person and require that Service Provider promptly provide replacements for such persons satisfactory to Boeing.

## 4. REPORTING

Service Provider shall provide to Boeing reports in the format, and at such intervals, as requested by Boeing upon contract award.

## 5. FEES

A       Service Provider agrees to charge, and Boeing agrees to pay, the prices and charges for Services set forth in the Statement of Work (the "Fees") Both Boeing and Service Provider agree to be reasonable in determining costs for services not addressed in this Agreement.

B       The Fees will be effective for two (2) years from the Effective Date. The parties shall mutually agree in writing to terms, conditions, and pricing associated with any extension of this Agreement beyond the two (2) year period

## 6. TAXES



Agreement #17978 – Yellowstone Trucking Inc.                                                    Page 3

kload Transportation Service

ss this Agreement specifies otherwise, the Fees described in this Agreement include, and Service Provider is liable for
id shall pay, all taxes, impositions, charges and exactions imposed on or measured by this Agreement except for
applicable sales and use taxes that are separately stated on Service Provider's invoice. The Fees shall not include any taxes,
impositions, charges or exactions for which Boeing has furnished a valid exemption certificate or other evidence of
exemption

## 7.  INVOICES AND PAYMENT

A.      As compensation for Services performed by Service Provider, Boeing shall pay Service Provider the Fees within
net thirty (30) days of receipt of correct and properly documented invoices at the billing address(es) specified by Boeing. If
Boeing disputes Service Provider's computation of amounts due, Boeing may withhold payment of the disputed amount, but
Boeing must pay all charges not in dispute by the invoice due date. An amount is not in dispute until Boeing has provided
Service Provider with written notice explaining the disputed amount. Boeing and Service Provider will work in good faith to
resolve any dispute within 90 days following receipt of Boeing's notice of dispute, including elevation to management as
necessary. Upon resolution, disputed amounts are due and payable during Boeing's next billing cycle.

B.      Service Provider will not automatically generate account numbers. In the event Service Provider automatically
generates account number(s) without Boeing's written authorization, Boeing will not be responsible for payment of said
invoices

C.      Service Provider shall ensure all invoices are correct and contain all information required for payment by Boeing,
as mutually agreed upon between the parties, prior to submitting any invoices to Boeing for payment

D.      Boeing and Service Provider shall submit all claims for overcharges and undercharges, as the case may be, within
two (2) years of the original invoice date.

E.      Boeing shall not be liable for invoices submitted in excess of one hundred eighty (180) days after the date of the
Services.

## 8.  TERM AND TERMINATION OF AGREEMENT

A.      The term of this Agreement shall commence on the Effective Date and continue for two (2) years thereafter (the
"Term"), unless earlier terminated in accordance with this Article 8.

B.      Boeing may, by written notice to Service Provider, terminate all or part of this Agreement (i) if Service Provider
fails to deliver the Services within the time specified by this Agreement or any written extension; (ii) if Service Provider
fails to perform any other provision of this Agreement or fails to make progress, so as to endanger performance of this
Agreement, and, in either of these two circumstances, does not cure the failure within ten (10) days after receipt of notice
from Boeing specifying the failure; or (iii) in the event of Service Provider's bankruptcy, suspension of business,
insolvency, appointment of a receiver for Service Provider's property or business, or any assignment, reorganization or
arrangement by Service Provider for the benefit of its creditors. Service Provider shall continue to provide all Services not
terminated pursuant to this clause 8.B.

C.      Boeing reserves the right to terminate this Agreement, or any part hereof, for its convenience upon Sixty (60) days'
prior written notice to Service Provider. In the event of such termination, Service Provider shall immediately cease all
work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. In case of
termination for convenience by Boeing of all or any part of this Agreement, Service Provider may submit a claim to Boeing
within thirty (30) days after the effective date of termination. In no event shall Boeing be obligated to pay Service Provider
any amount in excess of the Fees. The provisions of this clause 8.C shall not limit or affect the right of Boeing to terminate
this Agreement for default.

D.      Service Provider may terminate this Agreement for its convenience upon ninety (90) days' prior written notice to
Boeing. In the event of such termination, Service Provider shall continue to provide the Services to Boeing until the end of
such ninety (90) day period. In case of termination for convenience by Service Provider, Service Provider shall submit its
final invoice to Boeing for all Services within Sixty (60) days after the effective date of termination

Corporate Agreement #17978 – Yellowstone Trucking Inc

Full Truckload Transportation Service

## 9. INSURANCE PROVISIONS

A.     Commercial General Liability. If Service Provider or any subcontractor thereof will be performing the Services on Boeing's premises, Service Provider shall carry and maintain, and ensure that all subcontractors thereof carry and maintain, throughout the period when Services are performed and until final acceptance by Boeing, Commercial General Liability insurance with available limits of not less than one million dollars ($1,000,000) per occurrence for bodily injury and property damage combined. Such insurance shall contain coverage for all premises and operations, broad form property damage, contractual liability (including, without limitation, that specifically assumed under Article 11 of this Agreement).

B.     Automobile Liability. If licensed vehicles will be used in connection with the Services, Service Provider shall carry and maintain, and ensure that any subcontractor thereof who uses a licensed vehicle in connection with the performance of the Services carries and maintains, throughout the period when Services are performed, Business Automobile Liability insurance covering all vehicles, whether owned, hired, rented, borrowed or otherwise, with available limits of not less than one million dollars ($1,000,000) per occurrence combined single limit for bodily injury and property damage.

C.     Workers' Compensation. Throughout the period when Services are performed, Service Provider shall, and ensure that any subcontractor thereof shall, cover or maintain insurance in accordance with the applicable laws relating to Workers' Compensation with respect to all of their respective employees on or about Boeing's premises. If Boeing is required by any applicable law to pay any Workers' Compensation premiums with respect to an employee of Service Provider or any subcontractor, Service Provider shall reimburse Boeing for such payment.

D.     Cargo Insurance. Throughout the period when Services are performed, Service Provider shall carry and maintain, and shall ensure that any subcontractor thereof shall carry and maintain, insurance covering the Cargo in the amounts described in accordance with Attachment A, Statement of Work.

E.     Certificates of Insurance. Prior to commencement of the Services, Service Provider shall provide for Boeing's review and approval certificates of insurance reflecting full compliance with the requirements set forth in paragraphs (A) Commercial General Liability, (B) Automobile Liability, (C) Workers' Compensation, and (D) Cargo Insurance. Such certificates shall be kept current and in compliance throughout the period when the Services are being performed and until final acceptance by Boeing, and shall provide for 30 days advance written notice to Boeing in the event of cancellation. Failure of Service Provider or any subcontractor thereof to furnish certificates of insurance, or to procure and maintain the insurance required herein or failure of Boeing to request such certificates, endorsements or other proof of coverage shall not constitute a waiver of Service Provider's obligations under this Agreement.

F.     Self-Assumption. Any self-insured retention, deductibles and exclusions in coverage in the policies required under this clause 9 F shall be assumed by, for the account of and at the sole risk of Service Provider or the subcontractor which provides the insurance and to the extent applicable shall be paid by such Service Provider or subcontractor. In no event shall the liability of Service Provider or any subcontractor thereof be limited to the extent of any of the minimum limits of insurance required herein.

G.     Protection of Property. Service Provider assumes, and shall ensure that all subcontractors thereof and their respective employees assume, the risk of loss or destruction of or damage to any property of such parties whether owned, hired, rented, borrowed or otherwise. Service Provider waives, and shall ensure that any subcontractor thereof and their respective employees waive, all rights of recovery against Boeing, its subsidiaries and their respective directors, officers, employees and agents for any such loss or destruction of or damage to any property of Service Provider, any subcontractor or their respective employees.

H.     At all times Service Provider shall, and ensure that any subcontractor thereof shall, use suitable precautions to prevent damage to Boeing's property. If any such property is damaged by the fault or negligence of Service Provider or any subcontractor thereof, Service Provider shall, at no cost to Boeing, promptly and equitably reimburse Boeing for such damage or repair or otherwise make good such property to Boeing's satisfaction. If Service Provider fails to do so, Boeing may do so and recover from Service Provider the cost thereof.

## 10. WARRANTY

Corporate Agreement #17978 – Yellowstone Trucking Inc

Full Truckload Transportation Service

Service Provider warrants that all Services performed hereunder shall be performed by employees or agents of Service Provider who are experienced and skilled in their profession and in accordance with industry standards

## 11. INDEMNITY

Except to the extent of Boeing's negligent acts or omissions, Service Provider agrees to indemnify and hold harmless Boeing and its subsidiaries, and their respective directors, officers, employees, and agents (hereinafter "Indemnities") from and against all actions, causes of action, liabilities, claims, suits, judgments, liens, awards, losses, and damages, of any kind and nature whatsoever for property damage (excluding Cargo), personal injury, or death (including without limitation injury to, or death of employees of name service provider) and expenses, costs of litigation, and counsel fees related thereto or incidental to establishing the right to indemnification, arising out of or in any way related to this Agreement, the performance thereof by Service Provider, or other third parties. The foregoing indemnity shall apply only to the extent of the negligence of Service Provider or its employees. In no event shall either party's obligations hereunder be limited to the extent of any insurance available to, or provided either party.

## 12. PATENT, TRADEMARK AND COPYRIGHT INDEMNITY

Service Provider will indemnify, defend and hold harmless Boeing and its customers from all claims, suits, actions, awards (including, but not limited to, awards based on intentional infringement of patents known at the time of such infringement, exceeding actual damages and/or including attorneys' fees and/or costs), liabilities, damages, costs and attorneys' fees related to the actual or alleged infringement of any United States or foreign intellectual property right (including, but not limited to, any right in a patent, copyright, industrial design or semiconductor mask work, or based on misappropriation or wrongful use of information or documents) in connection with this Agreement. Boeing and/or its customers will duly notify Service Provider of any such claim, suit or action; and Service Provider will, at its own expense, fully defend such claim, suit or action on behalf of indemnities

## 13. SERVICE PROVIDER LIABILITY

A.      To the extent set forth in Article 9 above, Service Provider shall be liable to Boeing for any loss, damage, or injury to Cargo occurring while in the possession, care, or control of Service Provider, or resulting from named Service Provider's negligent acts in performance or failure to perform the Services provided in this Agreement. Claims by Boeing against Service Provider for contribution towards third party injury, damage, or loss are not limited, waived, released, or disclaimed

B.      Boeing does not require Service Provider to carry all-risk, property, and physical damage coverage. Should Boeing or any of its vendors inadvertently declare a value or full insurance, Service Provider will not bill for it. Should loss or damage occur on such shipment, Boeing will hold Service Provider responsible for its liability as provided in Article 9 above, and shall hold Service Provider harmless from any claim in excess of said liability asserted by any shipper or consignee as to any shipment covered by this Agreement.

C.      Service Provider's liability for Cargo will extend to used, as well as new goods.

## 14. FORCE MAJEURE

Nonperformance by either party shall be excused to the extent that the default in performance of any of the terms and conditions hereof is caused by an event or events beyond its reasonable control and without fault or negligence of that party or its suppliers or subcontractors, or by any material act or failure to act by that party, in the exercise of diligence, upon delivery of written notice, including, but not limited to, fire, strikes, blockades, labor disputes, riots, acts of war, acts of terrorism, epidemics, acts of God, governmental order or regulation, or other similar contingency (each, a "Force Majeure Event"); provided, however, that a strike or labor dispute by employees of the other party to this Agreement, among other events, will not be considered a Force Majeure Event. The non-performing party shall exercise all reasonable efforts to eliminate the Force Majeure Event delay and to resume performance of its affected obligations as soon as practicable. The excused time period for nonperformance will be limited to the duration of the Force Majeure Event. If the Force Majeure Event continues for more than fifteen (15) days, then the unaffected party will have the right to terminate this Agreement immediately, without penalty, upon delivery of notice

Corporate Agreement #17978 – Yellowstone Trucking Inc.

Full Truckload Transportation Service

## 15. CONFIDENTIALITY

Except where disclosure to the public is required by law, the existence of this Agreement, its terms, and all shipping records and information pertaining to each invoice and freight service provider contract, shall be confidential and shall not be disclosed by either party hereto to persons other than its directors, officers, employees, agents, attorneys, accountants, and auditors on a need-to-know basis.

## 16. CUSTOMS-TRADE PARTNERSHIP AGAINST TERRORISM ("C-TPAT") REQUIREMENTS

A. Service Provider shall be C-TPAT certified in order to transport Boeing shipments from point of origin to port of entry into the U.S., and shall maintain C-TPAT certification throughout the period of this Agreement. Service Provider's loss of C-TPAT certification will be grounds for termination of this Agreement.

B. Service Provider also agrees to use C-TPAT certified carriers, local cartage companies and others involved with the transport and handling of Boeing shipments. In the absence of C-TPAT certified transport and handling providers, Service Provider may use companies that have agreed in writing to follow the C-TPAT Supply Chain Security Guidelines; if this situation arises Service Provider will notify Boeing. The C-TPAT Supply Chain Security Guidelines are available at: http://www.cbp.gov/xp/cgov/import/commercial_enforcement/ctpat. If no C-TPAT certified transport and handling providers or companies that have agreed to follow the C-TPAT Supply Chain Security Guidelines are available to move Boeing's shipments, Service Provider will contact Boeing immediately for direction.

C. Upon execution of this Agreement, Service Provider will send Boeing a letter verifying its' C-TPAT status and will provide its' SVIP alpha-numeric status identification number issued by U.S. Customs and Border Protection in such letter. Service Provider will send copies of the aforementioned letter to Kenneth.d.konigsmark@boeing.com and Linda.S.Jaramillo@boeing.com

## 17. EVIDENCE OF CITIZENSHIP OR IMMIGRANT STATUS

Boeing may be required to obtain information concerning citizenship or immigrant status of Service Provider's personnel or Service Provider's subcontractor personnel entering the premises of Boeing. Service Provider agrees to furnish this information before commencement of work and at any time thereafter before substituting or adding new personnel to work on Boeing's premises. Information submitted by Service Provider shall be certified by an authorized representative of Service Provider as being true and correct.

## 18. ACCESS TO PLANTS AND PROPERTIES

Service Provider shall comply with all the rules and regulations established by Boeing Security for access to, and activities in and around, premises controlled by Boeing or Boeing's customers

## 19. COMPLIANCE WITH LAWS AND REGULATIONS

In its performance of the Services, Service Provider agrees to assume full responsibility for, and to pay the costs of its compliance with, all current and future local, federal, and international laws and regulations, pay all local, federal, and international license fees, operating permits, taxes and other charges applicable to Service Provider.

## 20. GOVERNING LAW

Corporate Agreement #17978 – Yellowstone Trucking Inc.

Full Truckload Transportation Service
This Agreement shall be governed by the laws of the State of Washington, United States of America, without regard to conflict of law provisions

## 21. ARBITRATION OF DISPUTES

If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through direct discussions, the parties agree to first endeavor to settle the dispute in an amicable manner by mediation administered by the American Arbitration Association under its Commercial Mediation Rules, before resorting to arbitration  If mediation is unsuccessful after thirty (30) days, any unresolved controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof   All mediation and arbitration shall be held at a mutually agreed upon location.

## 22. RIGHTS AND REMEDIES

Any failures, delays or forbearances of either party in insisting upon or enforcing any provisions of this Agreement, or in exercising any rights or remedies under this Agreement, shall not be construed as a waiver or relinquishment of any such provisions, rights or remedies; rather, the same shall remain in full force and effect  Except as otherwise limited in this Agreement, the rights and remedies set forth herein are cumulative and in addition to any other rights or remedies that the parties may have at law or in equity  If any provision of this Agreement is or becomes void or unenforceable by law, the remainder shall be valid and enforceable.

## 23. NOTICES

A       All notices required to be given pursuant to the terms of this Agreement shall be given in writing, shall be personally delivered, or delivered by mail, postage prepaid, or by telecopy, telex or other customary means of communication  Notices will be addressed as follows:

If to Service Provider:              Name:   Dan White
                                    Title: Vice President, Sales
                                    Company:  Yellowstone Trucking Inc
                                    Address:  3448 N Heuter RD.
                                    City, State, Zip: Coeur d'Alene, ID  83814

If to Boeing :                      Procurement Agent:  Becky Short
                                    Title: Procurement Agent
                                    Company: The Boeing Company
                                          Shared Services Group
                                    Address:  P.O.Box 7730 MS K06-90
                                    City, State, Zip: Wichita, KS  67277-7730

B.       The parties may change the place of receiving notice by giving notice of such change of address   All termination and other options shall be exercised by giving notice in the manner provided above.  All notices shall be effective five (5) days after deposit in the U.S. mail as provided above, or if hand delivered, upon receipt by the addressee

## 24. ASSIGNMENT

Service Provider shall not assign any of its rights or responsibilities of performance under this Agreement to any third party without the express prior written consent of Boeing  Boeing, in its sole discretion, may assign any of its rights and responsibilities of performance under this Agreement to any third party.

## 25. INDEPENDENT CONTRACTOR

Service Provider is an independent contractor for all purposes  Service Provider shall have complete control over the performance of, and the details for accomplishing, the Services  In no event shall Service Provider or its agents,

Corporate Agreement #17978 – Yellowstone Trucking Inc.

Full Truckload Transportation Service
representatives or employees be deemed to be agents, representatives or employees of Boeing. Service Provider's employees shall be paid exclusively by Service Provider for all Services performed. Service Provider shall comply with all requirements and obligations relating to such employees under federal, state and local law (or foreign law, if applicable). Such compliance shall include, but not be limited to, laws regarding minimum wages, social security, unemployment insurance, federal and state income taxes and workers' compensation insurance.

## 26. PUBLICITY

Without Boeing's prior written approval, Service Provider shall not, and shall require that its subcontractors at any tier shall not, use Boeing's name in any news release, public announcement, advertisement, or other form of publicity. Notwithstanding the foregoing, Boeing hereby consents to Service Provider's inclusion of Boeing's name in a customer listing published in a prospectus or annual report, provided Boeing is not the sole customer listed.

## 27. GRATUITIES

Service Provider represents and warrants that neither it nor any of its employees, agents or representatives have offered or given, or will offer or give, any gratuities to Boeing's employees, agents or representatives for the purpose of securing this Agreement or securing favorable treatment under this Agreement.

## 28. OFFSET CREDITS

A.      To the exclusion of all others, Boeing or its assignees shall be entitled to all industrial benefits or offset credits which might result from this Agreement. Service Provider shall provide documentation or information which Boeing or its assignees may reasonably request to substantiate claims for industrial benefits or offset credits.

B. Service Provider agrees to use reasonable efforts to identify the foreign content of goods or services which Service Provider either produces itself or procures from subcontractors for work directly related to this Agreement. Promptly after selection of a non-U.S. subcontractor for work under this Agreement, Service Provider shall notify Boeing of the name, address, and subcontract point of contact (including telephone number) and dollar value of the subcontract.

## 29. UTILIZATION OF SMALL BUSINESS CONCERNS

Service Provider agrees to actively seek out and provide the maximum practicable opportunities for small businesses, small disadvantaged businesses, women-owned small businesses, minority business enterprises, historically black colleges and universities and minority institutions, Historically Underutilized Business Zone small business concerns and US Veteran and Service-Disabled Veteran Owned small business concerns to participate in the subcontracts Service Provider awards to the fullest extent consistent with the efficient performance of this Agreement.

## 30. RECORDS AND AUDIT

Service Provider shall retain all records and documents pertaining to the Services for a period of no less than five (5) years after final payment. Such records and documents shall date back to the time this Agreement was issued and shall include, without limitation, catalogs, price lists, invoices and inventory records for purposes of verification of Fees charged by Service Provider for Services provided to Boeing. Boeing shall have the right to examine, reproduce and audit all such records related to pricing and performance to evaluate the accuracy, completeness and currency of cost and pricing data submitted with Service Provider's invoices submitted to Boeing under Article 7 of this Agreement.

## 31. CODE OF CONDUCT

Boeing is committed to conducting its business fairly, impartially, and in an ethical and proper manner. Boeing's expectation is that Service Provider also will conduct its business fairly, impartially, and in an ethical and proper manner. Boeing's further expectation is that Service Provider will have (or will develop) and adhere to a code of ethical standards. If Service Provider has cause to believe that any employee or agent of Boeing has behaved improperly or unethically under this Agreement, Service Provider shall report such behavior to The Boeing Company Ethics hotline. Copies of The Boeing Company Code of Conduct and contacts for such reports are available on www.boeing.com under "Ethics and Business Conduct." Although Boeing will not use the failure to report improper or unethical behavior as a basis for claiming breach

Corporate Agreement #17978 – Yellowstone Trucking Inc.                                    Page 9
Full Truckload Transportation Service
of contract by Service Provider, Service Provider is encouraged to exert reasonable effort to report such behavior when
warranted.

## 32. ENTIRE AGREEMENT

This Agreement, including its attachments, contains the entire agreement between Boeing and Service Provider regarding
the subject matter hereof and supersedes all prior agreements, understandings or communications in connection herewith.
No amendment or modification of this Agreement shall bind either party unless it is in writing and is signed by Boeing's
authorized procurement representative and an authorized representative of Service Provider. To the extent of any
inconsistency between this Agreement and any bill of lading, air waybill, and/or any other document issued in connection
with this Agreement, the terms of this Agreement shall control.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed and delivered by their duly authorized
representatives, all as of the Effective Date first written above.

## THE BOEING COMPANY                           ## [SERVICE PROVIDER]

By: _____                   By: _____

Printed Name: _____                   Printed Name: _____

Title: _____                  Title: _____

Date &                                          Date &
Address: _____                   Address: _____
_____                   _____
_____                   _____

Feb 09 06 10:38a    Becky Short                              405 912  '95        p.1

Corporate Agreement #17978 – Yellowstone Trucking Inc.                    Page 9

Full Truckload Transportation Service

## 32. ENTIRE AGREEMENT

This Agreement, including its attachments, contains the entire agreement between Boeing and Service Provider regarding the subject matter hereof and supersedes all prior agreements, understandings or communications in connection herewith. No amendment or modification of this Agreement shall bind either party unless it is in writing and is signed by Boeing's authorized procurement representative and an authorized representative of Service Provider. To the extent of any inconsistency between this Agreement and any bill of lading, air waybill, and/or any other document issued in connection with this Agreement, the terms of this Agreement shall control.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed and delivered by their duly authorized representatives, all as of the Effective Date first written above.

**THE BOEING COMPANY**                          **[SERVICE PROVIDER]**

By: _Becky S. Short_                            By: _____

Printed Name: _BECKY SHORT_                     Printed Name: _Dan White_

Title: _PROCUREMENT AGENT_                      Title: _UP Sales_

Date &                                          Date &
Address: _2/9/06_                               Address: _2/9/06_
_THE BOEING CO._                                _5448 N Hiehler Rd_
_SSG SUPPLIER MGMT_                             _Coeur d' Alene, ID 33814_

Corporate Agreement #17978 – Yellowstone Trucking Inc
Full Truckload Transportation Service

ATTACHMENT B – Terms & Conditions

# ADDITIONAL TERMS AND CONDITIONS and ACCESSORIALS

33. **PERMITS & SPECIAL SERVICES REQUIRED UNDER PERMIT (See Attachment C – Accessorials)**

A    When a shipment of any kind requires a special permit from the state Highway Department for states in which the shipment is being transported, a charge shall be made for the procuring of each permit (which includes the cost of the permit) from each state.

B    For each flagman required by said permits, a charge will be made, in addition to all applicable rates and charges.

C    For each escort vehicle(s) required by said permits, a charge will be made from point of escort vehicle(s) origin to point of destination via route of the shipment. For each escort vehicle(s), a charge will be made when returning to point of escort vehicle(s) origin via the shortest practical route.

D    The Service Provider will advance the charge for each permit procured, and will pay as incurred, all bridge, ferry, highway, tunnel or other public charges of like nature which are incurred in the handling of any such shipment which would not normally be required on shipments not requiring permits.

E    All expenses or charges shall be in addition to the charges provided in this tariff/contract and shall be collected from the shipper or party requesting movement of the shipment. Except for the charge per vehicle per state for each such permit procured, and the flagman and escort charges in Paragraphs (b) and (c), evidence of payment of such other charges shall be furnished to shipper or party requesting movement of the shipment upon request.

F    Mileage will be computed from flagman and/or escort vehicle point of origin to point of destination via route of the shipment and return to flagman and/or escort vehicle point of origin via the shortest practical route. When it is necessary for a flagman and/or escort vehicle to lay overnight at points away from home base, there will be an additional charge per man.

G    When a specific rate, or rates, is applicable to the shipment (not distance rates), and municipal and state regulatory bodies or commissions specify a route to be traveled that exceed the shortest authorized truck route, the applicable tariff/contract rate and all additional charges will apply for such excess mileage.

H    When an over-dimension shipment traverses a state, or states, which require that tractor and/or trailer be equipped with flashing light(s), the actual cost will be assessed for each light required.

I    When a Service Provider is required by a state or municipal authority to traverse a permit route longer than that of the practical miles allowed under this Agreement, the additional miles beyond the practical miles allowed will be paid, providing the Service Provider can submit evidence of the extended route of travel as required under the applicable permit.

34. **TARPING OF SHIPMENT (See Attachment C – Accessorials)**

Service Provider will furnish tarpaulins, tie-down equipment and labor service necessary to protect and secure the lading for safe transportation. When tarping of shipment is required by shipper, an additional charge will be assessed for each tarping service provided.

35. **ADJUSTMENTS FOR FUEL PRICE CHANGES.**

All rates and charges for linehaul transportation, and other fuel consuming services, will be adjusted per the following schedule when the National U.S Average price, as indicated on the EIA Retail On-Highway Diesel Price Index, deviates outside a fuel price range of $1.10/gallon to $1.149/gallon. For those shipments with both the origin and destination (excluding round trip scenarios) in the following states (AZ, CA, ID, NV, OR, UT and WA), the fuel surcharge will be based on the West Coast average of the EIA Retail On-Highway Diesel Price Index. The EIA Fuel Index (Energy Information Administration) is updated on Monday of each week. Fuel surcharges, if warranted, will be evaluated on the last Monday of each month. Determine the running average fuel price for all 4 or 5 weeks within that month. Compare the monthly average to the scale below, and apply the corresponding surcharge commencing with shipments made on the first day of the following month.
The current EIA web address is: http://tonto.eia.doe.gov/oog/info/wohdp/diesel_detail_report.asp

Corporate Agreement #17978 – Yellowstone Trucking Inc.
Full Truckload Transportation Service

ATTACHMENT B – Terms & Conditions

| National Average Diesel Price | | Fuel Surcharge ($ per mile) |
|---|---|---|
| 1.100 | 1.149 | $0.000 |
| 1.150 | 1.199 | $0.009 |
| 1.200 | 1.249 | $0.017 |
| 1.250 | 1.299 | $0.026 |
| 1.300 | 1.349 | $0.034 |
| 1.350 | 1.399 | $0.043 |
| 1.400 | 1.449 | $0.051 |
| 1.450 | 1.499 | $0.060 |
| 1.500 | 1.549 | $0.068 |
| 1.550 | 1.599 | $0.077 |
| 1.600 | 1.649 | $0.085 |
| 1.650 | 1.699 | $0.094 |
| 1.700 | 1.749 | $0.102 |
| 1.750 | 1.799 | $0.111 |
| 1.800 | 1.849 | $0.119 |
| 1.850 | 1.899 | $0.128 |
| 1.900 | 1.949 | $0.136 |
| 1.950 | 1.999 | $0.145 |
| 2.000 | 2.049 | $0.153 |
| 2.050 | 2.099 | $0.162 |
| 2.100 | 2.149 | $0.170 |
| 2.150 | 2.199 | $0.179 |
| 2.200 | 2.249 | $0.187 |
| 2.250 | 2.299 | $0.196 |
| 2.300 | 2.349 | $0.204 |
| 2.350 | 2.399 | $0.213 |
| 2.400 | 2.449 | $0.221 |
| 2.450 | 2.499 | $0.230 |
| 2.500 | 2.549 | $0.238 |
| 2.550 | 2.599 | $0.247 |
| 2.600 | 2.649 | $0.255 |
| 2.650 | 2.699 | $0.264 |
| 2.700 | 2.749 | $0.272 |
| 2.750 | 2.799 | $0.281 |

Corporate Agreement #17978 – Yellowstone Trucking Inc
Full Truckload Transportation Service
Page 12

ATTACHMENT B – Terms & Conditions

| National Average Diesel Price | | Fuel Surcharge ($ per mile) |
|---|---|---|
| 2.800 | 2.849 | $0.289 |
| 2.850 | 2.899 | $0.298 |
| 2.900 | 2.949 | $0.306 |
| 2.950 | 2.999 | $0.315 |
| 3.000 | 3.049 | $0.323 |
| 3.050 | 3.099 | $0.332 |
| 3.100 | 3.149 | $0.340 |
| 3.150 | 3.199 | $0.349 |
| 3.200 | 3.249 | $0.357 |
| 3.250 | 3.299 | $0.366 |
| 3.300 | 3.349 | $0.374 |
| 3.350 | 3.399 | $0.383 |
| 3.400 | 3.449 | $0.391 |
| 3.450 | 3.499 | $0.400 |

These Fuel Adjustments will be itemized as a separate line item on all billings

36. COLLECT ON DELIVERY SHIPMENT (C.O.D.) (See Attachment C – Accessorials)
Company checks will be accepted as payment of C.O.D. charges unless alternate methods of payment (cash, money order, cashier's check or certified check) are requested IN WRITING ON THE BILL OF LADING. C.O.D. shipments will be accepted when one consignee is responsible for the charges and the notification of C.O.D. status is communicated to Service Provider's dispatch personnel prior to pickup. All C.O.D. payments are collected at the risk of the shipper, including the risk of non-payment and forgery

37. STOP-OFF FOR PARTIAL LOADING/UNLOADING OF TRUCKLOAD SHIPMENTS (See Attachment C – Accessorials)
A. A shipment subject to truckload rates may be stopped for partial loading and/or unloading
B. All charges must be paid by Boeing
C. Arrangements for stop-off service must be made with Service Provider prior to shipment.
D. Stop-off(s) - Name, address, markings, and quantities must appear on shipping order covering each stop for partial loading / offloading

38. DETENTION (See Attachment C – Accessorials)
A. Applies when carriers' units are delayed or detained on premises of consignor, consignee or premises designated and the delay is through no fault of the Service Provider
B. Charges With Power – 4 hours free time
C. Charges without Power – 24 hours free time

39. RECONSIGNED OR REDIRECTED SHIPMENTS (See Attachment C – Accessorials)
Upon instruction of shipper or owner, Service Provider will deliver to destination other than described on the Bill of Lading. Shipments diverted or re-consigned in route or at a billed destination requiring a change in the consignee or delivery point for all or a part of the shipment, will be charged based on the practical miles through the stops and diversion to the final destination, plus a reconsignment charge. In the event a shipment is returned to the origin point, the return move will be charged at the outbound rates along with the reconsignment charge.

40. UNDELIVERABLE SHIPMENTS (See Attachment C – Accessorials)
Any shipment or portion thereof that has been refused by the consignee or cannot be delivered, through no fault of the Service Provider, will upon instruction by the shipper be transported to a designated delivery point. The additional transport charges will be determined by the practical miles through the stop to that new delivery point

41. TRUCK ORDERED AND NOT USED (See Attachment C – Accessorials)
When an order for a truck is cancelled subsequent to dispatch, due to no fault of Service Provider, a charge will be assessed. This charge does not apply when a substitute order is tendered to Service Provider as replacement

Corporate Agreement #17978 – Yellowstone Trucking Inc
Full Truckload Transportation Service
ATTACHMENT B – Terms & Conditions

48.    SUPPLIER PERFORMANCE REVIEWS

In the interest of improving business processes, The Boeing Company has implemented programs for performance evaluations of key suppliers  That process will be formalized with the service providers that handle the most significant portions of our freight business  Traffic Council representatives from each major site will determine which of the contract service providers will be monitored, and will assess their performance for quality, cost, schedule, and customer service  The Boeing sites will complete freight carrier evaluation forms twice a year, for each of the selected carriers  Multiple site reports will then be rolled up into a single report and a performance grade determined for each firm  Meetings will then be scheduled to report findings and discuss possible areas for improvement  Once this review process has been refined, and sufficient historical data has been established, performance criteria may be incorporated into the contracts

49. OVERDIMENSIONAL FREIGHT
Overdimensional charges apply ONLY when an over dimensional permit is required by any federal, state, municipal or other regulatory agency. If Boeing requests a curtain side trailer for a legal load and the service provider utilizes a curtain side trailer which is over the 102 inch legal width, the service provider shall accept liability and assume responsibility to obtain the permits required from all states that have not yet cleared this trailer as a legal trailer  Permit costs for these vehicles will be born by the service provider, and not passed on to Boeing

Corporate Agreement #17978 – Yellowstone Trucking Inc
Full Truckload Transportation Service
ATTACHMENT B -- Terms & Conditions

42. **SUNDAY - HOLIDAY SERVICES (See Attachment C - Accessorials)**
Requests for pickup and/or delivery service on a Sunday, New Years Day, Memorial Day, Independence Day, Labor Day, Thanksgiving and Christmas, are subject to an additional charge, exclusive of accessorial charges. Application of this charge requires prior approval by Boeing

43. **MULTIPLE DRIVER SERVICE (See Attachment C – Accessorials)**
When, at the request of shipper, Service Provider uses multiple drivers to perform requested service, an additional charge per mile will apply. Multiple drivers will be utilized in teams or relay operation and shipper will note Bill of Lading, "Multiple Driver Services Requested". Application of this charge requires prior approval by Boeing

44. **SECURITY AND/OR SURVEILLANCE MONITORING SERVICES (See Attachment C – Accessorials)**
   A.  When a shipment of any kind has regulatory requirements for protective or surveillance services during transport a charge for such services will be assessed. All drivers assigned to these loads must have proper security clearances from the DOD
   B.  Charges are applicable for:
      1.  Constant Surveillance Service (CIS)
      2.  Protective Security Service (PSS)
      3.  Dual-Driver Protective Service (DDP)
      4.  Satellite Motor Surveillance Service (SNS)
      5.  Signature and Tally Service (675)
      6.  Security Escort Vehicle (SEV)

45. **INSURANCE PROVISIONS**
Please specify the levels of insurance coverage maintained by your company for the following liability categories:

   Commercial General Liability ............................
   Automobile Liability          _____
   Cargo Liability               _____

46. **MILEAGE COMPUTATION**
The mileage guide governing this contract is Rand McNally-MileMaker software program version #18, and it will be the basis for all mileage computations under this contract. Freight charges will be assessed on the basis of the through practical miles from the point of origin via all stop-offs (if any) to final destination. Miles charged shall not exceed the miles depicted in this Rand McNally Guide. To receive the appropriate total compensation, freight bills must separately itemize the Rand McNally miles between each point involved with re-delivery, undeliverable shipments, or additional stops

47. **HAZARDOUS MATERIALS**
   A.  Goods that are classified as hazardous material as per the criteria in Title 49, Code of Federal Regulations (49CFR), Parts 100-185, shall be transported in full compliance with the aforesaid regulations. Carrier equipment and drivers shall also be in full compliance with all applicable State and Local regulations

   When transporting hazardous material to, from, or within The Boeing Company, or between Boeing suppliers, the carrier will carry the most current version of The North American Emergency Response Guidebook or equivalent in the location specified in Part 172, 49CFR, Subpart G.

   B.  Service Provider must have a Security Plan in place capable of meeting new government regulations relative to the movement of hazardous material. Accordingly, all pertinent personnel must be trained in accordance with 49 CFR, Subpart H and have a Security Plan in place in accordance with 49 CFR, Subpart 1.

Corporate Agreement #17978 – Yellowstone Trucking Inc.

Full Truckload Transportation Service

## Attachment D –Statement of Work

## CORPORATE FREIGHT SERVICE AGREEMENT
## FOR FULL TRUCKLOAD SHIPMENTS

### A.    SCOPE

This agreement applies to FTL shipments for all Boeing facilities and sub-contractor locations between U S points and between U S points and points in Canada . We are seeking world-class transportation suppliers who can offer extensive coverage with competitive pricing and superior service levels

Boeing is pursuing total supply chain management with the goal of integrating the flow of product from supply points to end users and the flow of information back to supply points. Transportation is considered one component of this process and not a stand-alone function.  Service Provider will be required to aid this process through information technology and other logistical support

### B.    SERVICE AND OPERATIONAL REQUIREMENTS

#### 1 0    MAJOR DEFINITIONS

(a)    FAK – Parts, hardware, raw material, maintenance supplies, or any other general commodities used in support of the production, modification or maintenance of Buyer products.

(b)    **Door-to-Door Service (U.S. shipments)** – This service requires the Service Provider to pick up shipment at Buyer or subcontractor facility and arrange and /or execute all transportation to the Consignee's door.

(c)    **Door-to-Door Service (U.S./Canada shipments)** – This service requires the Service Provider to pick up shipment at Buyer or subcontractor facility and arrange and /or execute all transportation to the Consignee's door.  This includes facilitating customs clearance, delivery to the consignee's address and maintaining visibility of all transportation to the consignee's facility

#### 2 0    SERVICE PROVIDER RESPONSIBILITIES

##### 2 1    FACILITIES AND EQUIPMENT

(a)    The Service Provider shall ensure adequate security for all Buyer shipments held in its facility or carried in its vehicles.  Service Provider shall provide materials handling equipment for its warehouse use of sufficient capacity to safely handle all Buyer shipments

(b)    The Service Provider shall maintain and provide sufficient highway vehicle capacity, both in number and in type, to assure safe and efficient handling of all Buyer shipments

##### 2 2    CUSTOMER SERVICE

Service Provider shall provide a consistently high level of customer service support to Buyer and will be required to maintain compatible working hours with those of Buyer and maintain Customer Service availability on a 24-hour a day, 7 day per week basis. This customer service support shall include, but is not limited to:

(a)  Shipment status / tracing - response times, as listed below:

- Status by verbal and/or electronic proof of delivery within 3 hours of inquiry on shipments less than one week old

- Verbal and/or electronic proof of delivery within 24 hours and / or photocopied delivery receipt, if requested, within three (3) days on shipments over one week old. (Minimum 90 days. Preferred 120 days)

Corporate Agreement #17978 – Yellowstone Trucking Inc.                    Page 16

Full Truckload Transportation Service

      (b)  Rate Information.

      (c)  Estimate of expected transit times

      (d)  Assignment of customer service personnel with exclusive Buyer-use phone line as requested by Buyer

      (e)  Regular access to management level personnel for problem solving and system maintenance.

      (f)  Documentation Requirements – as specified by Buyer

## 2.3    COMMUNICATION

Communication is vitally important to Boeing.  Each Service Provider must meet the following requirements:

      (a)  Service Provider will advise Traffic Management of any change in Service Provider operations or other conditions that might affect established transit times and customer service.

      (b)  The Service Provider (U.S./Canada shipments) shall ensure receipt of and/or preparation of all necessary export and destination import documentation, Commercial Invoices, Shipper's Export Declarations, or other documents required to ensure compliance with origin Export Control Regulations and efficient customs clearance at destination  The Service Provider shall be responsible for the timely arrival of documents at destination to allow customs clearance. Any delays, fines, penalties or seizures resulting from errors or omissions of the Service Provider, his employees or agents will be at the expense of the Service Provider.

      (c)  Service Provider will notify Buyer immediately of any shipments that are delayed in transit or undeliverable at destination, particularly in the event of shipments that have been incorrectly addressed, or otherwise improperly consigned

## 2.4    STATION RESPONSIBILITY

The Service Provider is expected to maintain an office or an agent supporting each of the destinations that regularly receive Buyer shipments  Further responsibilities include:

      (a)  Following direction of the National Account Representative for the Service Provider's office in all matters concerning handling of Buyer shipments

      (b)  Ensuring adequate vehicle capacity and availability to meet pickup or delivery requirements.

      (c)  Providing sufficient customer service support to meet Buyer status inquiry requirements. (This includes knowledgeable backup.)

      (d)  Ability to arrange customs clearance and delivery of Buyer shipments as requested by either shipper or consignee.

      (e)  Perform other pick up, delivery, or customer service tasks necessary to meet Buyer requirements.

Corporate Agreement #17978 – Yellowstone Trucking Inc.                                      Page 17
Full Truckload Transportation Service
   2.5    REQUIRED SERVICE / TRANSIT LEVELS

(a) Time begins upon receipt of shipment by Service Provider and ends on receipt of shipment by consignee or consignee's agent. For each shipment that exceeds the committed transit time, the rate applied will be commensurate with the actual service level provided.

**(b) Additional Service Requirements**
In addition to transit time requirements, Service Provider will meet following additional service requirements:

1. Maintain constant visibility, and responsibility for, shipment status from time of dispatch for pick up at origin to final delivery to consignee or notification to consignee's agent.
2. Notify Buyer immediately if there is any evidence of tampering by unauthorized third parties with the cargo, containers or manifest.
3. Respond to Buyer requirements to expedite specific shipments as requested by Traffic Management.
4. Remain flexible throughout the system to respond to changing conditions that might effect transit times. Inform buyer of any conditions that may affect transit time.
5. Respond to Buyer requirements to expedite shipments as requested or indicated by required service level that may be stated on shipping documents.

**(c) Tracking and Tracing**
Boeing requires timely and accurate tracing information from transportation providers. In addition, access to shipment data must be available in a timely basis and in a user-friendly format. Supplier must be able to:

1. Electronically transmit shipment details and status to the shipper and/or consignee and Boeing via attachment-enabled e-mail or internet
2. Communicate changes or delays in shipment status.
3. Perform tracking via bar code technology
4. Web base tracking/tracing (minimum 90 day history visibility 120 days preferred.)

   2.6    ACCOUNTING AND BILLING

To ensure adequate internal accounting controls, minimize rating and clerical errors and expedite Buyer's approval and payment process, Service Provider shall:

(a)   Pre-audit all invoices prior to presentation to Buyer for payment.
(b)   Service Provider is required to have EDI invoicing capabilities and upon request of Buyer; the Service Provider will be required to send their invoices via Electronic Data Interchange (EDI) to the authorized/designated Freight Audit and Payment agent.
(c)   Provide adequate back up and authorization to support all special charges, i.e., same day or expedited services, special pick up and delivery
(d)   Cooperate with Traffic Management or designated Boeing payment provider for quick resolution of billing errors.
(e)   Service Provider shall ensure all invoices are correct (accurately rated and containing all information required for payment by Boeing, as mutually agreed upon and providing such information is properly provided on bill of lading by Shipper), prior to submitting to Boeing for payment. All invoices must contain (but not limited to) the following information:

       i.   Invoice number and date
       ii.   Shipper's Name, Address, City, State or Province, Zip or Postal Code, Country
       iii.   Recipient's Name, Address, City, State or Province, Zip or Postal Code, Country
       iv.   Account Number (if applicable)
       v.   Ship Date
       vi.  Delivered Date
       vii.  Freight Classification (if applicable)
       viii.   Reference Fields: Bill of Lading, Purchase Order, Work Order, Chargeline,

Full Truckload Transportation Service

> Shipper's/Receiver's References
> ix.   Shipping Pieces
> x.    Actual weight (lbs)
> xi.   Dimensional or Cubic Weight (if applicable)
> xii.  Dimensions
> xiii. Total Billed Amount
> xiv.  Accessorial Costs listed by line item
> xv.   Back-up documentation supporting accessorial charges
> xvi.  Bill of Lading

xvii Delivery Receipt (Proof of Delivery)

(f)   Ensure all invoices sent to Boeing or designated Boeing freight payment provider comply with Attachment B (Terms & Conditions), Item 7 (B,C, & D)

### 2.7   APPLICATION OF CHARGES

(a)   Except as otherwise provided herein, transportation charges for a shipment will be assessed on price per mile

(b)   All charges will be assessed at the rates in effect on the day of acceptance of the shipment by the Service Provider

### 2.8   ROUTING AND REROUTING

In addition to regular scheduled pickups, Service Provider should be prepared to pick up freight at any time at any Buyer or sub-contractor location, as directed by the Buyer or sub-contractor authorized Shipping/Traffic personnel.

### 3.0   LIABILITY

a)   No value for carriage shall be declared, nor will excess value be paid, for any shipment moving under the Terms and Conditions of this Agreement regardless of value declared unless pre approved by Boeing Traffic Management.

b)   Liability of Service Provider for goods lost or damaged in transit shall be $2.50 per pound based on total weight of shipment

### 4.0   CARGO SECURITY

Service Provider shall ensure that adequate security controls and procedures are in place at all facilities under its ownership or control, so as to provide for sufficient security for Buyer's cargo in transit or stored in those facilities.

Service Provider shall have documented procedures for cargo security and will review and update those procedures on a routine basis. A security awareness program should be developed and provided to employees including recognizing internal conspiracies, maintaining cargo integrity, and determining and addressing unauthorized access. These programs should encourage active employee participation in security controls. Further, Service Provider shall ensure that key personnel receive regular (annually as a minimum) training on security procedures and requirements and provide Buyer on request with evidence of such training.

Service Provider shall comply with all security requirements and recommendations of all government regulatory agencies.

Service Provider will immediately notify Buyer of any actual or suspected breach of security involving Buyer's cargo. This may include cargo theft, or tampering by unauthorized third parties with the cargo and/or manifests.

### 5.0   CLAIMS

Corporate Agreement #17978 – Yellowstone Trucking Inc.                                    Page 19

Full Truckload Transportation Service

Consignee shall inspect goods delivered by Service Provider on receipt for damages suffered or incurred while in transit. Consignee shall then promptly notify Buyer, and Buyer shall notify Service Provider of such damages and any related claims. Consignee's obligation to inspect on receipt extends only to obvious external damages. Service Provider shall be informed of any internal damage suffered within a reasonable period of time following delivery.

(a) All claims (except for overcharges) must be made in writing to Service Provider within 9 months after the date of acceptance of a shipment by Service Provider.

(b) Claims for overcharges must be made in writing to the Service Provider within two years after the date of acceptance of the shipment by Supplier.

(c) Damage and / or loss discovered by the consignee after delivery and after a clear receipt has been given to Service Provider, must be reported in writing to Service Provider at destination within fifteen (15) days after delivery of the shipment to allow Service Provider to make inspection of the shipment and container(s).

(d) No claim for loss or damage to a shipment will be entertained until all transportation charges thereof have been paid. The amount of loss or damage claims may not be deducted from transportation charges.

(e) Service Provider shall notify consignee before delivery of any obvious damage to shipments

(f) Service Provider shall make inspection of damaged shipments within 24 hours of notification by Buyer or consignee

Buyer will initiate claim procedure against loss or damage, whereby Service Provider will issue reimbursement within 30 days of verification of loss or damage, and receipt of written claim

## 6 0   CHANGES

Boeing may, at any time, by written order signed by its authorized Procurement Agent, and without notice to the Service Provider, make changes within the general scope of this agreement in any one or more of the following:

(a) Definition of services performed

(b) Place of performance

If any such change causes an increase or decrease in the cost of or time required for performance of this agreement, then an equitable adjustment in the prices and schedules in this agreement shall be made to reflect such increase or decrease and this Agreement shall be modified in writing in accordance with Provision #9 of Attachment B.

Corporate Agreement #17978 – Yellowstone Trucking Inc.

Full Truckload Transportation Service

# BOEING SHARED SERVICES GROUP
# FULL TRUCKLOAD TRANSPORTATION SERVICES CONTRACT

## EXHIBIT A – GENERAL INFORMATION

1. Participating locations: All Boeing locations in the US and Canada shall be eligible to participate under any resultant agreement.

2. Terms of Payment – Net 30 days.

3. Contacts:

   Designated Agreement Focal Point:

   Name: Dan White

   Title: Vice President Sales

   Company: Yellowstone Trucking Inc.

   Address: 3448 N. Huetter RD, Coeur d'Alene, ID 83814

   Phone No.: (208) 765-3212

   Fax No.: (208) 667-8160

   E-mail: dwhite@yellowstonetrucking.com

## REVISION #2 TO THE
## CORPORATE FREIGHT SERVICE AGREEMENT #17978
### BETWEEN THE BOEING COMPANY AND TMC/Yellowstone Tracking

This Revision is made this 30th day of May 2006, to that certain agreement effective February 1, 2006 (hereinafter "Agreement") between The Boeing Company and TMC/Yellowstone Trucking (hereinafter "the parties").

Whereas, the Parties wish to amend the Agreement as follows:

Effective June 1, 2006, Service Provider name Yellowstone Trucking Inc. on Agreement will be changed to TMC Transportation Inc.

Physical address for TMC Transportation Inc. is:
   6115 SW Leland Ave.
   Des Moines, IA  50321

Mailing address for TMC Transportation Inc. is:
   P.O. Box 1774
   Des Moines, IA  50306

Phone No.  800-247-2460 or 515-287-6380

All other terms and conditions remain unchanged.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in duplicate originals by their duly authorized representatives.

THE BOEING COMPANY
Boeing Shared Services Group

Name:  BECKY SHORT

Signature:  Becky Short

Title:  Procurement Agent

Date:  5/30/06

TMC Transportation Inc.

Name:  Dale J. Schober

Signature:  Dale J Schober

Title:  Marketing Services Manager

Date:  5/30/06

## SUBROGATION RECEIPT AND ASSIGNMENT

RECEIVED FROM Interested Underwriters and Insurers as per Exhibit A (herein referred to as "Company") THE SUM OF Five million seven hundred and fifty thousand and xx/00 Dollars ($5,750,000.00) in Full settlement of all claims and demands of the undersigned for loss and damage by vehicle upset occurring on the 13th day of June A.D. 2006, to the property described in Policy No. As Per Exhibit A.

In consideration of and to the extent of said payment the undersigned hereby subrogates and assigns to said Company on a pro rata basis in relation to amount paid by each Interested underwriter and insurer, all of the rights of recovery which the undersigned may have against any person or corporation liable for the loss mentioned above, and authorizes the said Insurance Company to exercise its rights of recovery in the undersigned's name as per the Policy referenced in Exhibit A

Warranted no settlement has been made by the undersigned with any person or corporation against whom a claim may lie, and no release has been given to anyone responsible for the loss, and that no such settlement will be made or release given by the undersigned without the written consent of the said Insurance Company and the undersigned covenants and agrees to cooperate fully with said Insurance Company in the recovery proceedings but it is understood the undersigned is to be saved harmless from the costs of such proceedings, which are borne by the Company as per the Policy terms.

In Witness Whereof _Jennifer Russell_

has affixed _No_ hand and seal for The Boeing Company has caused this instrument to be signed by its duly authorized officer and seal of the corporation affixed thereto) this _20th_ day of _November_ 20 _07_     (LS)

Witness:
_____

_____

By _Jennifer Russell_
_Director Ins Litigation & Claims_
The Boeing Company     OFFICER

| FOR INDIVIDUALS | FOR CORPORATIONS |
|---|---|
| State of | State of _ILLINOIS_ |
| ss: | ss: |
| County of | County of _COOK_ |

On the ___ day of _____ 20__, before me came_____ to me known to be the individual described in, and who executed the foregoing instrument, and acknowledged

On the _20th_ day of _Nov._ 20 _07_, before me came_____ to me known, who, being by me duly sworn, did depose and say that he resides in _____, that she is the _Director, Ins Litigation & Claims_ of _The Boeing Company_ the corporation described in, and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that S he signed h__ name thereto by like order.

_Monica Coffey_
NOTARY

FORM F-127 _____
NOTARY

OFFICIAL SEAL
MONICA COFFEY
Notary Public - State of Illinois
My Commission Expires May 1, 2010

EXHIBIT B

SCHEDULE OF INSURORS    The Boeing Company - Subrogation Receipt Exhibit A

# The Boeing Company
February 15, 2006 - February 15, 2007

June 13, 2006
Damage in Transit  (Pebbles, OH - Tukwila, WA)

| Insuror | Policy No. | Claim No. | Participation | Amount |
|---|---|---|---|---|
| Underwriters at Lloyds<br>C/o Marsh - HYNIX<br>1 Tower Place West<br>London  EC3R 5BU England<br>Attn: Nick Bartholomew<br><br>Phone: 01144 160 320 7613<br>Fax: 01144 160 320 7075<br>nick.bartholomew@marsh.com | JA487006 | JC4870040003 | 28.50% | $ 1,638,750 |
| Royal Sun Alliance<br>C/o Marsh - HYNIX<br>1 Tower Place West<br>London  EC3R 5BU England<br>Attn: Nick Bartholomew<br><br>Phone: 01144 160 320 7613<br>Fax: 01144 160 320 7075<br>nick.bartholomew@marsh.com | JC487006 | JC4870040003 | 30.00% | $ 1,725,000 |
| RLI Insurance<br>9025 N. Lindbergh Dr.<br>Peoria, IL 61615<br>Attn: Victor Corso<br><br>Phone: (309)692-1000<br>Fax:(309)692-6796<br>Victor_Corso@rlicorp.com | CAR300008 | Please Advise | 2.50% | $ 143,750 |
| St. Paul Travelers<br>P.O. Box 203<br>Iselin, NJ 08830-0203<br>Attn: Bruce Daniels<br><br>Phone 800-242-1088<br>Fax: 732-494-9505<br>bcdaniel@travelers.com | OC01200749 | AES 1736 | 1.00% | $ 57,500 |

Continued on Next Page

SCHEDULE OF INSURORS
The Boeing Company

The Boeing Company - Subrogation Receipt Exhibit A

June 13, 2006
Damage in Transit (Pebbles, OH - Tukwila, WA)

| Insuror | Policy No. | Claim No. | Participation | Amount |
|---|---|---|---|---|
| Great American Insurance Co. 65 Broadway, 20th Floor New York, NY 10006 Attn: Ben Lombardi  Phone: (510)988 -2225 Fax : (510)935-8636 blombardi@gaic.com | OMC5389697 | Please Advise | 1.00% | $      57,500 |
| Mitsui Sumitomo 560 Lexington Ave. 20th Floor New York, NY 10022 Attn: Michael Osorio  Phone: (212)230-2964 Fax: (212)319-7061 MOsorio@msicus.com | OCMM001130 | OA102921 | 5.00% | $     287,500 |
| Tokio Marine 230 Park Avenue New York, NY   10169 Attn: Patricia Quinn  Phone: (212)297-6752 Fax: (212)297-6988 Patricia.Quinn@tmclaimsservice.com | T060010666 | NG006-0267 | 5.00% | $     287,500 |
| XL Marine 99 Park Avenue, 3rd Floor New York, NY 10016 Attn:  Jonathan O'Hara  Phone: (212) 331-1304 Fax: (212) 331-1300 jonathan.ohara@xlgroup.com | UM00012841CR06A | UM00004059 | 10.00% | $     575,000 |
| Fireman's Fund 33 W. Monroe St. Ste.1200 Chicago, IL 60603-5316 Attn: Craig Pearson  Phone: (312)441-6224 Fax: (312)441-6220 craig.pearson@ffic.com | OC-96079200 | 20036261 | 2.00% | $     115,000 |

Page 2 of 3                          Continued on Next Page

SCHEDULE OF INSURORS          The Boeing Company - Subrogation Receipt Exhibit A
The Boeing Company
June 13, 2006
Damage in Transit  (Pebbles, OH - Tukwila, WA)

| Insuror | Policy No. | Claim No. | Participation | Amount |
|---|---|---|---|---|
| Astro II<br>c/o Aon Insurance Managers<br>76 Paul Street, Suite 500<br>Burlington, VT  05401-4477<br>Attn: Thao T  Nguyen<br>Thao_Nguyen@agl.aon.com<br>cc: Marsh USA<br>     1215 4th Ave  Suite 2300<br>     Seattle, WA  98161<br>     Attn; Mark Walters<br><br>cc:The Boeing Company - WHQ<br>     100 North Riverside Plaza<br>     MC 5003-3357<br>     Chicago IL  60606<br>     Attn: Elizabeth Rosenfeld and Shelly Hubicki | 314-1-06MAR | Please Advise | 10.00% | $       575,000 |
| Astro II<br>c/o Aon Insurance Managers<br>76 Paul Street, Suite 500<br>Burlington, VT  05401-4477<br>Attn: Thao T. Nguyen<br><br>cc:<br>C/o The Baloise Insurance Company<br>PO Box Aeschengraben 21<br>4000 Basle,  Switzerland<br>Attn: Priska Hostettler<br>priska.hosttetler@baloise.ch<br>Phone: 011 4161 285 71 87<br>Fax:  011 4161 285 90 09 | 314-1-06MAR | 506.06 | 4.00% | $       230,000 |
| Hartford<br>PO Box 3122<br>Naperville IL 60566<br>Attn: Sherry Ortega<br><br>Phone: (800)843-7006 X 28845<br>Fax: (800)380-9699<br>Sherry.Ortega@thehartford.com | 83CTPAJ7978 | CP6559641 | 1.00% | $        57,500 |
| **Total** | | | | **$5,750,000** |

Page 3 of 3

American Arbitration Association
*Dispute Resolution Services Worldwide*

## REQUEST FOR MEDIATION

| Name of Responding Party TMC Transportation Inc. | Name of Representative (if known) | | |
|---|---|---|---|
| Address:<br>6115 SW Leland Avenue<br><br>Attn: Todd L. Bunting | Name of Firm (if applicable) | | |
| | Representative's Address: | | |

| City<br>Des Moines | State<br>IA | Zip Code<br>50321 | City | State | Zip Code |
|---|---|---|---|---|---|
| Phone No.<br>(800) 247-2460 | | Fax No<br>(515) 287-4695 | Phone No. | | Fax No |
| Email Address: | | | Email Address: | | |

The undersigned party to an agreement contained in a written contract dated ___February 1, 2006___ , providing for mediation under the
_____Commercial_____ Mediation Procedures of the American Arbitration Association, hereby requests mediation

THE NATURE OF THE DISPUTE
Claim for damage to Boeing jet engines which suffered injury when the respondent's truck overturned on June 13, 2006 on Interstate 74 in Knox County, Illinois

CLAIM OR RELIEF SOUGHT (amount, if any):
$5 750,000.00 plus interest and misc. costs

Mediation locale ___Seattle, WA___  (check one) ☒ Requested by Filing Party  ☐ Locale provision included in the contract

Type of Business: Filing Party ___Insurance Companies___  Responding Party ___Trucking Company___

You are hereby notified that copies of our mediation agreement and this request are being filed with the American Arbitration Association's Case Management Center, located in (check one)  ☐ Atlanta, GA  ☐ Dallas, TX  ☐ East Providence, RI
☒ Fresno, CA  ☐ ICDR, NY, with a request that it commence administration of this mediation.

| Signature (may be signed by a representative)     Date:<br>11/12/07 | Name of Representative<br>David T. Maloof |
|---|---|
| Name of Filing Party<br>See attached Rider A | Name of Firm (if applicable)<br>Maloof Browne & Eagan LLC |
| Address (to be used in connection with this case):<br>See attached Rider A | Representative's Address:<br>411 Theodore Fremd Ave, Suite 190 |

| City<br>See attached Rider A | State | Zip Code<br>See attached Rider | City<br>Rye | State<br>NY | Zip Code<br>10580 |
|---|---|---|---|---|---|
| Phone No<br>See attached Rider A | | Fax No<br>See attached Rider A | Phone No<br>(914) 921-1200 | | Fax No.<br>(914) 921-1023 |
| Email Address:<br>See attached Rider A | | | Email Address:<br>dmaloof@maloofandbrowne.com | | |

To begin proceedings, please send two copies of this Request and the Mediation Agreement to the AAA. Send the originals to respondent.

Please visit our website at www adr org if you would like to file this case online.  AAA Customer Service can be reached at 800-778-7879


EXHIBIT

## RIDER A TO REQUEST FOR MEDIATION

| | |
|---|---|
| **Underwriters at Lloyds and other London Companies**<br>c/o Marsh – HYNIX<br>1 Tower Place West<br>London EC3R 5BU England<br>Attn: Nick Bartholomew<br>Tel: 01144 160 320 7613<br>Fax: 01144 160 320 7075<br>Nick.bartholomew@marsh.com | **Royal Sun Alliance Insurance Company**<br>c/o Marsh – HYNIX<br>1 Tower Place West<br>London EC3R 5BU England<br>Attn: Nick Bartholomew<br>Tel: 01144 160 320 7613<br>Fax: 01144 160 320 7075<br>Nick.bartholomew@marsh.com<br>Phil.berg@uk.royalsun.com |
| **RLI Insurance Company**<br>9025 N. Lindbergh Dr.<br>Peoria, IL 61615<br>Attn: Jim Baalmann<br>Tel: (309) 692-1000<br>Fax: (309) 692-6796<br>jim_baalmann@rlicorp.com | **St. Paul Travelers Insurance Company**<br>200 N. LaSalle, Ste 2100<br>Chicago, IL 60601<br>Attn: Mary Wiseman<br>Tel: (312) 917-3604<br>Fax: (312) 917-2130<br>mewisema@travelers.com |
| **Great American Insurance Company**<br>65 Broadway, 20th Floor<br>New York, NY 10006<br>Attn: Ben Lombardi<br>Tel: (510) 988-2225<br>Fax: (510) 935-8636<br>blombardi@gaic.com | **Mitsui Insurance Company**<br>560 Lexington Ave. 20th Floor<br>New York, NY 10022<br>Attn: Michael Osorio<br>Tel: (212) 230-2964<br>Fax: (212) 319-7061<br>mosorio@msicus.com |
| **Tokio Marine Michido & Fire Insurance Company**<br>230 Park Avenue<br>New York, NY 10169<br>Attn: Patricia Quinn<br>Tel: (212) 297-6752<br>Fax: (212) 297-6968<br>patricia.quinn@tmclaimsservice.com | **XL Insurance Company**<br>99 Park Avenue, 3rd Floor<br>New York, NY 10016<br>Attn: Jonathan O'Hara<br>Tel: (212) 331-1304<br>Fax: (212) 331-1300<br>Jonathan.ohara@xlgroup.com |
| **Fireman's Fund Insurance Company**<br>33 W. Monroe St. Ste 1200<br>Chicago IL 60603-5316<br>Attn: Fiona Hurjon<br>Tel: (312) 441-6224<br>Fax: (312) 441-6220<br>fhurjon@ffic.com | **Astro (Baloise Insurance Company)**<br>c/o Aon Insurance Managers<br>76 Paul Street, Suite 500<br>Burlington, VT 05401-4477<br>Attn: Thao T. Nguyen<br>Thao_Nguyen@agl.aon.com |

| **The Hartford Insurance Company** | **Astro (Zurich Insurance Company)** |
|---|---|
| PO Box 3122 | c/o Aon Insurance Managers |
| Naperville, IL 60566 | 76 Paul Street, Suite 500 |
| Attn: Sherry Ortega | Burlington, VT 05401-4477 |
| Tel: 800) 843-7006 x28845 | Attn: Thao T. Nguyen |
| Fax: (800) 380-9699 | Thao_Nguyen@agl.aon.com |
| yvette.kubon@thehartford.com | |

F:/IVP-Docs/2401_03/Rider A to Req for Mediation.doc

American Arbitration 11/16/2007 6:18 PM PAGE 2/022 Fax Server

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Western Case Management Center*
John M. Bishop
Vice President
Jeffrey Garcia
Assistant Vice President

6795 North Palm Ave. 2nd Floor, Fresno, CA 93704
telephone: 877-528-0880 facsimile: 559-490-1919
internet: http://www.adr.org/

November 16, 2007

**VIA FACSIMILE ONLY**

David I. Maloof, Esq
Maloof Browne & Eagan LLC
411 Theodore Fremd Avenue
Rye, NY 10580

Todd L. Bunting
TMC Transportation, Inc.
6115 SW Leland Avenue
Des Moines, IA 50321

Re: 75 174 00423 07 HIIB
Underwriters at Lloyds & Other London Companies
Royal Sun Alliance Insurance Company
RLI Insurance Company
St. Paul Travelers Insurance Company
Great American Insurance Company
Mitsui Insurance Company
Tokio Marine Michido & Fire Insurance Company
XL Insurance Company
Fireman's Fund Insurance Company
Astro (Baloise Insurance Company)
The Hartford Insurance Company
and Astro (Zurich Insurance Company)
and
TMC Transportation, Inc

Dear Parties:

This will acknowledge receipt on November 13, 2007 of a Request for Mediation dated the same between the above-named parties.

The mediation will be administered under the Association's Commercial Mediation Procedures, as amended and in effect September 1, 2007. A copy of the Procedures may be downloaded from the mediation section of our website at www.aaamediation.com.

Enclosed is a list of proposed mediators along with their respective profiles. In an effort to mutually agree on a mediator, the parties are encouraged to discuss the individuals listed and advise the Association of their agreement within three (3) business days

If the parties cannot agree on a mediator, each party is to independently indicate its order of preference, by number, for the individuals listed – leaving as many names as possible. If the Association does not receive your list on or before **November 21, 2007**, all names on the list will be deemed acceptable and the Association may appoint a mediator as provided for in section M-4 (iii) of the Mediation Procedures.


EXHIBIT D

American Arbitration 11/16/2007 6:18 PM    PAGE    3/022    Fax Server

Thank you for choosing the American Arbitration Association to manage your mediation  Please contact me if you have any questions or whenever I may be of assistance

Sincerely,

/s/
Hilda Ibarra-Medrano
Senior Case Manager
559 490 1878
Ibarrah@adr.org

## AMERICAN ARBITRATION ASSOCIATION

Re: 75 174 00423 07 HIIB
  Underwriters at Lloyds & Other London Companies
  Royal Sun Alliance Insurance Company
  RLI Insurance Company
  St. Paul Travelers Insurance Company
  Great American Insurance Company
  Mitsui Insurance Company
  Tokio Marine Michido & Fire Insurance Company
  XL Insurance Company
  Fireman's Fund Insurance Company
  Astro (Baloise Insurance Company)
  The Hartford Insurance Company
  and Astro (Zurich Insurance Company)
  and
  TMC Transportation, Inc.

Date List Submitted: November 16, 2007
Case Manager: Hilda Ibarra

### *LIST FOR SELECTION OF MEDIATOR*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The parties are encouraged to discuss the individuals listed in an effort to mutually agree to a mediator. If the parties cannot agree on a mediator, each party is to independently indicate its order of preference, by number, for the individuals listed - leaving as many names as possible. A biographical profile for each mediator listed below is attached. If your list is not received by the Association on or before November 21, 2007, all names submitted will be deemed acceptable.

Gary M. Galton
James R. Holbrook
Francis J. Raucci
Justice Robert F. Utter, Ret.
Lish Whitson

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Mediation Rate for each mediator is stated on their AAA profile. Mediator compensation is an independent obligation of the parties and it is understood that the American Arbitration Association has no liability, direct or indirect, for such payments. Each party shall promptly make such deposits with the AAA as required by the mediator as provided in the AAA's Mediation Procedures.

Party: _____

By: _____

Title: _____

American Arbitration 11/16/2007 6:18 PM  PAGE   5/022   Fax Server

The following resume(s) are printed for Hilda Ibarra

processed on Nov 16 2007 02:28 PM