IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNETT HOLDINGS, INC. d/b/a TMC TRANSPORTATION, INC. and YELLOWSTONE TRUCKING, INC., | CASE NO: 1:08-cv-01106 |
| | Honorable Judge Lefkow |
| Plaintiffs, | |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYDS AND THOSE COMPANIES SEVERALLY SUBSCRIBING TO BOEING POLICY NUMBER 509/JC487006, RLI INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, TOKIO MARINE & NICHIDO FIRE INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, ROYAL & SUN ALLIANCE INSURANCE PLC, ST. PAUL FIRE & MARINE INSURANCE COMPANY, MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA, XL SPECIALTY INSURANCE COMPANY, THE BALOISE INSURANCE COMPANY, LTD., HARTFORD FIRE INSURANCE COMPANY, ZURICH GLOBAL CORPORATE, UK LTD., | |
| Defendants. | |

**PLAINTIFFS' RESISTANCE TO DEFENDANTS' MOTION TO TRANSFER TO THE WESTERN DISTRICT OF WASHINGTON PURSUANT TO 28 U.S.C. SECTION 1404(A)**

**COME NOW** the Plaintiffs, Annett Holdings, Inc. d/b/a TMC Transportation, Inc. and Yellowstone Trucking, Inc., and submit their Resistance to Defendants' Motion to Transfer To The Western District Of Washington Pursuant To 28 U.S.C. Section 1404(a).

## INTRODUCTION

The Defendants have the burden to prove that a transfer to Washington is "clearly more convenient." In their Motion, they do not even come close to meeting this burden.

First and foremost, Defendants do not even properly allege adequate grounds for a transfer to Washington, because they do not allege (let alone support the position) that Plaintiffs could have filed their lawsuit in Washington. Thus, Defendants' motion must be summarily dismissed.

Moreover, Defendants fail to show that Washington has <u>any</u> pertinent connection to this case whatsoever. They admit that none of the parties reside in or are headquartered in Washington, they admit that none of the relevant events (such as the making of the contract and the accident) occurred in Washington, and they cite to only one nominally relevant witness who resides in Washington, simply ignoring witnesses who reside in and near Illinois and other jurisdictions far removed from the State of Washington.

At best, the Defendants can point only to the Washington choice of law provision in the applicable contract. However, this lawsuit will be governed by the Carmack Amendment to the Interstate Commerce Act, which fully preempts any state laws regarding liability of carriers for loss or damage to cargo. Thus, Washington state law will not apply in this case and therefore does not support a transfer. In fact, it appears the Defendants are aware of this federal law preemption because they do not even argue that the Washington choice of law provision supports a transfer.

In sum, the Defendants have failed to show <u>any</u> reason why this case should be transferred to Washington, and they certainly have not shown enough to meet their burden of proving that transfer is "clearly more convenient." Accordingly, the Motion to Transfer must be denied.

## **BACKGROUND**

This lawsuit relates to a transportation contract entered into between Plaintiffs and The Boeing Company ("Boeing"), pursuant to which Plaintiffs agreed to transport various cargo for Boeing throughout different parts of the country. (Hereinafter the "Service Contract"). The Service Contract was entered on February 1, 2006, and was signed by Boeing's Procurement Agent Becky Short in Wichita, Kansas. *See* Affidavit of Glen McCravy, attached hereto, as Exh. D; *see also* Exh. E attached hereto. Plaintiffs and Boeing thereafter entered into several amendments to the Service Contract, which were signed by Mrs. Short in Wichita, Kansas and later by Boeing Procurement Agent Thomas Stahlheber in St. Louis, Missouri. *Id.*

In June of 2006, Boeing tendered two jet engines to Plaintiff Yellowstone for delivery, pursuant to the Service Contract and two Bills of Lading. The Bills of Lading called for Yellowstone to pick up the jet engines in Ohio and to transport them to Washington. On June 13, 2006, while driving the jet engines though Illinois, the Yellowstone truck was involved in an accident that allegedly caused damages to the Boeing jet engines. Both the Service Contract and the Bills of Lading contain a limitation of liability provision, which limit Plaintiffs' liability for damages to cargo to $2.50 per pound – in this case $50,000.00.[1] Boeing's insurers (the Defendants herein), paid the sum of $5.75 million to cover the alleged damages to the jet engines.

Thereafter, despite the clear and unambiguous limitation of liability provisions contained in both the Service Contract and Bills of Lading, the Defendants asserted that Plaintiffs were liable for the entire amount of the loss, and demanded that Plaintiffs engage in a mediation under the Service Contract. Plaintiffs denied any liability beyond the $50,000.00 limit, and refused to mediate with Defendants. When Defendants continued to unilaterally press forward with a mediation, Plaintiffs filed this lawsuit to stop those efforts.

---

[1] Payment of this amount has been offered to the Defendants.

Plaintiffs' first choice was to file this lawsuit in their home state of Iowa. *See* Affidavit of Bradley Beaman, attached hereto as Exh. A. However, after investigating the Defendants, Plaintiffs learned that several were not licensed or admitted to do business in Iowa and thus likely were not subject to personal jurisdiction in that state. *Id.* Further investigation revealed that, on information and belief, the Defendants had entered into their contracts of insurance with Boeing in Chicago, Illinois. *Id.* This is shown by (i) Defendants' adjuster's report, which identifies their assured as the Boeing Company in Chicago, Illinois, and (ii) the proofs of loss submitted by the Defendants, which each were submitted in Chicago, Illinois. *Id.* Therefore, Plaintiffs chose to file this lawsuit in Illinois, because it was the closest forum to their home state in which they believed they could obtain personal jurisdiction over all of the Defendants. *Id.*

Defendants assert that Plaintiffs filed this action in Illinois solely "to avoid the State of Washington at all costs." (Motion at p. 2). This statement is patently false. As shown herein, Plaintiffs filed this action in Illinois for several reasons, including the convenience for Plaintiffs and their anticipated witnesses, and because Illinois was the only location in which Plaintiffs could be assured the Court had personal jurisdiction over all defendants.

Defendants also assert that "Plaintiffs are wary of the law in Washington and think that an Illinois forum will improve their chances at trial." (Motion at p. 3). The apparent basis for this assertion is Defendants' claim that under Washington state law, contractual limitation of liability provisions are not enforceable if the actor engaged in gross negligence. However, Defendants fail to advise this Court that Washington state law does not apply to this dispute. The subject contract between Plaintiffs and The Boeing Company was a trucking transportation contract, and as such is governed by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706(a) and (c)(1). Federal courts have uniformly held that state laws imposing liability on carriers for loss or damage to cargo are preempted by the Carmack Amendment. *REI Transport, Inc. v. C.H. Robinson*

*Worldwide, Inc.*, __F.3d__, WL 731614 (7th Cir. Mar. 20, 2008); *North American Van Lines, Inc. v. Pinkerton Sec. Systems, Inc*., 89 F.3d 452, 454 (7th Cir. 1996). Therefore, Washington state law simply will not apply, and thus there is no merit to Defendant's contention that Plaintiffs are trying to avoid that law.

Finally, Defendants assert that Plaintiffs "are trying to avoid Boeing." (Motion at p. 4). In fact, nothing could be further from the truth. A key issue in this case, as Defendants admit, will be the interpretation of the contract between Plaintiffs and Boeing, and whether the limitation of liability clause contained therein was intended to cover both of the Plaintiffs and accidents of this nature. As shown herein, the key Boeing witnesses on these issues are located in St. Louis, Missouri and Wichita, Kansas, both of which are much closer to Chicago, Illinois than to Seattle, Washington. *See* Exhs. D and E hereto.

## ARGUMENT

A motion to transfer venue is governed by 28 U.S.C. §1404(a), which provides "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To qualify for a transfer, the moving party bears the burden of proving that (1) venue was proper in both the transferor and transferee courts, (2) transfer is appropriate for the convenience of the parties and the witnesses, and (3) transfer is in the interests of justice. *See German American State Bank ex rel. Estate Cowan v. U.S.*, 2004 WL 1535846 at *1 (N.D. Ill. 2004). The moving party bears the burden of demonstrating that transfer is "clearly more convenient." *Id*. Here, Defendants have failed to meet their burden, and thus their Motion to Transfer must be denied.

### A.    Defendants Have Not Shown That Venue Was Proper In The Transferee District

Section 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought…" 28 U.S.C.A. § 1404(a). The Seventh

Circuit has interpreted the language, "where it might have been brought," to mean another district where the ***plaintiff*** had a right to bring the case against the defendants. *See Blaski v. Hoffman*, 260 F.2d 317, 320 (7th Cir. 1958); *Behimer v. Sullivan*, 261 F.2d 467, 469 (7th Cir. 1958). Otherwise a district court could "transfer an action to any district desired by the defendants and in which they were willing to waive their statutory defenses as to venue and jurisdiction over the persons, regardless of the fact that such transferee district was not one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski,* 363 U.S. 335, 344 (U.S. 1960) (quoting 28 U.S.C. § 1404(a)). Absent special circumstances, not present here, this means that the moving party must establish that both venue and jurisdiction would have been proper over the ***defendants*** in the transferee jurisdiction if plaintiff had brought its suit therein. *Hoffman,* 363 U.S. at 344.

In their Motion to Transfer, the Defendants' completely ignore this fundamental requirement. The Defendants mistakenly focus on the Plaintiffs' contacts with Washington, alleging that this case is eligible for transfer because the Plaintiffs are regular carriers for Boeing, routinely make shipments in Washington, and thus could have been sued in Washington. It is wholly irrelevant to this Court's determination, however, whether the ***Defendants*** could have brought an action against the ***Plaintiffs*** in Washington. *RWM Kinetics Enterprises, Inc. v. Kinetic Concepts, Inc.,* No. 95 C 5376, WL 238753, at 2 (N.D. Ill. May 7, 1996). Rather, as stated previously, the proper test is whether the ***Defendants*** would have been amenable to a suit filed by Plaintiffs in Washington. *See Centaur Ins. Co. v. Mission Ins. Group, Inc.,* 620 F.Supp. 1492, 1494 (N.D. Ill 1985). Because the Defendants have failed to assert that the Plaintiffs could have brought an action against them in Washington, their Motion to Transfer fails and must be denied.[2]

---

[2] Notably, on information and belief, several of the Defendants are not authorized to conduct insurance business in the State of Washington. *See* Exh. A hereto. Thus, it is unlikely that Plaintiffs could have filed this lawsuit against those Defendants in Washington, because they would not be subject to personal jurisdiction in that State. Accordingly, this matter cannot be transferred to Washington. *See Gallery House, Inc. v. Yi*, 587 F.Supp. 1036, 1039 (D.C. Ill. 1984)("In a case involving multiple defendants, transfer may not be made if one of the defendants is not subject to suit in the transferee's district.").

**B.    Defendants Have Failed To Prove That Transfer Is Appropriate For The Convenience Of The Parties And The Witnesses**

Factors the court considers and weighs in evaluating the convenience of the parties and witnesses include the plaintiffs' choice of forum; the situs of material events; the relative ease of access to sources of proof in each forum; the convenience of the witnesses; and the convenience of the parties of litigating in the respective forums. *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.,* 42 F.Supp.2d 821, 833 (N.D. Ill. 1999) (internal citations omitted). Here, Defendants have failed to prove that the application of these factors shows that transfer is "clearly more convenient."

**1.    Plaintiffs' choice of forum**

The plaintiff's choice of forum is generally entitled to substantial deference. *See Brandon Apparel,* 42 F.Supp.2d at 833. Moreover, the "plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor." *Vandeveld v. Christoph,* 877 F.Supp. 1160, 1167 (N.D. Ill. 1995). Even where the chosen forum is not the plaintiff's home forum, the plaintiff's choice of forum is still an important factor to be considered by the court in any transfer analysis. *See Dawdy v. Union Pacific RR Co.,* 797 N.E.2d 687, 702 (Ill. 2003)(Kilbride, J., dissenting)("Although plaintiff did not file suit in his home forum and, thus, his choice of forum is given less deference, his choice of forum is, nevertheless, still accorded considerable weight. This is especially true where, as here, the defendants' forum choice is neither plaintiff's home forum nor [defendant's] home forum.")(*citing Boner v. Peabody Coal Co.,* 568 N.E.2d 883 (Ill. 1991).

Here, Defendants' proposed forum is not the home forum of any party. Further, Plaintiffs selected this forum because they could not obtain jurisdiction in their home forum and thus selected the forum that was the closest forum to their home state in which they believed they could obtain personal jurisdiction over all of the defendants. Thus, TMC and Yellowstone's choice of forum in this Court should still be given considerable weight and favors denial of the motion to transfer.

**2.    Location of material events.**

As the Defendants concede, a material event at issue in this lawsuit was the truck accident that took place in the State of Illinois. Another key event was the contract and amendments entered into between Plaintiffs and Boeing, which took place in Wichita, Kansas and St. Louis, Missouri. Quite notably, the Defendants do not assert that *any* material events actually took place in the State of Washington. Thus, this factor favors denial of the motion to transfer.

**3.    Ease of access to sources of proof.**

Defendants argument on this factor is limited to the assertion that most of Boeing's documents regarding damages "are *presumably* located in Washington." (Motion at p. 9)(emphasis added). Notably, however, Defendants make no specific, factually-supported showing that *any* such documents are *in fact* located in the State of Washington. As such, Defendants have failed to meet their burden of proof on this issue. *See Koh v. Microtek Intern., Inc*., 250 F.Supp.2d 627, 638 (E.D. Va. 2003) (citations omitted)("Failure to make a particularized showing respecting the location of evidence undermines any weight the Court would otherwise accord based on the inconvenience of presenting that evidence in the transferee forum."); *Virgin Enterprises Ltd. v. American Longevity*, WL 34142402, at *11 (S.D.N.Y. Mar. 1, 2001)("absent a showing of particularity, the defendants have failed to sustain the burden of clearly demonstrating that this factor belongs in their column.").

Furthermore, Defendants have not shown that any such documents, even if they are located in Washington, could not easily be transported or transferred to the federal court in Illinois. Thus, even if Defendants' *presumption* regarding the location of damage documents were factually correct, it would not support a transfer to Washington. *See Institute for Human Potential, Inc. v. Dr. John T. MacDonald Foundation, Inc*., WL 709458, at *3 (N.D. Ill. 2001)("Defendant has not argued that, should this case proceed here, it could not easily transport these documents to Illinois

… Thus, access to proof – documents - does not weigh heavily in the court's analysis of defendant's motion to transfer."); *Great West Cas. Co. v. DeKeyser Exp., Inc*., WL 2861074, at \*4 (N.D. Ill. 2005)(ruling that where neither party suggested that the documents would be so voluminous that they cannot be easily transferred from one district to another, there is equal inconvenience to the parties in either jurisdiction).[3]

Finally, as Defendants concede, another key issue in this case is the contract entered into between Plaintiffs and Boeing. The Boeing employees who signed the contract and amendments are located in Wichita, Kansas and St. Louis, Missouri. *See* Exh. D hereto (McCravy Affidavit) and Exh. E. hereto (contract and amendments). Thus, the Boeing contract documents likely are located in those locations, which certainly are closer to this Court than to the court in Washington.

### 4.    Convenience of the parties.

In evaluating the convenience of the parties, the court considers their residences and ability to bear the expenses of litigating in a particular forum. *Brandon Apparel*, 42 F.Supp.2d at 834.

Here, Plaintiffs are located in Des Moines, Iowa, and selected the Chicago, Illinois forum because it is the closest forum in which they could obtain personal jurisdiction over all defendants. *See* Exh. A hereto. Moreover, litigating this matter in Chicago, Illinois will be much more convenient for Plaintiffs than would litigating it in Washington, because Illinois is much closer to its home forum, and litigating this matter in Illinois will save travel costs for Plaintiffs and their lead attorneys who also are located in Iowa. *See Blumenthal v. Mgmt. Assistance, Inc.*, 480 F.Supp. 470,

---

[3] With the advent of photocopying and other means of document production, the location of documents is no longer entitled to much weight in the transfer of venue analysis. *See In re Triton Limited Securities Litigation*, 70 F.Supp.2d 678, 690 (E.D. Tex. 1999). *See also Penwalt Corp. v. Purex Industries, Inc*., 659 F.Supp 287, 290 (D.Del. 1986)(comparatively low cost of transporting documents makes their location a less pressing factor in deciding a motion to transfer venue); *Picker Intern., Inc. v. Travelers Indem. Co.*, 35 F.Supp.2d 570, 574 (N.D. Ohio 1998) (location of documentary evidence is minor consideration, as documents may easily be sent by mail, copies or even faxed to a remote location); *American Standard, Inc. v. Bendix Corp.*, 487 F.Supp 254, 264 (W.D. Mo. 1980) (because many records, or copies thereof, are easily transported, their location is not entitled to great weight; this is particularly true with the development of photocopying).

474 (N.D. Ill. 1979)("if the convenience of counsel bears directly on the cost of litigation, it

becomes a factor to consider.").

On the other hand, Defendants are comprised of "foreign and domestic insurance companies

with scattered states and countries of incorporation and principle places of business." (Defendants'

Motion at p. 9). No Defendant asserts to be incorporated in or have its principal place of business

located in Washington, or to even have an office in Washington[4]. Therefore, litigating this case in

Chicago, Illinois will be no less convenient for Defendants than would litigating in Washington.

In an attempt to tip the scale on this factor in their favor, Defendants assert that ***their

insured***, Boeing – who is not a party to this lawsuit - "is located in and around Seattle,

Washington." However, this factor considers the convenience of the ***parties***, not their insureds or

other third parties. Moreover, the Defendants' own documents show that their insured is The

Boeing Company located in Chicago, Illinois. *See* Exh. B hereto, at p. TMC000163. Thus, even if

Boeing could be considered a "party" for purposes of this factor, its location in Chicago, Illinois

further supports a denial of the motion to transfer.

### 5.    <u>Convenience of the witnesses.</u>

A party seeking a transfer under §1404(a) has the burden to show who its witnesses are, the

nature of their testimony, and how important the testimony will be to the case. *United Air

Lines, Inc. v. Mesa Airlines, Inc.,* 8 F.Supp.2d 796, 798 (N.D. Ill. 1998). The movant must do more

than generally state what the witnesses will testify about, and must specify how their testimony will

be important to the case. *See Heller Financial*, 883 F.2d at 1294 (defendant moving to transfer "is

obligated to clearly specify the key witnesses to be called" and indicate "the materiality of that

testimony"); *Brandon Apparel*, 42 F.Supp.2d at 834 (finding that where defendant moving to

---

[4] On the other hand, one of the Defendants, RLI Insurance Company, is an Illinois corporation with its principal place of business located in Illinois, and most of the Defendants are licensed to do and doing business in Illinois. *See* Exh. A hereto.

transfer only generally stated what the witnesses would testify about without specifying how that testimony would be important to the case, "[t]he court [would] not speculate on such matters.").

Here, the Defendants' list and description of their alleged witnesses does not support a transfer to Washington. Defendants cite to the following alleged witnesses:

1.     A Boeing custodial witness. Defendants assert that "most Boeing damages documentation applicable to this case is likely located in Washington," and that Boeing's "custodial witnesses" for such documents are there too. However, Defendants do not specify what "damages documentation" they are referring to, nor do they show why any custodial witnesses will be required to testify, what they would testify about, or why their testimony will be important to the case. Therefore, any such witness cannot be considered for purposes of the transfer analysis.

2.     A Boeing representative who attended an inspection of the damaged jet engines. This presumably is the Mr. Judkins referred to in the Owen Affidavit attached to Defendants' Motion. The Owen affidavit asserts that Mr. Judkins "is knowledgeable" as to the value of the damaged jet engines. However, Defendants do not assert where Mr. Judkins' knowledge comes from, and they do not assert that he is the individual who actually determined that value. In fact, it appears that Mr. Judkins did **not** determine the salvage value on the damaged jet engines that was paid by the Defendant insurers; rather, an expert from Florida was asked to determine that salvage value for the Defendants. *See* Exh. B hereto, at pp. TMC000164 and TMC000186-187. Thus, Mr. Judkins' alleged "knowledge" of the value of the engines apparently comes from simply reading the Defendants' expert's report on value. More importantly, Boeing is the insured of the Defendants. As such, it and its employees presumably have a contractual duty to cooperate with the Defendant insurers and thus can be compelled to testify in Chicago. Accordingly, the location of a Boeing witness simply is not relevant for purposes of the transfer analysis. As stated in *Royal Ins. Co. of America v. U.S.*, 998 F.Supp. 351, 354 (S.D. N.Y. 1998):

> Related to the convenience of witnesses is the ability to compel the
> attendance of witnesses who might be reluctant to appear voluntarily.  In
> this regard, the witnesses who are under the control of one of the parties
> need not be considered…although [insured] resides in California, he is
> presumably required by the terms of his insurance policy to cooperate with
> [plaintiff insurer], and therefore would appear in New York.

3.    <u>Defendants' Insurance Adjuster</u>.  As with the Boeing employee, the insurance

adjuster for the Defendant insurers is under their control and his location thus is irrelevant for

purposes of the transfer analysis.  *See Royal Ins. Co.*, 998 F.Supp. at 354 (holding that plaintiff

insurer's claims adjuster was under its control, would thus be expected to testify on its behalf

without compulsion and thus its location need not be considered in the transfer analysis).

4.    <u>Plaintiff Yellowstone's truck drivers</u>.  Defendants assert that Plaintiff Yellowstone's

truck drivers are located in Oregon, and that Oregon is closer to Washington than Illinois.

However, these individuals are quite clearly under the Plaintiffs' control and obviously will provide

testimony in Chicago, Illinois without compulsion.  *See* Exh. D hereto, Affidavit of Glen McCravy.

Therefore, their location is irrelevant for purposes of the transfer analysis.  *See Royal Ins. Co.,* 998

F.Supp. at 354.  *See also Ful, Inc. v. Unified School Dist. No. 204,* 839 F.Supp. 1307, 1311 (N.D.

Ill. 1993)("Because it is generally assumed that witnesses within the control of the party calling

them, such as employees, will appear voluntarily, the court limits its discussion to potential non-

party witnesses."); *Brandon Apparel Group, Inc. v. Quitman Mnfg. Co.,* 42 F.Supp.2d 821, 834

(N.D. Ill. 1999)(stating that the convenience of employee-witnesses generally is assigned little

weight in a motion to transfer venue) (citing *Applied Web Sys., Inc. v. Catalytic Combustion Corp.,*

No. 90 C 4411, WL 70893, at *5 (N.D. Ill. Apr. 29, 1991)).

5.    <u>One of Defendants' damage expert witnesses</u>.  Defendants assert that one of their

expert witnesses is headquartered in California.  However, the location of Defendants' expert

witnesses is irrelevant to the transfer determination.  *See German American State Bank v. U.S.*,

2004 WL 1535846, at *2 (N.D. Ill. 2004)(*citing Binz v. Iowa Interstate R.R., Ltd.*, 1999 WL 90642

-11-

at *3 (N.D. Ill. 1999)(noting that the "location of expert witnesses called at trial by plaintiffs" was "not a factor relevant to a Section 1404(a) determination.").

Moreover, Defendants ignore several key witnesses in this case, all of whom live in or very near to Illinois.  These include the following:

1.    <u>Illinois State Patrol Officer Underwood</u>.  Officer Underwood was one of the first to arrive at the scene of the accident.  He investigated the accident, interviewed the driver, and issued an Illinois Traffic Crash Report relating to the accident.  *See* Exh. C hereto.  According to Defendants' own motion, "a central issue to be determined in this case is whether or not the truck driver's conduct…constitutes gross negligence…"  (Motion at p. 4).  If that is in fact a central issue in the case, then the testimony of the Illinois State Patrolman who first arrived on the scene and interviewed the truck driver will be of central importance.

2.    <u>Boeing employees in St. Louis, Missouri and Wichita, Kansas</u>.  Another central issue in the case will be the interpretation of the contract between Plaintiffs and Boeing, and the limitation of liability provision contained therein.  In fact, Defendants readily admit that Boeing witnesses will be required to submit testimony "concerning the Boeing-TMC Contract."  (Motion at p. 10).  Quite notably, those Boeing witnesses are Becky Short, who signed the initial contract on behalf of Boeing, and Tom Stahlheber, who signed several of the amendments to the contract.  *See* Exh. D hereto, McCravy Affidavit.  Ms. Short works out of Boeing's Wichita, Kansas office, and Mr. Stahlheber works out of Boeing's St. Louis, Missouri office.  *Id.*  Both of these locations are much closer to this Court than to the court in Seattle, Washington.

3.    <u>TMC witnesses</u>.  TMC expects to call as witnesses Dale Shaben, who signed several of the contract amendments on behalf of TMC, and Todd Bunting, who investigated the truck accident on behalf of TMC.  *See* Exh. D hereto.  Both of these individuals live and work in the Des Moines area, which is much closer to this Court than to the court in Seattle, Washington.

Based on the above, the Defendants certainly have not met their burden of proving that a transfer to Washington is "clearly more convenient" for the witnesses in this case. In fact, as shown above, a transfer to Washington would <u>increase</u> the inconvenience for the key third-party witnesses.

**C.      Defendants Have Failed To Prove That Transfer Is In The Interests Of Justice**

The 'interest of justice' is a separate component of a §1404(a) transfer analysis. *Coffey,* 796 F.2d at 220 (internal citations omitted). "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," such as likelihood of a speedy trial and, in a diversity case, familiarity of judges with applicable law. *Id.* at 221.

Here, the Defendants simply do not address any of the factors associated with the "interests of justice" component of their §1404(a) motion to transfer, and thus have failed to prove that this component favors a transfer.[5]

**D.      Defendants Allegations Of Bad Faith Conduct Are Both Irrelevant And Inaccurate**

Defendants spend a great deal of time in their Motion arguing that Plaintiffs engaged in bad faith conduct with respect to Defendants' demands for a mediation. Such arguments, however, are wholly irrelevant to the question of transfer currently pending before the Court. Even if Defendants' allegations of bad faith conduct were correct (they are not), that would have no bearing

---

[5] Notably, the Defendants do not argue that the Washington choice of law provision in the Service Contract supports a transfer of this case. Likely that is because Defendants realize that this case is governed by federal law (the Carmack Amendment), and that federal courts have uniformly held that state laws imposing liability on carriers for loss or damage to cargo are preempted by the Carmack Amendment. Moreover, even if Washington law did somehow control over the Carmack Amendment, that would not be an important factor in this Court's transfer analysis. *See Ambrose v. Steelcase, Inc.*, 2002 WL 1447871, at *2-5 (N.D. Ill. 2002)(holding that even if Florida law applied, that would not be given much weight in the transfer analysis because "[f]ederal courts are often called upon to decide substantive legal questions based on the laws of various states."). *See also Scheidt v. Klein,* 956 F.2d 963, 966 (10th Cir. 1992)("the applicability of Florida law is not a significant concern in light of the relative simplicity of the legal issues involved in the common law fraud and breach of contract claims tried in Oklahoma."); *Sorrels Steel Co., Inc. v. Great Southwest Corp.,* 651 F.Supp. 623, 630 (S.D. Miss. 1986)(holding that "the fact that a federal court may apply state law from a different forum is not to be accorded great weight in deciding a motion to transfer, especially where the applicable state law appears to be clear.") *Houk v. Kimberly-Clark Corp.* 613 F.Supp. 923, 932 (W.D. Mo. 1985)(holding on motion to transfer that "the general view, one to which this court ascribes, is that this factor is to be given little weight where, as appears to be the case here, the foreign law to be applied is neither complex or unsettled. This court is routinely called upon to apply the law of other jurisdictions in diversity actions; hence, the possibility that George law might govern this action is not of great moment.").

on whether a transfer to the State of Washington is more convenient for the parties/witnesses and is in the interests of justice.  Thus, Plaintiffs submit that this section of Defendants' Motion should simply be ignored.  However, because Defendants have wrongfully attacked Plaintiffs' prior conduct, Plaintiffs have no choice but to respond herein.

Defendants assert that Plaintiffs have been "less than cooperative and forthcoming during the present dispute" and that Plaintiffs "allowed Defendants to believe that it would participate in the mediation."  (Motion at pp. 4 and 5).  This is patently false and frivolous.  From Day One, Plaintiffs' have ***repeatedly*** informed Defendants that they believed there was no contractual obligation to participate in a mediation and that they may decline to participate in a mediation:

- On November 20, 2007, even before hiring legal counsel, Plaintiffs advised Defendants as follows:  "We are under contract with Boeing with a specified release value of $2.50 per pound.  We are not agreeing to mediation at this time."  (*See* Exh. F to Defendants' Motion).
- On January 4, 2008, Plaintiffs advised as follows: "I have also advised Mr. Maloof that while we are willing to identify mutually available dates in March for a mediation, we do reserve the right to decline to participate in a mediation, depending upon the findings and conclusions we reach in our investigation and research."  (*See* Exh. F hereto, Dennis 1/4/08 letter to AAA and Maloof).
- On January 7, 2008, Plaintiffs again advised:  "Not to belabor this issue, but I want to remind everyone that we do not agree that there is an absolute obligation to engage in mediation under the circumstances of this case.  As indicated in my prior letter, we are willing to identify a date in March for a possible mediation, but reserve the right to decline to participate in mediation."  (*See* Exh. G hereto, Dennis 1/7/08 e-mail).
- On January 23, 2008, Plaintiffs once again advised:  "As we have previously advised, we do not feel there is an absolute obligation on the part of TMC, under the applicable contract, to engage in mediation under the presently-existing circumstances of this case.  Within the next few days, however, we will be advising Mr. Maloof, counsel for Underwriters et al., as to our position regarding any possible mediation."  (*See* Exh. H hereto, Dennis 1/23/08 letter to AAA and Maloof).
- On January 24, 2008, Plaintiffs advised Defendants that "there is no reason to believe that a formal mediation of this matter would have any likelihood of resulting in a settlement," but offered that "if your client absolutely insists on conducting a mediation under the currently-existing circumstances, we would be willing to participate in a mediation by telephone conference call, if your client is willing to pay the costs of the mediator and any associated costs and charges of the American Arbitration Association."  (*See* Exh. I hereto, Dennis 1/24/08 letter).  Notably, ***Defendants refused this offer***.
- Thereafter, On February 15, 2008, Plaintiffs once again advised:  "As Mr. Dennis has previously advised, we do not believe there is an absolute obligation on the part of TMC, under the applicable contract, to engage in mediation under the circumstances of this case."  (*See* Exh. J hereto, Strother 2/15/08 e-mail to AAA and Maloof).

-14-

- Finally, on February 22, 2008, Plaintiffs advised Defendants that they had initiated this action and that in light of this action they would not be participating in mediation. (*See* Exh. K hereto, Dennis 2/22/08 letter).

Moreover, Defendants, by their own conduct, appear to acknowledge that they in fact have no contractual right to force a mediation or arbitration. On February 25, 2008, Defendants asked Plaintiffs to provide their legal basis for denying any right to mediation or arbitration. (See Exh. L hereto). On February 29, 2008, Plaintiffs provided Defendants with their legal authority. (See Exh. M hereto). Quite notably, Defendants response has been to participate in this lawsuit, to tell the Court in their Motion that they have "decided to waive mediation and arbitration," (Defendants' Motion at p. 6, FN5) and to file their own federal court lawsuit in Washington. If Defendants truly believed they had a contractual right to mediation and arbitration, they could and should have filed a motion to compel same in either this Court or elsewhere. They did not do so, and thus should not now be heard to complain that Plaintiffs would not participate in a mediation.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendants' Motion to Transfer in its entirety.

Respectfully Submitted,

Annett Holdings, Inc. d/b/a TMC Transportation, Inc. and Yellowstone Trucking, Inc.

By: */s/ Todd A. Strother*
    One of its Attorneys

Denny M. Dennis
Todd A. Strother, ARDC #6230355
BRADSHAW, FOWLER, PROCTOR & FAIRGRAVE, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-2727
Tel:    (515) 246-5848
Fax:    (515) 246-5808
E-Mail: Strother.todd@bradshawlaw.com

-15-

Christopher J. Werner, ARDC #6278691
SMITH & BENT, P.C.
53 West Jackson Boulevard, Suite 402
Chicago, IL  60622
Tel:    (312) 546-6140
Fax:    (888) 664-8172
E-Mail: cwerner@smithandbent.com