UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNETT HOLDINGS, INC. d/b/a TMC TRANSPORTATION, INC. and YELLOWSTONE TRUCKING, INC., <br><br>Plaintiffs, <br><br>v. <br><br>CERTAIN UNDERWRITERS AT LLOYDS AND THOSE COMPANIES SEVERALLY SUBSCRIBING TO BOEING POLICY NUMBER 509/JC487006, RLI INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, TOKIO MARINE & NICHIDO FIRE INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, ROYAL & SUN ALLIANCE INSURANCE PLC, ST. PAUL FIRE & MARINE INSURANCE COMPANY, MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA, XL SPECIALTY INSURANCE COMPANY, THE BALOISE INSURANCE COMPANY, LTD., HARTFORD FIRE INSURANCE COMPANY, ZURICH GLOBAL CORPORATE, UK LTD., <br><br>Defendants. | CASE NO.: 08 C 1106 (JHL) (NRN) <br><br><br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DEFER ANSWER AND DISCOVERY AND PROPOSED ORDER** |

Defendants, Certain Underwriters at Lloyds and those companies severally subscribing to Boeing Policy Number 509/JC487006, Royal & Sun Alliance Insurance plc, RLI Insurance Company, St. Paul Fire & Marine Insurance Company, Great American Insurance Company, Mitsui Sumitomo Insurance Company of America, Tokio Marine & Nichido Fire Insurance Company, XL Specialty Insurance Company, Fireman's Fund Insurance Company,

The Baloise Insurance Company, Ltd., Hartford Fire Insurance Company and Zurich Global Corporate, UK Ltd. (hereinafter "Defendants"), by and through their attorneys, Schoen Mangan & Smith and Maloof Browne & Eagan LLC, do hereby submit this Reply in support of their Motion to Defer Defendants' obligation to answer and counterclaim[1] and enter into discovery pending resolution of Defendants' Motion to Transfer. Defendants also respectfully submit a Proposed Order.

## INTRODUCTION

Plaintiffs Annett Holdings, Inc. d/b/a TMC Transportation, Inc. ("TMC") and Annett Holdings, Inc. d/b/a Yellowstone Trucking, Inc. ("Yellowstone") surprisingly attempt to miscast Defendants actions in this case, when in reality Defendants have gone out of their way to accommodate Plaintiffs. Defendants have consistently done so in good faith, despite the fact that the present action is a brazen attempt at forum shopping and a calculated effort to thwart a mediation that was in mid-stream pursuant to a binding contract.

## BACKGROUND

As Defendants have explained to the Court in their Motion to Transfer, this action is an impermissible preemptive strike by Plaintiff TMC to deprive Defendants of their right to choose a Washington forum. Plaintiff TMC was contractually required to mediate this dispute. In fact, a mediation was scheduled to proceed in Seattle, Washington on March 4, 2008; however, before the mediation could go forward, Plaintiffs filed this surprising declaratory judgment action on February 22, 2008, even though Defendants are the ones who suffered the

---

[1] Of course, in their answer Defendants intend to counterclaim pursuant to Rule 13 of the Federal Rules of Civil Procedure.

2

loss in this case.[2] Quite simply, Plaintiffs are forum shopping. Plaintiffs knew that, if mediation did not succeed, Defendants would file their affirmative suit in Washington: Washington is where the AAA mediation was scheduled to take place, Washington is where the jet engine at issue was to be delivered, Washington is where the Commercial Airplanes Division of Boeing is located, certain parties in this case contractually agreed that the law of Washington should govern any disputes arising from their contract, and even the truckers who were hauling the jet engine at issue lived a mere thirty miles from Washington's border in Oregon City, Oregon. Indeed, this suit was filed in Illinois because certain Plaintiffs clearly want to avoid unfavorable Ninth Circuit federal law holding that liability limitations will be voided for willful conduct,[3] specifically the leading case of *Vision Air Flight Service, Inc. v. M/V National Pride*, 155 F.3d 1165 (9th Cir. 1998). Here, the truck driver in question has already given a statement in which she admits that she willfully drove past numerous rest stops while half-asleep, so in the Ninth Circuit even under federal law there will be no limit of liability. We are presently aware of no Seventh Circuit precedents similar to *Vision Air*. Thus, permitting this case to proceed in Illinois could be <u>outcome determinative</u> for the entire matter. Such a use of the declaratory judgment is impermissible, and before Defendants have to answer the Amended Complaint and assert any

---

[2] Plaintiffs' Iowa counsel wrongly suggest in their papers that two of the answers by Defendants in this matter may have been overdue at the time Defendants' Motion for additional time to submit their answer was filed. In fact, Plaintiffs expressly granted Defendants a 30-day extension of time to answer. This extension was conditioned on certain of the Defendants signing waivers of service. After some typical back and forth, the agreement was in fact consummated when Defendants signed the waivers and sent them to Plaintiffs on March 20, 2008. Although Plaintiffs purportedly revoked their offer, Defendants considered it to be binding because they had already relied upon it. Therefore, each of the Defendants timely filed their Motion to extend their time to answer on April 8, 2008.

[3] This federal law will apply to Plaintiff Yellowstone, a non-party to the Boeing-TMC Contract, while Washington state law should apply to Plaintiff TMC as a party to the Boeing-TMC Contract.

counterclaims or engage in discovery in the present action, the Court should first decide Defendants' Motion to Transfer the case to the Western District of Washington.

## ARGUMENT

### I

### A SUBROGATED INSURER HAS STANDING TO ENFORCE ITS ASSURED'S CONTRACTUAL ARBITRATION CLAUSE; PLAINTIFFS' STRANGE CITATION TO TEXAS LAW TO SUGGEST THE CONTRARY IS A DODGE

In the fact section of their resistance, Plaintiff TMC makes the bizarre assertion that "Defendants had no legal or contractual right to demand a mediation under the transportation contract to which they were not a party." Plaintiffs' Resistance at p.3. However, there can be no question that Defendants—as Boeing's subrogated insurers—have the requisite standing to enforce the mediation and arbitration clause in the Boeing-TMC Contract.

In fact, insurance subrogees are bound by arbitration agreements; thus, they also must be able to enforce them. *See Laborers International Union of North America v. HAS Contractors, Inc.*, 728 F.Supp. 519, 524 (E.D. Wis. 1989) ("[T]he following types of nonparties to a contract containing an arbitration clause have been found to be bound by the arbitration agreement: . . . insurance subrogees . . ."); *see also Lumbermens Mutual Casualty Company v. Borden Company*, 268 F.Supp. 303, 313 (S.D.N.Y. 1967) ("[T]here is no valid basis in law or equity why an arbitration clause should not be enforced against a subrogee. To hold otherwise would seriously impair the validity of arbitration clauses since either party could escape the effect of such a clause once he has settled with his insurer . . ."). "Furthermore, it is fundamental law that the insurer, as subrogee, stands in the place of the insured and succeeds to whatever rights or disabilities he may have in the matter. Hence, any rights which [the subrogee] has are only rights which [the subrogor] had, and if [the subrogor's] rights were subject to

4

arbitration, [the subrogee's] rights are subject to arbitration." *Lumbermens Mut. Casualty Co.*, 268 F.Supp. at 313.

Even if the foregoing were not the law, Boeing contractually <u>assigned</u> this claim to Defendants, and contract assignees can enforce any provision of the assigned agreement. The Boeing-TMC Contract expressly permits Boeing to assign its contractual rights to any third party:

> Boeing, in its sole discretion, may assign any of its rights and responsibilities of performance under this Agreement to any third party.

(Barton Decl., Exh. B, ¶ 24). Indeed, the subrogation receipt is entitled "Subrogation Receipt And Assignment," and states that "[i]n consideration of and to the extent of said payment the undersigned hereby subrogates <u>and assigns</u> to [Defendants] . . . all of the rights of recovery which the undersigned may have . . . ." It is settled that a contract assignee is bound by an arbitration clause in an assigned contract. *Laborers International Union of North America*, 728 F.Supp. at 524; *see also Fisser v. International Bank*, 282 F.2d 231, 233 n.6 (2d Cir. 1960) ("Thus assignees of contracts containing arbitration provisions may become parties to such provisions . . . ."). Therefore, either as a subrogee or an assignee, Defendants have standing to enforce the mediation/arbitration provision in the Boeing-TMC Contract, and Plaintiffs' suggestion to the contrary is frivolous.

In fact, the Texas decision Plaintiffs rely on in support of this claim is completely inapposite. In *ASW Allstate Painting & Const. Co., Inc. v. Lexington Ins. Co.*, 94 F.Supp.2d 782 (W.D. Tex. 2000), the Court simply found that "there can be no subrogation where the insured has no cause of action against the defendant." *Id.* at 786. In the present case, however, where the insured clearly has a cause of action against Plaintiffs, the logic of *ASW* is obviously inapplicable.

5

## II

## DEFENDANTS' AFFIRMATIVE ACTION IN THE WESTERN DISTRICT OF WASHINGTON IS THE FIRST CASE FILED IN GOOD FAITH, AND THIS COURT SHOULD THEREFORE DEFER DEFENDANTS' OBLIGATION TO ANSWER UNTIL THE PROPER VENUE FOR THIS LITIGATION HAS BEEN DETERMINED

Although filed after the present action, Defendants' affirmative suit in the Western District of Washington, filed on April 2, 2008—a mere 22 days after Plaintiffs filed their Amended Complaint[4]—is the first-filed case in this litigation. Although "[w]hen two similar actions are filed, the general rule favors the forum of the first-filed suit[,]" *Schwarz v. National Van Lines, Inc.*, 317 F.Supp.2d 829, 832 (N.D. Ill. 2004), "[t]his circuit does not rigidly adhere to a 'first-to-file' rule . . . ." *Trippe Manufacturing Co. v. American Power Conversion Corp.*, 46 F.3d 624, (7th Cir. 1995) (citing *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 750-51 (7th Cir. 1987)). "[C]ourts refuse to enforce the first to file rule where forum shopping motivated the first-filed action or the first-filed action constitutes an 'improper anticipatory filing' made under threat of an imminent suit and asserting the mirror-image of that suit in another district." *Schwarz*, 317 F.Supp.2d at 833 (emphasis added); *see also Champion Laboratories, Inc. v. Burch*, 2006 WL 3370174, at *2 (S.D. Ill. 2006) ("Courts have found such circumstances present when 'the plaintiff in the first-filed action raced to the courthouse to avoid litigating in another forum, . . . the first-filed action is trivial in relation to the second-filed action, . . . or . . . the first-filed action was brought in bad faith.'" (quoting *Inforizons, Inc. v. VED Software Servs., Inc.*, 204 F.R.D. 116, 120 (N.D. Ill. 2001))).

Importantly, courts are increasingly skeptical when the first-filed action is one for a declaratory judgment. "Declaratory judgment actions brought in the face of clear threats of suit

---

[4] Defendants would have filed the action sooner, but they were expecting this matter to be mediated until Plaintiffs' ambushed them with this surprising declaratory judgment action.

6

and seeking determinations that no liability exists will be closely scrutinized as potentially improper anticipatory filings if the other party proceeds to file." *Id.* "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." *Tempco*, 819 F.2d at 750. "[T]he federal declaratory judgment is not a prize to the winner of the race to the courthouse." *Id.* (emphasis added).

Plaintiff TMC has impermissibly used the declaratory judgment tool to avoid a contractual mediation obligation in bad faith, as well as to forum shop, thereby depriving Defendants (the true Plaintiffs) of their right to choose their venue. First, Plaintiffs for weeks allowed the planning and scheduling of a contractually-required mediation to proceed to the eve of the first session in Washington, and then filed the present action without warning. Defendants did not even receive the Complaint in the present case until they had already paid approximately $2,300.00 in mediation costs and had submitted a mediation statement and evidence in support, thereby affording Plaintiffs free discovery and legal theories in Defendants' case that have not been recouped. Plaintiffs have even refused to pay their share of the mediation bill for canceling! Such a maneuver is in bad faith and, as such, the present action cannot constitute the true first-filed action.

In addition, Plaintiffs obviously filed this suit specifically to select a forum that afforded them the opportunity to avoid well-settled and adverse Ninth Circuit law. As discussed above, a leading decision in that Circuit, *Vision Air Flight Service, Inc. v. M/V National Pride*, 155 F.3d 1165 (9th Cir. 1998), held that a carrier could not avail itself of a limitation of liability if the loss in question was occasioned by willful misconduct. The rationale was compelling: "Certain egregious misconduct may be so unreasonable and may fall so far outside the parties' reasonable expectations that it was simply not contemplated." *Id.* at 1174. Although that

decision dealt with an ocean shipment, the logic clearly would apply to a trucking case—indeed, the misconduct discussed in *Vision Air* was done on land by a stevedore. *Id.* at 1167-68.

Of course, these are improper uses of the declaratory judgment action, and Defendants' Washington suit should be deemed the first-filed action. The practical consequence of such a determination is that the Court should defer Defendants' obligation to answer the Amended Complaint and counterclaim or engage in discovery in this action until the proper forum for this litigation has been decided.[5]

## III

## THE COURT IS AT LIBERTY TO GRANT A STAY IN THE INTERESTS OF JUDICIAL ECONOMY

Plaintiffs argue that the Court should not stay these proceedings. However, Defendants are not interested in prolonging this litigation; instead, Defendants simply seek to relieve the courts and the parties from engaging in duplicative activities in two fora simultaneously.

Although Defendants did not characterize their original requested relief as an open-ended stay, there is support for the Court doing just that pending a decision on the Motion to Transfer:

> "Factors which could support a showing of good cause for a stay of discovery would include, among others, the fact that the nature of the lawsuit is such that most of the controversy, evidence, and witnesses are located in the proposed transferee district and this will immediately pose discovery problems, or there may be significant discovery disputes which, therefore, will be better decided by that court."

---

[5] Defendants note that "a court may transfer the case under § 1404(a) so that it may be consolidated with the first-filed action." *The Barrington Group, Ltd v Genesys Software Systems, Inc*, 239 F.Supp.2d 870, 874 (E.D. Wis. 2003).

8

*Kron Medical Corp. v. Groth*, 119 F.R.D. 636, 638 (M.D.N.C. 1988) (citing *Stolz v. Barker*, 466 F.Supp. 24, 28 (M.D.N.C. 1978)). As Defendants have articulated at length in their Motion to Transfer, virtually this entire case will revolve around documents and witnesses located in and around Washington:

- Most of Boeing's documents regarding, *inter alia*, damages applicable to this loss are obviously located in the offices of Boeing's Commercial Airplane Division in Washington;

- Boeing damages documentation applicable to this case is likely located in Washington, and their custodial witnesses are there as well;

- The Boeing representative who conducted an inspection of the damaged jet engines is located in and around Seattle, Washington;

- The insurance adjustor of this claim is located in Lynnwood, Washington;

- Both of the truck drivers who were in the Yellowstone truck's cab during the subject accident live in Oregon City, Oregon, which the Court can take judicial notice is much closer to Washington than Illinois;

- One of Defendants' two damages witnesses, Cosentino Consulting—who is both a fact and an expert witness—is headquartered in Northern California, much closer to Washington; and

- As discussed above, a significant portion of the case as to Plaintiff TMC (the party subject to the Boeing-TMC Contract) will be contractually subject to and will turn upon Washington state law and its interpretation of what is and is not gross-negligence, which a Washington federal judge will likely be more familiar with.[6]

Thus, "most of the controversy, evidence, and witnesses are located in the proposed transferee district and this will immediately pose discovery problems . . . ." *Kron*, 119 F.R.D. at 638. No one is located in Illinois except a police officer who arrived on the scene of the accident after the

---

[6] Under Washington state law, applicable to claims against Plaintiff TMC under the Boeing-TMC Contract, there can be no contractual limit of liability for gross negligence. *E.g.*, *Reeder v. Western Gas & Power Co.*, 256 P.2d 825, 830 (Wash. 1953) (en banc). Plaintiffs' assertion that the Carmack Amendment preempts such a state law choice of law clause is simply wrong. *See Corning, Inc v. DHL Holdings, Inc.*, 2007 WL 3124690, at *3 (E.D. Ky. 2007).

fact, performed no meaningful interview or investigation because there were no personal injuries, and is thus a completely meaningless witness.

Furthermore, *Kron* and *George v. Kraft Foods Global, Inc.*, 2006 WL 3842169 (S.D. Ill. 2006), are distinguishable from the instant case to the extent that in neither of those cases was there a first-filed action already pending in the transferee jurisdiction. Certainly under these circumstances, a stay in this court is a desirable remedy to avoid duplicating the parties' efforts in two fora at once. Indeed, Defendants offered Plaintiffs a mutual stipulation extending Defendants' time to answer in the present case as well as Plaintiffs' in the Washington action in anticipation of their likely motion in that venue; Plaintiffs rejected this offer. Defendants to not seek to endlessly extend this case; the Court has indicated that a decision on the Motion to Transfer could come down as early as June 10, 2008, a mere six weeks from now.

## CONCLUSION

Defendants do not seek to unnecessarily delay litigation in this Court. Quite the contrary, Defendants have been accommodating to Plaintiffs in this case, despite their bad faith in inexplicable attempt to rely upon inapplicable Texas law and disrupting the on-going mediation mid-stream by bringing this action. Defendants simply ask the Court to grant their Motion to Defer its obligation to answer and counterclaim and to engage in discovery until after the Court rules on its Motion to Transfer to avoid having to litigate this dispute in two fora. If the Court should deny this motion, Defendants request that the Court set a date certain, no sooner than twenty (20) after such denial, for Defendants to answer the Complaint and/or Counter Claim. Of course, discovery would also be deferred until after any answer is filed as per usual Federal procedure.

Respectfully Submitted,

SCHOEN MANGAN & SMITH

By: s/Thomas P. Mangan, Esq.
200 W. Adams, Suite 1005
Chicago, IL 60606
Tel: (312) 726-5151
Fax: (312) 726-0884
Email: tmangan@schoenmslaw.com

and

MALOOF BROWNE & EAGAN, LLC
David T. Maloof, Esq.
Thomas M. Eagan, Esq.
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580
Tel: (914) 921-1200
Fax: (914) 921-1023
Email: dmaloof@maloofandbrowne.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNETT HOLDINGS, INC. d/b/a TMC TRANSPORTATION, INC. and YELLOWSTONE TRUCKING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CERTAIN UNDERWRITERS AT LLOYDS AND THOSE COMPANIES SEVERALLY SUBSCRIBING TO BOEING POLICY NUMBER 509/JC487006, RLI INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, TOKIO MARINE & NICHIDO FIRE INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, ROYAL & SUN ALLIANCE INSURANCE PLC, ST. PAUL FIRE & MARINE INSURANCE COMPANY, MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA, XL SPECIALTY INSURANCE COMPANY, THE BALOISE INSURANCE COMPANY, LTD., HARTFORD FIRE INSURANCE COMPANY, ZURICH GLOBAL CORPORATE, UK LTD., <br><br> Defendants. | CASE NO.: 08 C 1106 (JHL) (NRN) <br><br><br> **PROPOSED ORDER** |

The Court, having considered the briefs in support of and in opposition to Defendants' Motion to Defer Answer and Discovery, and the Court finding good cause, it is hereby Ordered:

    1.    That Defendants' time to Answer the Amended Complaint with Counterclaims is extended to twenty (20) days following the

    Court's ruling on Defendants' Motion to Transfer pursuant to 28 U.S.C. § 1404(a).

2. That discovery in this case is stayed pending resolution of said Motion to Transfer.

SO ORDERED:

_____
United States District Judge

2