## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANNETT HOLDINGS, INC. d/b/a TMC TRANSPORTATION, INC. and YELLOWSTONE TRUCKING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CERTAIN UNDERWRITERS AT LLOYDS AND THOSE COMPANIES SEVERALLY SUBSCRIBING TO BOEING POLICY NUMBER 509/JC487006, RLI INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, TOKIO MARINE & NICHIDO FIRE INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, ROYAL & SUN ALLIANCE INSURANCE PLC, ST. PAUL FIRE & MARINE INSURANCE COMPANY, MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA, XL SPECIALTY INSURANCE COMPANY, THE BALOISE INSURANCE COMPANY, LTD., HARTFORD FIRE INSURANCE COMPANY, ZURICH GLOBAL CORPORATE, UK LTD., <br><br> Defendants. | CASE NO.: 08 C 1106 (JHL) (NRN) <br><br> **HONORABLE JUDGE LEFKOW** <br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THIS ACTION DUE TO A PRIOR ACTION PENDING** |

Defendants, Certain Underwriters at Lloyds and those companies severally subscribing to Boeing Policy Number 509/JC487006, Royal & Sun Alliance Insurance plc, RLI Insurance Company, St. Paul Fire & Marine Insurance Company, Great American Insurance Company, Mitsui Sumitomo Insurance Company of America, Tokio Marine & Nichido Fire

Insurance Company, XL Specialty Insurance Company, Fireman's Fund Insurance Company, The Baloise Insurance Company, Ltd., Hartford Fire Insurance Company and Zurich Global Corporate, UK Ltd. (hereinafter "Defendants"), do hereby move this Honorable Court for an order:   Dismissing this action due to a prior action pending in the Western District of Washington.

## MEMORANDUM OF LAW

### INTRODUCTION

The basic facts of this case have been set forth at length in previous motions and pleadings.   Essentially, the Boeing Company (hereinafter "Boeing") entered into a "Full Truckload Transportation Contract" (the "Boeing-TMC Contract") with Plaintiff Annett Holdings, Inc. d/b/a TMC Transportation, Inc. ("TMC").[1]   (Declaration of Todd A. Barton ("Barton Decl."), Exh. A).[2] Pursuant to this agreement, TMC arranged for the shipment of two newly-manufactured Boeing jet engines from a General Electric[3] facility in Ohio to Boeing's facility in Tukwila, Washington.   On June 12, 2006, Plaintiff Annett Holdings, Inc. d/b/a Yellowstone Trucking, Inc. ("Yellowstone") dispatched two truckers to pick up the jet engines in Ohio.   In the early morning of June 13, 2006, the driver of the truck fell asleep at the wheel, careened into a ditch and caused severe damage to both jet engines.   The defendant insurance companies collectively paid out $5,750,000.00 to Boeing as a result of this accident, and now seek to recover that sum in subrogation from TMC and Yellowstone as the carriers.   (Barton Decl., Exh. B).

---

[1] This agreement initially was between Boeing and Yellowstone.  However, effective June 1, 2006, Yellowstone was replaced as the "Service Provider" under the Boeing-TMC Contract by TMC.

[2] Defendants incorporate herein by reference all exhibits previously filed on the Motion to Transfer in this case.

[3] General Electric is not a party to this dispute.

Pursuant to a binding contractual clause, Defendants initially attempted to pursue recovery through mediation. In fact, a mediation was <u>mutually</u> scheduled for March 4, 2008,[4] in Seattle, Washington, retired Chief Justice of the Washington Supreme Court, Robert F. Utter, as the mediator. However, on the eve of this mediation and without warning, Plaintiffs filed the present declaratory judgment action in Illinois, no less, despite the fact that the obvious appropriate venue for this litigation is Washington.

Washington undoubtedly is the proper forum for this litigation. Washington is where the jet engine at issue was headed, Washington is where the Commercial Airplanes Division of Boeing is located, the parties in this case contractually agreed that the law of Washington should govern any disputes arising from their contract, and even the truckers who were hauling the jet engine at issue lived a mere thirty miles from Washington's border in Oregon City, Oregon. Even the mutually-scheduled mediation was planned to take place in Seattle, Washington. Plaintiffs have attempted to defend this Illinois venue and action on various grounds; ultimately, however, the instant action is nothing more than the product of a bad faith attempt to dodge a contractual mediation requirement and an anticipatory maneuver calculated to avoid a Washington forum.

## ARGUMENT

### I

### DEFENDANTS' AFFIRMATIVE ACTION IN THE WESTERN DISTRICT OF WASHINGTON IS THE FIRST-FILED CASE, AND THE PRESENT ACTION SHOULD BE DISMISSED DUE TO THIS PRIOR ACTION PENDING

"The prior pending action doctrine is one of federal judicial efficiency 'to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of

---

[4] Defendants have documented at length the planning of this mediation in its Motion to Transfer.

conflicting judgments.'" *Curcio v. Hartford Financial Services Group*, 472 F Supp.2d 239, 243

(D. Conn. 2007). The power to entertain a motion to dismiss due to a prior pending action

typically is not based upon "any specific rule or statute, but . . . [a] desire to promote judicial

efficiency and to avoid conflicting opinions." Wright & Miller, 5C *Federal Practice &*

*Procedure* § 1360 (2008). A Connecticut federal court has discussed the standard as follows:

> The decision whether or not to . . . dismiss a proceeding rests
> within a district judge's discretion . . . however, a district court can
> go beyond the allowable bounds of discretion when it refuses to . . .
> dismiss a duplicative suit. . . . Thus, a court may dismiss an action
> when a prior pending action has been filed as long as the
> "controlling issues in the dismissed action will be determined in
> the other lawsuit."

*Curcio*, 472 F.Supp.2d at 243 (citations omitted).

Although "[w]hen two similar actions are filed, the general rule favors the forum

of the first-filed suit[,]" *Schwarz v. National Van Lines, Inc.*, 317 F.Supp.2d 829, 832 (N.D. Ill

2004), "[t]his circuit does not rigidly adhere to a 'first-to-file' rule . . . " *Trippe Manufacturing*

*Co. v. American Power Conversion Corp.*, 46 F.3d 624, (7th Cir. 1995) (citing *Tempco Elec.*

*Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 750-51 (7th Cir. 1987)). "[C]ourts

refuse to enforce the first to file rule where forum shopping motivated the first-filed action or the

first-filed action constitutes an 'improper anticipatory filing' made under threat of an imminent

suit and asserting the mirror-image of that suit in another district." *Schwarz*, 317 F.Supp.2d at

833 (emphasis added); *see also Champion Laboratories, Inc. v. Burch*, 2006 WL 3370174, at *2

(S.D. Ill. 2006) ("Courts have found such circumstances present when 'the plaintiff in the first-

filed action raced to the courthouse to avoid litigating in another forum, . . . the first-filed action

is trivial in relation to the second-filed action, . . . or . . . the first-filed action was brought in bad

4

faith." (quoting *Inforizons, Inc v. VED Software Servs., Inc.*, 204 F.R.D. 116, 120 (N.D. Ill. 2001))).

Importantly, courts are increasingly skeptical when the first-filed action is one for a declaratory judgment. "Declaratory judgment actions brought in the face of clear threats of suit and seeking determinations that no liability exists will be closely scrutinized as potentially improper anticipatory filings if the other party proceeds to file." *Id.* "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." *Tempco*, 819 F.2d at 750. "[T]he federal declaratory judgment is not a prize to the winner of the race to the courthouse." *Id.* (emphasis added).

In the present case, although Defendants' affirmative suit in the Western District of Washington chronologically was filed after the present action on April 2, 2008—a mere 22 days after Plaintiffs filed their Amended Complaint in the present case[5]—it is the first-filed case in this litigation. Plaintiff TMC has impermissibly used the declaratory judgment tool to avoid a contractual mediation obligation in bad faith reliance on inapplicable case law, as well as to forum shop, thereby depriving Defendants (the true Plaintiffs) of their right to choose their venue.

A.   **PLAINTIFF TMC DID NOT HAVE A GOOD FAITH BASIS TO DISPUTE ITS CONTRACTUAL DUTY TO MEDIATE LIABILITY, PERMITTED THE PLANNING OF A MEDIATION TO PROCEED IN BAD FAITH, AND THEREFORE THIS ACTION MUST BE DISMISSED AS THE SECOND-FILED ACTION**

The Boeing-TMC Contract contains an express mediation and arbitration clause, as well as a Washington choice-of-law provision. (Barton Decl., Exh. A, ¶¶ 21, 20). Pursuant to these contractual provisions, Defendants filed a formal Request for Mediation on November 13,

---

[5] Defendants would have filed the action sooner, but they were expecting this matter to be mediated until Plaintiffs' ambushed them with this surprising declaratory judgment action.

2007, with the American Arbitration Association ("AAA"), requesting Seattle, Washington as the situs for the mediation. In fact, a mediation was <u>mutually</u> scheduled for March 4, 2008, in Seattle, Washington, with retired Chief Justice of the Washington Supreme Court, Robert F. Utter, as the mediator. As detailed at length in Defendants' previously filed Motion to Transfer (the exhibits to which are incorporated by reference herein), Plaintiffs permitted the planning of this mediation to go forward. However, it appears they never harbored any intention of complying with their contractual duty; instead, on the eve of the scheduled mediation and without warning, they filed the instant action to avoid their obligations. Defendants did not even receive the Complaint in the present case until they had already paid approximately $2,300.00 in mediation costs and had submitted a mediation statement and evidence in support, thereby affording Plaintiffs free discovery and legal theories in Defendants' case that have not been reciprocated. Plaintiffs have even refused to pay their share of the mediation bill for canceling! This is bad faith in its truest form and thus the present action must cede to the true first-filed case in Washington. *See, e.g., Muller v. Walt Disney Productions*, 822 F.Supp. 1033, 1039 (S.D.N.Y. 1993) (applying exception to first-to-file rule where defendant strung along a plaintiff under the false hope of settlement only to file a declaratory judgment action first).

Furthermore, Plaintiffs' basis for refusing to mediate is precariously based upon a single decision from the Western District of Texas that does not even arguably support their position. In *ASW Allstate Painting & Const. Co., Inc. v. Lexington Ins. Co.*, 94 F.Supp.2d 782 (W.D. Tex. 2000), the Court simply found that "there can be no subrogation where the insured has no cause of action against the defendant." *Id.* at 786. In that case there was an express agreement that the insured would have no cause of action for damages caused by fire, which is precisely what happened. *Id.* In the present case, however, there was no waiver of rights, let

6

alone an express waiver. Thus, in a case like this where the insured clearly has a cause of action against Plaintiffs for damages in excess of any limitation of liability due to Plaintiffs' conduct, the logic of *ASW* is obviously inapplicable. Moreover, an objective look at Plaintiffs' reading of *ASW* would mean that a properly subrogated insurance company[6]—or even an insured, for that matter—never has standing to sue to recover damages beyond a limitation of liability as long as there exists a contractual limitation. The innumerable decisions permitting precisely this cause of action, however, obviates any need to seriously dispute such a contention.

---

[6] To the extent Plaintiffs' suggest that Defendants simply do not have standing as subrogees to enforce a contractual mediation or arbitration clause in its insured's transportation contract, they are clearly wrong. Insurance subrogees are bound by arbitration agreements; thus, they also must be able to enforce them. *See Laborers International Union of North America v. HAS Contractors, Inc.*, 728 F.Supp. 519, 524 (E.D. Wis. 1989) ("[T]he following types of nonparties to a contract containing an arbitration clause have been found to be bound by the arbitration agreement: . . . insurance subrogees . . . ."); *see also Lumbermens Mutual Casualty Company v. Borden Company*, 268 F.Supp. 303, 313 (S.D.N.Y. 1967) ("[T]here is no valid basis in law or equity why an arbitration clause should not be enforced against a subrogee. To hold otherwise would seriously impair the validity of arbitration clauses since either party could escape the effect of such a clause once he has settled with his insurer. . . ."). "Furthermore, it is fundamental law that the insurer, as subrogee, stands in the place of the insured and succeeds to whatever rights or disabilities he may have in the matter. Hence, any rights which [the subrogee] has are only rights which [the subrogor] had, and if [the subrogor's] rights were subject to arbitration, [the subrogee's] rights are subject to arbitration." *Lumbermens Mut. Casualty Co.*, 268 F.Supp. at 313.

　　　　Even if the foregoing were not the law, Boeing contractually <u>assigned</u> this claim to Defendants, and contract assignees can enforce any provision of the assigned agreement. The Boeing-TMC Contract expressly permits Boeing to assign its contractual rights to any third party:

> Boeing, in its sole discretion, may assign any of its rights and responsibilities of performance under this Agreement to any third party.

(Barton Decl., Exh. A, ¶ 24). Indeed, the subrogation receipt is entitled "Subrogation Receipt And Assignment," and states that "[i]n consideration of and to the extent of said payment the undersigned hereby subrogates <u>and assigns</u> to [Defendants] . . . all of the rights of recovery which the undersigned may have . . . ." (Barton Decl., Exh. B). It is settled that a contract assignee is bound by an arbitration clause in an assigned contract. *Laborers International Union of North America*, 728 F.Supp. at 524; *see also Fisser v. International Bank*, 282 F.2d 231, 233 n.6 (2d Cir. 1960) ("Thus assignees of contracts containing arbitration provisions may become parties to such provisions . . . ."). Therefore, either as a subrogee or an assignee, Defendants have standing to enforce the mediation and arbitration provision in the Boeing-TMC Contract.

Therefore, because Plaintiffs have instituted this action in bad faith, the exception to the first-to-file rule applies and this action must be dismissed under the doctrine of prior action pending.

**B.    THE PRESENT ACTION WAS MOTIVATED BY FORUM SHOPPING TO AVOID DISFAVORABLE LAW, AND THEREFORE MUST BE DISMISSED AS THE SECOND-FILED ACTION**

Plaintiffs obviously filed this suit specifically to select a forum that afforded them the opportunity to avoid well-settled and adverse federal law. As discussed in Defendants previous papers, a leading decision in the Ninth Circuit, *Vision Air Flight Service, Inc v. M/V National Pride*, 155 F.3d 1165 (9th Cir. 1998), held that a carrier could not avail itself of a limitation of liability if the loss in question was occasioned by willful misconduct. The rationale was compelling: "Certain egregious misconduct may be so unreasonable and may fall so far outside the parties' reasonable expectations that it was simply not contemplated." *Id* at 1174. Although that decision dealt with an ocean shipment, the logic clearly would apply to a trucking case—indeed, the misconduct discussed in *Vision Air* was done on land by a stevedore. *Id.* at 1167-68.[7] Predictably, Defendants are not, to date, aware of any law within the Seventh Circuit in accord.

Of course, such a use of the declaratory judgment action is improper, *Tempco*, 819 F.2d at 750, and thus, under this well-established exception to the first-filed rule, Defendants' Washington suit should be deemed the first-filed action, and the present case dismissed.

---

[7] Similarly, under Washington state law, applicable to claims against Plaintiff TMC under the Boeing-TMC Contract, there can be no contractual limit of liability for gross negligence. *E.g.*, *Reeder v. Western Gas & Power Co.*, 256 P.2d 825, 830 (Wash. 1953) (en banc). Plaintiffs' assertion that the Carmack Amendment preempts such a state law choice of law clause is simply wrong. *See Corning, Inc v. DHL Holdings, Inc*, 2007 WL 3124690, at *3 (E.D. Ky. 2007).

## CONCLUSION

The Court should grant Defendants' Motion to Dismiss this action.

Respectfully Submitted,

SCHOEN MANGAN & SMITH, LTD.

By: s/Thomas P. Mangan
　　Thomas P. Mangan, Esq.
200 W. Adams, Suite 1005
Chicago, IL 60606
Tel: (312) 726-5151
Fax: (312) 726-0884
Email: tmangan@schoenmslaw.com

and

MALOOF BROWNE & EAGAN, LLC
David T. Maloof, Esq.
Thomas M. Eagan, Esq.
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580
Tel: (914) 921-1200
Fax: (914) 921-1023
Email: dmaloof@maloofandbrowne.com
*Attorneys for Defendants*

9

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANNETT HOLDINGS, INC. d/b/a TMC TRANSPORTATION, INC. and YELLOWSTONE TRUCKING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CERTAIN UNDERWRITERS AT LLOYDS AND THOSE COMPANIES SEVERALLY SUBSCRIBING TO BOEING POLICY NUMBER 509/JC487006, RLI INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, TOKIO MARINE & NICHIDO FIRE INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, ROYAL & SUN ALLIANCE INSURANCE PLC, ST. PAUL FIRE & MARINE INSURANCE COMPANY, MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA, XL SPECIALTY INSURANCE COMPANY, THE BALOISE INSURANCE COMPANY, LTD., HARTFORD FIRE INSURANCE COMPANY, ZURICH GLOBAL CORPORATE, UK LTD., <br><br> Defendants. | CASE NO : 08 C 1106 (JHL) (NRN) <br><br><br> **DECLARATION OF TODD A. BARTON IN SUPPORT OF MOTION TO DISMISS DUE TO A PRIOR ACTION PENDING** |

I, Todd A. Barton, declare that I am an associate of Maloof Browne & Eagan LLC, attorneys for Defendants, Certain Underwriters at Lloyds and those companies severally subscribing to Boeing Policy Number 509/JC487006, Royal & Sun Alliance Insurance plc, RLI Insurance Company, St. Paul Fire & Marine Insurance Company, Great American Insurance Company, Mitsui Sumitomo Insurance Company of America, Tokio Marine & Nichido Fire

Insurance Company, XL Specialty Insurance Company, Fireman's Fund Insurance Company, The Baloise Insurance Company, Ltd., Hartford Fire Insurance Company and Zurich Global Corporate, UK Ltd. (hereinafter "Defendants"). I declare the following upon information and belief.

        1.     I attach hereto as Exhibit A a true copy of the "Full Truckload Transportation Contract" ("Boeing-TMC Contract").

        2.     I attach hereto as Exhibit B a true copy of the "Subrogation Receipt And Assignment" issued by The Boeing Company ("Boeing").

        I declare the foregoing is true and correct under penalty of perjury of the laws of the United States.

Dated: Rye, New York
      April 24 , 2008

                              Todd A. Barton