# Companies Marine Policy

We, the Insurers, hereby severally agree, in consideration of the payment to us by or on behalf of the Insured of the premium specified in the Schedule, to insure against loss, damage, liability or expense in the proportions and manner hereinafter provided. Each Insurer shall be liable only for its own respective proportion.

In witness whereof the name of the Managing Director of Ins-sure Services Limited is subscribed on behalf of each of the Insurers in accordance with the provisions of the Services Agreement that each of the Insurers has with London Processing Centre Limited (a wholly owned subsidiary of Ins-sure Services Limited).



_____ **Managing Director**

This policy is not valid unless it bears the signature of the Managing Director of Ins-sure Services Limited.



# Companies Marine Policy

We, the Insurers, hereby severally agree, in consideration of the payment to us by or on behalf of the Insured of the premium specified in the Schedule, to insure against loss, damage, liability or expense in the proportions and manner hereinafter provided. Each Insurer shall be liable only for its own respective proportion.

In witness whereof the name of the Managing Director of Ins-sure Services Limited is subscribed on behalf of each of the Insurers in accordance with the provisions of the Services Agreement that each of the Insurers has with London Processing Centre Limited (a wholly owned subsidiary of Ins-sure Services Limited).

_David Anderson_ **Managing Director**

This policy is not valid unless it bears the signature of the Managing Director of Ins-sure Services Limited.

*Not uw ——— 9/18/06*

*IN WHITNESS WHEREOF,* the Subscribers hereunder each severally, but now jointly, and not on the part of one for the other or any of the others have caused this policy to be signed by a duly authorized officer, attorney or agent this 15th day of February, 2006

| SUBSCRIBER INSURERS<br>AUTHORIZED SIGNATURE | | LIMIT | PREMIUM |
|---|---|---|---|
| **London Underwriters Lloyds and Lloyds of London**<br>Policy No. JC 487006<br><br>___per attached policy___ | Limit | $58,500,000 | $2,244,204 |
| **Zurich Global Corporate, UK Limited**<br>Policy No. JC692706 | Limit | $ 10,000,000 | $  383,625 |
| **XL Specialty Insurance Company**<br>Policy No.<br>UM00012841CR06A<br>XL Specialty Insurance Company<br>through XL Marine & Offshore Energy | Limit | $ 10,000,000 | $   383,625 |
| **Mitsui Sumitomo**<br>Policy No.<br>OCMM001130 | Limit | $ 5,000,000 | $  191,813 |
| **Tokio Marine & Nichido Fire Insurance Co.**<br>Policy No. T06-0010666 | Limit | $ 5,000,000 | $  191,813 |

Page 1 of 3

*Not Ht ——— 9/18/06*

*IN WHITNESS WHEREOF,* the Subscribers hereunder each severally, but new jointly, and not on the part of one for the other or any of the others have caused this policy to be signed by a duly authorized officer, attorney or agent this 15th day of February, 2006.

| SUBSCRIBER  INSURES AUTHORIZED SIGNATURE | | LIMIT | PREMIUM |
|---|---|---|---|
| **The Baloise Insurance Co Limited** Policy No. 97.5801789 | Limit | $ 4,000,000 | $   153,450 |
| **RLI Insurance Company** Policy No. CAR0300010 | Limit | $ 2,500,000 | $   95,906 |
| **Fireman's Fund Insurance Company** Policy No. OC96079200 | Limit | $ 2,000,000 | $   76,725 |
| **St. Paul Fire & Marine Insurance Company** Policy No. OC01200749 | Limit | $ 1,000,000 | $   38,363 |
| **Great American Insurance Company** Policy No. OMC5389697 | Limit | $ 1,000,000 | $   38,363 |

*Not MR 9/8/06*

*IN WHITNESS WHEREOF*, the Subscribers hereunder each severally, but not jointly, and not on the part of one for the other or any of the others have caused this policy to be signed by a duly authorized officer, attorney or agent this 15th day of February, 2006.

**SUBSCRIBER INSURES**
**AUTHORIZED SIGNATURE**                          **LIMIT**        **PREMIUM**

**Hartford Fire Insurance Company**
Policy No.                          Limit        $ 1,000,000      $    38,683
83CTPAJ7978

_____

Total                               Limit        $100,000,000     $3,836,250

This Insurance shall be subject to the exclusive jurisdiction
of the English Courts, except as may be expressly provided
herein to the contrary

## Policy Number    509/JC487006

## Insured    THE BOEING COMPANY and as herein

## Period of Insurance

From 15th February, 2006, 12:01am Local Standard time To 15th February 2007 12:01am Local
Standard Time and for such further period or periods as may be mutually agreed upon

## Hereto    98.2905% of 58.50% of Amounts Hereon

## Premium    As Attached

This Insurance is subject to the terms, conditions, provisions
and limitations set forth in the attached wording

*It is understood and agreed that wherever the words "Insured" and "Assured" and "Insurers" and
"Underwriters" appear in the attached wording, they are deemed to be synonymous.*

Ins-Sure
G.C.B.

Mar91 Schedule

Policy Number: JC487006

| | |
|---|---|
| **TYPE:** | MARINE CARGO/INLAND TRANSIT/BUSINESS INTERRUPTION/STOCK OPEN COVER. |
| **FORM:** | MAR 91. (English Jurisdiction deleted). |
| **ASSURED:** | **THE BOEING COMPANY** and/or associated and/or affiliated and/or interrelated and/or subsidiary companies and/or corporations as they now are or may hereafter be created and/or constituted and/or as original policy and/or policies. |
| | It is hereby noted and agreed that Underwriters' liability under any and all contracts of insurance evidenced or deemed to be evidenced by this policy shall be the liability so specified in this policy as applicable to any one such contract and shall not (save as so specified) be varied or deemed varied by virtue of the number of type of Assureds or claims under this policy.  Subject otherwise to the terms, conditions and limitations of this policy. |
| **CONVEYANCES:** | Land, sea or air and/or as original policy and/or policies. |
| **PERIOD:** | To take all insurances attaching hereto during the period 15th February, 2006, 12:01am Local Standard time to 15th February 2007 12:01am Local Standard Time. |
| **VOYAGE:** | World-wide and/or as original policy and/or policies. |
| **SUBJECT-MATTER INSURED:** | Goods and/or merchandise and/or cargo of every description incidental to the Assured's business as may be declared.  Consisting principally of, but not limited to, aircraft related commodities and/or duty and/or freight and/or insurance and/or interest and/or advances and/or charges, as original policy and/or policies. |
| **ORDER:** | 58.50% |
| **LIMITS OF LIABILITY:** | 1) Stock |

USD 100,000,000 any one occurrence. However, USD 100,000,000 in the aggregate annually and separately in respect of the perils of Earthquake, Flood and Windstorm with such Earthquake aggregate to be applied separately in respect of California and Worldwide (i.e excluding California).

The above limits are in excess of the following deductibles,

| | |
|---|---|
| Earthquake: | USD 50,000,000 any one occurrence |
| Flood: | USD  5,000,000 any one occurrence |
| Windstorm: | USD  5,000,000 any one occurrence |
| All other Perils: | USD  2,500,000 any one occurrence. |

2) Transit
USD 100,000,000 any one conveyance and in any one place at any one time.

:s-sure
T.W

Transit Deductibles

International Ocean / Air      USD 25,000 each and every loss
Domestic      USD 250,000 each and every loss
Launch Vehicles and Satellite
Transit except Ocean Marine      USD 500,000 each and every loss.

Business Interruption

30 days.

**CONDITIONS:**      Subject to all terms, clauses and conditions as per full wording including War as attached.

RE-TEST AND RE-QUALIFICATION EXPENSES

Cover hereunder is extended to include any expenses incurred by the Assured for the purpose of retest and requalification of the satellite &/or spacecraft and/or components arising from the operation of an insured peril, notwithstanding that it may subsequently be proven that such satellite &/or spacecraft and/or components did not sustain actual physical loss or damage as a result of the occurrence. Amounts claimed hereunder to be substantiated by the Assured.

This insurance is subject to Institute Marine Policy General Provisions (Cargo) Clause CL269 dated 1.10.82 but with English Law and Practice deleted and replaced with Illinois Law and Practice.

Including War, Strikes, Riots and Civil Commotions risks, as per the War and Strikes as contained within the Manuscript Wording, but the War Clauses being no wider than the current Institute/American War Clauses.



Ins-Sure
G.C.B.

Policy Number: JC487006

## MARINE POLICY
### POLICY NO.JC487006

1. **NAMED INSURED:** The Boeing Company and its affiliated, subsidiary and associated companies and/or corporations as now exist or may hereafter be constituted or acquired including their interest as may appear in partnerships or joint ventures and any party in interest which the Insured is responsible to insure.

2. **ADDRESS:**     100 N. Riverside Plaza
                    MC 5003-3357
                    Chicago, IL 60606-1596

3. **POLICY PERIOD:** February 15, 2006 beginning at 12:01 a.m. Standard Time at the location(s) of the property involved, and to continue until February 15, 2007, 12:01 a.m. Standard Time.

4. **COVERAGE, LIMITS AND DEDUCTIBLES:**

| Coverage | Limit | Deductible per Occurrence - Each claim for loss or damage shall be adjusted separately and from the adjusted amount shall be deducted the sum of: | Exceptions | Premium/ Rates (Net) |
|---|---|---|---|---|
| Ocean Marine, International Air Transit, U.S. and Non-U.S. Domestic Transit, including Business Interruption | USD 250,000,000 (100%) by any one conveyance, in any one place at any one time<br><br>It is agreed between the Insured and the Insurers that if the total value at risks exceeds the limit of liability provided by this policy the Insured shall nevertheless report the full amount at risk to the Insurers.  This agreement shall not alter or increase the limit of liability of the Insurers, but the Insurers shall be liable for the full amount of covered loss up to but not exceeding the applicable limit of liability.<br>Subject to the following program structure:<br>**Primary Layer:**<br>USD 100,000,000 by any one conveyance, in any one place at any one time.<br>**Excess Layer:**<br>USD 150,000,000 by any one conveyance, in excess of<br><br>USD 100,000,000 and excess of deductibles. | USD 25,000<br><br><br>and<br><br><br><br>Business Interruption –<br><br>30 days<br><br>waiting/ time period | Excess Layer excludes Business Interruption | Primary:<br><br>USD 742,500<br><br><br><br>Excess:<br><br>USD 37,500 Deposit/ Rate: .0189% on exposed values<br><br><br><br>Total:<br><br>USD 780,000 |

Policy Number: JC487006

| Stock | USD 200,000,000 per Occurrence except, | USD 2,500,000 except, | Excludes BI | Primary: |
|---|---|---|---|---|
| | a. USD 200,000,000 per occurrence and in the aggregate annually as respects to the peril of California Earthquake, | USD 50,000,000 Earthquake | | USD 3,093,750 |
| | b. USD 200,000,000 per occurrence and in the aggregate annually as respects to the peril of Earthquake (excluding California) | USD 5,000,000 Flood | | Excess: |
| | c USD 200,000,000 per occurrence and in the aggregate annually as respects to the peril of Flood | USD 5,000,000 Windstorm | | USD 2,250,000 |
| | d. USD 200,000,000 per occurrence and in the aggregate annually as respects to the peril of Windstorm | | | |
| | Subject to the following program structure: | | | |
| | **Primary Layer:** | | | USD 5,343,750 |
| | USD 100,000,000 per Occurrence | | | |
| | except, | | | |
| | a. USD 100,000,000 per occurrence and in the aggregate annually as respects to the peril of California Earthquake, | | | |
| | b. USD 100,000,000 per occurrence and in the aggregate annually as respects to the peril of Earthquake (excluding California) | | | |
| | c. USD 100,000,000 per occurrence and in the aggregate annually as respects to the peril of Flood | | | |
| | d. USD 100,000,000 per occurrence and in the aggregate annually as respects to the peril of Windstorm. | | | |
| | **Excess Layer:** | | | |
| | USD 100,000,000 per Occurrence | | | |
| | except, | | | |
| | a. USD 100,000,000 per occurrence and in the aggregate annually as respects to the peril of California Earthquake, | | | |
| | b. USD 100,000,000 per occurrence and in the aggregate annually as respects to the peril of Earthquake (excluding California). | | | |

Policy Number: JC487006

| | | | | |
|---|---|---|---|---|
| | c. USD 100,000,000 per occurrence and in the aggregate annually as respects to the peril of Flood.<br>d. USD 100,000,000 per occurrence and in the aggregate annually as respects to the peril of Windstorm.<br>Excess of aforementioned Primary Layer and excess of deductibles, no drop down to apply hereunder. | | | |
| Launch Vehicle and Satellite Transit | USD 250,000,000(100%) any one conveyance, in any place at any one time.<br>Subject to the following program structure:<br>**Primary Layer:**<br>USD 100,000,000 by any one conveyance, in any one place at any one time.<br>**Excess Layer:**<br>USD 150,000,000 by any one conveyance, in excess of<br>USD 100,000,000 and excess of deductibles. | USD 500,000 | Excludes BI | See Endorsement No. 3 |
| Sea Launch | USD 250,000,000 (100%) any one conveyance, or in any place at any one time.<br>**Primary Layer:**<br>USD 100,000,000 by any one conveyance, in any one place at any one time.<br>**Excess Layer:**<br>USD 150,000,000 by any one conveyance, in excess of USD 100,000,000 and excess of deductibles. | USD 500,000 | Excludes BI | See Endorsement No. 4 |
| | | | Policy Premium | Primary USD 3,836,250 Excess: USD 2,287,500 Total:<br><br>USD 6,123,750 |

Notwithstanding the foregoing, claims recoverable under the American Institute Cargo Clauses dated

Sept. 1, 1965 (unamended), the American Institute Endorsement for Open Policies (Cargo Strikes,Riots & &Civil Commotion) 87B-109B dated April 3, 1980 and claims for General Average, Salvage and Sue and Labor Charges shall be payable in full up to policy limits with no deduction.

**5. PERILS:**

All goods and/or merchandise, except as may be hereinafter especially provided, are insured against all risks of physical loss or damage, from any external cause (excepting risks excluded by the F.C.& S. and S.R.&C.C. warranties unless covered elsewhere herein), irrespective of percentage.

The following perils shall apply when and where stipulated in specific certificates or special policies issued under General Conditions Clause 25 (Certificates and/or Special Policies)

**MARINE NAMED PERILS:** Touching the adventures and perils which the said Insurers are contended to bear, and take upon themselves, they are of the seas and inland waters, men of war, fires, explosions, enemies, pirates, rovers, assailing thieves, jettisons, letters of mart and countermart, reprisals, takings at sea, arrests, restraints and detainments of all kings, princes or people of what nation, condition or quality soever, barratry of the master and mariners, and all other perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage to the said goods and/or merchandise, or any part thereof.

**SHORE COVERAGE:** Where this insurance by its terms covers while on docks, wharves or elsewhere on shore and/or during land transportation, it shall include all risks of direct physical loss or damage including any accident to the conveyance and/or collapse and/or subsidence of docks and/or structures, and to pay loss or damage caused thereby, even though the insurance be otherwise Free of Particular Average.

**6. GOODS COVERED:**

**Ocean Marine, International and Domestic Air and Inland Transit and Business Interruption**
To cover aviation products, defence materials, launch vehicles, satellites/spacecraft and other goods and/or merchandise of every description including the Insured's special or custom shipping containers, fixtures, or packaging, and including prepaid freight and/or advanced freight and/or guaranteed freight "vessel lost or not lost"(Under and/or On Deck) shipped by or to the Insured or by or to others for the Insured's account or in control or which the Insured may have an Interest. Also to cover shipments for the account of others on which the Insured may receive instructions to insure provided such instructions are given prior to shipment or prior to any known or reported loss or accident.

**Stock**

A. The interest of the Insured in all Stock owned, used, or intended for use by the Insured.

B. The interest of the Insured in the Stock of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by contract, whether written or oral, for such Stock including the cost to defend any suit against the Insured alleging direct physical loss or damage of the type insured against to said Stock even if such suit is groundless, false or fraudulent, but the Insurers may without prejudice make such investigation, negotiation or settlement of any such claim or suit as they deem expedient.

   For the purpose of this clause, property within the care, custody or control of the Insured, and thus Insured hereunder, shall include stock of others located within a Launch Pad Perimeter Fence at Space Launch Complex 17 and 37 at Cape Canaveral Air Force Station, Florida and Space Launch Complex 2W and 6 at Vandenberg Air Force Base, California.

C. Contractors' and vendors' interests in Stock covered to the extent of the Insured's liability imposed by law or assumed by contract.

D. At the sole option of the Insured:

   the interest of others (excepting common carriers) in respect of Stock of the Insured in their (others) custody, actual or constructive, or the interest of others in respect of their (others) Stock in the custody, actual or constructive, of the Insured, on shipments covered hereunder, except as hereinafter excluded. Stock of the type covered under this policy which the Insured has agreed to insure or to be responsible for loss or damage to such property.

Policy Number: JC487006

7. **GEOGRAPHICAL LIMITS:**

Lost or not lost at and from ports and/or places in the world to ports and/or places in the world directly or via ports and/or places in any order, via any route including the risk of transshipment by land, air or water whether customary or otherwise. All shipments on lakes, inland rivers, coastwise and inter coastal will be deemed as ocean shipments subject to all other terms, conditions and limitations found in this policy.

8. **EXCESS/DEDUCTIBLE CLAUSE:**

In the event of loss or damage insured under this or underlying polices, those other interest insured by the underlying policies shall be first applied to the limits of liability available thereunder and any losses to stock (as insured hereon) shall be set against the remainder of limits available thereunder, if any.

Where the underlying policies are exhausted following a loss due to Earthquake or Flood as insured hereon, then this policy shall respond for such uncollected Stock losses (as insured heron).

In the event of further losses due to Earthquake or Flood as insured hereon where the underlying aggregate limits have already been exhausted, the Insured will continue to bear a deductible for all interest insured as contained in the Insured's Astro Limited Policy No. 001-1-10272-00 or renewal or replacements thereof.

# 1  GENERAL CONDITIONS

1. **ACCUMULATION:** Should there be an accumulation of interests beyond the limits expressed in this policy by reason of any interruption of transit and/or occurrence beyond the control of the Insured, or by reason of any casualty and/or at a transshipping point and/or on a connecting steamer or conveyance, the Insurers shall hold covered such excess interest and shall be liable for the full amount at risk (but in no event for more than twice the policy limit which would be applicable to any one vessel), provided notice be given to the Insurers as soon as known to the Insured.

2. **INCREASED VALUE:** This insurance also covers Increased Value and/or Profits on shipments purchased by the Insured where Ocean Cargo insurance has been provided by others. This insurance to pay the same percentage of loss as these Insurers would pay had the shipment been insured under this policy. These Insurers also to pay such General Average and Salvage charges that are not recoverable under the original insurance. In the event goods and/or merchandise is short-delivered or sold unidentifiable at the port of destination in consequence of perils insured against, this insurance to pay a total loss on the Increased Value and/or Profits on the part short-delivered or sold unidentifiable.

   Increased Value and/or Profits valued at the difference between the amount of insurance provided by others and the valuation stated in the Valuation terms and conditions of this policy.

   Any limit expressed in this policy shall be applied separately to such Increased Value.

3. **CONVEYANCES:** By all means of transit including but not limited to steamer and/or steamers and/or motor vessels and/or barges and/or land conveyances and/or aircraft and/or mail and/or parcel post and connecting conveyances by land or otherwise. Conveyance by launch vehicle or rocket is not covered hereunder.

4. **WAREHOUSE TO WAREHOUSE:** This insurance attaches from the time the goods leave the warehouse and/or store at the place named in the declaration or certificate of insurance for the commencement of the transit and continues during the ordinary course of transit, including customary transshipment if any, until the goods are discharged over side from the overseas vessel at the final port. Thereafter the insurance continues while the goods are in transit and/or awaiting transit until delivered to the warehouse at the final destination.

5. **MARINE EXTENSION CLAUSES:** This policy is extended to cover all shipments which become at risk hereunder in accordance with the following clauses, which supersede and override General Conditions Clause 4 (Warehouse to Warehouse) and General Conditions Clause 11 (Deviation) wherever they may be contradictory or at variance.

   A. This insurance attaches from the time the goods leave the warehouse at the place named in this policy for the commencement of the transit and continues until the goods are delivered to the final warehouse at the final destination named in this policy, or a substituted destination as provided in General Conditions Clause 5.C hereunder.

   B. This insurance specially to cover the goods during:

      i.   deviation, delay, forced discharge, reshipment and transshipment,

      ii.  any other variation of the adventure arising from the exercise of a liberty granted to the shipowner or charterer under the contract of affreightment.

   C. In the event of the exercise of any liberty granted to the shipowner or charterer under the contract of affreightment whereby such contract is terminated at a port or place other than the originally insured destination, the insurance continues until the goods are sold and delivered at such port or place, or if the goods be not sold but are forwarded to the originally insured destination or to any other destination this insurance continues until the goods have arrived at final warehouse as provided in General Conditions Clause 5.A (above).

   D. It is a condition of this insurance that the Insured shall act with reasonable dispatch in all circumstances within their control.

ins-sur
T.W

E.  Goods held covered in case of change of voyage or of any omission or error in the description of the interest, vessel or voyage, at additional premium, if any.

F.  This insurance shall in no case be deemed to extend to cover loss, damage or expense proximately   caused by inherent vice or nature of the subject matter insured.

It is agreed that the Insured shall provide prompt notice to the Underwriters when they become aware of an event for which they are "held covered" under this policy.

Nothing in the foregoing shall be construed as overruling the General Conditions Clause 12 (F.C.&S. ) or the Nuclear Exclusion under Perils Excluded as extending this insurance to cover any risks of war or consequences of hostilities.

6.  **CRAFT:**  Including all risks of craft to and from the vessel, each lighter craft or conveyance to be considered as if separately insured.  Also to cover any special or supplementary lighterage.
The Insured is not to be prejudiced by any agreement exempting lightermen from liability.

7.  **LANDING WAREHOUSE:**  Notwithstanding any average warranty contained herein, the Insurers agree to pay landing, warehousing, forwarding or other expenses and/or particular charges should same be incurred, as well as any partial loss arising from transshipment.  Also to pay the insured value of any package, piece or unit totally lost in loading, transhipment and/or discharge.

8.  **NEGLIGENCE:**  The Insured is not to be prejudiced by the presence of the negligence clause and/or latent defect clause in the Bills of Lading and/or Charter Party and/or Contract of Affreightment.  The seaworthiness of the vessel and/or craft as between the Insured and Insurers is hereby admitted, and the Insurers agree that in the event unseaworthiness or a wrongful act or misconduct of shipowner, charterer, their agents or servants, shall, directly or indirectly, cause loss or damage to the cargo insured by sinking, stranding, fire, explosion, contact with seawater or by any other cause of the nature of any of the risks assumed in the policy, the Insurers will (subject to the terms of average and other conditions of the policy) pay to an innocent Insured the resulting loss.  The Insured is permitted  to sail with or without pilots, and to tow and assist vessels or craft in all situations, and also permitted  to be towed.

NOTE:  Wherever the terms seaworthiness, vessel, craft and shipowner are used in this Policy, they shall be construed also to include airworthiness, aircraft and aircraft owner.

9.  **BOTH TO BLAME:**  Where goods are shipped under a Bill of Lading containing the so-called "Both to Blame Collision" clause these Insurers agree, as to all losses covered by this insurance, to indemnify the Insured for any amount (up to the amount insured) which the Insured may be legally bound to pay to the ship owners under such clause.  In the event that such liability is asserted the Insured agrees to notify the Insurers who shall have the right, at their own cost and expense, to defend the Insured against such claim.

10.  **INCHMAREE:**  This insurance is also specially to cover any loss of or damage to the interest insured hereunder, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the Master, Mariners, Mates, Engineers or Pilots, provided, however, that this clause shall not be construed as covering loss arising out of delay, deterioration or loss of market, unless otherwise provided elsewhere herein.

11.  **DEVIATION:**  In case of short shipment in whole or in part by the vessel reported for insurance hereunder, or if the goods be transshipped by another vessel or vessels, or be carried beyond or discharged short of destination, or in the event of deviation, or change of voyage, or any interruption or other variation of the voyage or risk beyond the control of the Insured or by reason of the exercise of any liberty granted the ship owner or charterer under the contract of affreightment, this insurance shall nevertheless cover the goods until arrival at the final destination named in the declaration or certificate of insurance or until the subject matter insured is no longer at the risk of the Insured, whichever may first occur, provided prompt notice be given the Insurers when such facts are known to the Insured.

INS-SUP

17. **SHORTAGE FROM CONTAINERS:** These Insurers to pay for shortage of contents (meaning thereby the difference between the number of packages as per shipper's and/or supplier's invoice and/or packing list loaded or alleged to have been laden in the container and the count of packages removed there from taken by the Insured and/or their agent at time of container emptying) howsoever, where so ever, and when so ever occurring, but excluding liability for any such loss which can be attributed unequivocally to the forcible entry of the container which occurred following its delivery to store, warehouse or factory of the consignee at the destination to which the goods are insured.

18. **CONCEALED DAMAGE:** It is agreed that any loss or damage found upon opening of original shipping packages at the final destination shall be adjusted and paid by the Insurers in the same manner as though the original shipping packages had been opened immediately upon their arrival, provided such loss or damage is otherwise recoverable under the terms of this policy. Where original shipping packages arrive at the final destination in a visibly damaged condition, they shall be opened immediately.

19. **INSUFFIENCY OF PACKING:** In the event of a claim being made for loss or damage which is alleged to be caused by insufficiency or unsuitability of packing or preparation of the insured goods and/or merchandise and/or property, This Insurer hereby agrees that it will not assert such alleged insufficiency or unsuitability as a defense against the claim in any case where the packing or preparation was carried out by a party other than The Insured making claim and the insufficiency or unsuitability arose without The Insured's privity or knowledge. For the purpose of this Clause, "packing" shall be deemed to include stowage in a container, trailer or rail car.

20. **FREE ON BOARD (F.O.B.)/FREE ALONG SIDE (F.A.S.) SALES:** This policy is extended to cover goods and/or merchandise sold by the Insured for export on F.O.B., F.A.S. or similar terms of sale whereby the Insured is not required to provide insurance for the ocean voyage from the time the goods and/or merchandise leave the original point of shipment and continue until the goods and/or merchandise are delivered and accepted at the final destination.

21. **GUARANTEE OF COLLECTIBILITY:** It is understood and agreed that this policy, subject to its terms and conditions, is extended to cover the interest of the insured as an unpaid vendor on shipments sold Cost & Freight (C&F), F.O.B., F.A.S. Ocean vessel or other terms whereby the Insured is not obliged to furnish Ocean Marine Insurance.

Shipments referred to above shall be valued at the Insured's sales price.

In the event of a loss covered by this policy, and if the Insured is unable to collect the selling price of the goods and/or merchandise in the regular course, these Insurers shall advance the amount of such loss pending collection from the buyer. Such advance shall be repayable without interest upon remittance of the selling price by the buyer or to the extent of any recovery received by the Insured from insurance effected by the buyer or otherwise. The Insured shall use all reasonable means to collect the full amount due from the buyer and reimburse these Insurers, the latter sharing the expense of such collection in proportion to its interests therein.

It is further understood and agreed that the insurance provided by this clause is hereby extended to cover the Insured's interest in shipments sold by them under which part payment is received under Letters of Credit and the balance on Sight Draft or similar terms, to the extent of said balance. The liability of these Insurers shall be for the proportion of loss, if any, hereunder which the said balance bears to the Insured's sales price.

22. **DELIBERATE DAMAGE – POLLUTION HAZARD:** This policy is extended to cover, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under the policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

This clause shall not increase the Limits of Liability provided for in this policy.

23. **DAMAGE BY GOVERNMENTAL AGENCIES:** This insurance also covers, notwithstanding the F.C. & S. warranty specified in this policy, and subject to all other insuring terms, conditions and warranties set forth elsewhere in this policy, physical loss of and damage to the shipment arising out of the performance of inspection duties by customs service agents or other duly constituted governmental agencies.

24. **DUTY & CONTINGENT FREIGHT:** This insurance also covers, subject to policy terms of average, the risk of partial loss by reason of perils insured against on the freight payable at port of destination (unless guaranteed or payable "vessel lost or not lost") and on duties imposed on goods and/or merchandise insured hereunder, it being understood and agreed, however, that when the risk upon the goods and/or merchandise continues beyond the time of landing from the overseas vessel, the increased value, consequent upon the payment of such freight and/or duties, shall attach as an additional insurance upon the goods and/or merchandise from the time such freight and/or duty is paid or becomes due, to the extent of the amounts thereof actually paid or payable.

Any limit of liability expressed in this policy shall be applied separately to such increased value.

The Insured will, in all cases, use reasonable efforts to obtain abatement or refund of duties paid or claimed in respect of goods and/or merchandise lost, damaged or destroyed. It is further agreed that the Insured shall, when the Insurer so elects, surrender the goods and/or merchandise to the customs authorities and recover duties thereon as provided by law, in which event the claim under this policy shall be only for a total loss of the goods and/or merchandise so surrendered and expenses.

This insurance on freight and/or duty and/or increased value shall terminate at the end of the import movement covered under this policy (including the General Conditions Clause 4 (Warehouse to Warehouse) and/or General Conditions Clause 5 (Marine Extension) incorporated herein), but nothing contained in these clauses shall alter or affect any coverage granted elsewhere in the policy during the storage or transit subsequent thereto.

25. **CERTIFICATES AND/OR SPECIAL POLICIES:**

**OCEAN CARGO:**

Authority is hereby given the Insured to issue and countersign the Insurer's certificates and/or special policies (including endorsements thereto) on any and/or all shipments insured hereunder, but only subject to the terms and conditions of this policy, it being understood and agreed that all certificates and/or special policies and/or endorsements shall be countersigned by a duly authorized representative of the Insured.

**ALL OTHER:**

Any certificate of insurance issued in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein.

26. **VESSEL CLASSIFICATION:**
Per regular line steamers or motor vessels operating in their regular trade as per this Insurer's Vessel Classification. Also per other iron or steel steamers or motor vessels not over 20 years of age nor less than 1,000 tons net register, and Classed A-1 American Record or 100 A-1 Lloyd's Register or equivalent, but excluding vessels built (a) during World War 11 or (b) for service on the Great Lakes, or (c) for military or naval service.

Via Certified Airlines and/or Insured's Aircraft.

27. **FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES:** This policy covers the following expenses resulting from a peril insured against:

A.      fire brigade charges and any other extinguishing expenses which the Insured incurs,

B.      loss and disposal of fire extinguishing materials expended.

28. **EXPEDITING EXPENSE:**  This policy covers the extra cost of temporary repair and/or replacement and of expediting the repair and/or replacement of damaged property insured hereunder, including but not limited to, overtime and express freight or other rapid means of transportation.

29. **CONSEQUENTIAL LOSS:** This policy insures against consequential loss to the property insured caused by change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration resulting from damage by a peril insured against to equipment supplying such services.

In the event of direct physical loss or damage not otherwise excluded to property, and such damage, without the intervention of any other cause, results in a sequence of events which causes physical damage to insured property, then there shall be liability under the policy for the resulting loss.

30. **MACHINERY:** On shipments of machinery or other manufactured products, consisting when complete for sale or in several parts, the liability of the Insurers is limited to the insured value of the part or parts lost or damaged, or, at Insured's option, the cost and expense of replacing, duplicating, assembling and repairing the lost or damaged part or parts (including duty and/or forwarding charges via vessel and/or air) and labor and installation charges necessary to restore the damaged machine or product to its condition at time of shipment. But in any event, not exceeding the amount of insurance on the damaged item at the time of loss.

31. **PAIR AND SET:** Except as provided under General Conditions Clause 29 (CONSEQUENTIAL LOSS ) and General Conditions Clause 30 (MACHINERY) , in the event of a total loss of any article or articles which are a part of a set, the Insurer will pay at the option of the Insured, the amount for the complete set less any applicable deductible. The Insured agrees, if such option is taken, to surrender all articles comprising the set to the Insurer as salvage, unless otherwise provided in this policy.

32. **RE-TEST AND RE-QUALIFICATION EXPENSES:** Cover hereunder is extended to include any expenses incurred by the Assured for the purpose of retest and requalification of the satellite &/or spacecraft and/or components arising from the operation of an insured peril upon the insured interest hereunder, notwithstanding that it may subsequently be proven that such satellite &/or spacecraft and/or components did not sustain actual physical loss or damage as a result of the occurrence. Amounts claimed hereunder to be substantiated by the Assured.

33. **COINSURANCE DEFICIENCY:** This policy covers the loss sustained by the Insured which results from the application of a coinsurance or average clause in the Insured's primary insurance policies. Therefore, this policy shall pay the difference between the amount recoverable under such primary insurance and the total amount of the loss which would have been recoverable under such primary insurance without application of a coinsurance or average clause thereunder subject to the limits of liability as set forth herein.

**34.  TAX LIABILITY:**

In the event that a loss covered hereunder cannot be paid in the country where the loss insured under this policy has occurred, this insurer shall be liable for an additional loss payment in accordance with the following formula:

$$\text{Loss payment due under this section} = \frac{C - A}{B}\ C$$

Defined as:

A      Local tax benefit received where the loss occurred.

B      1 minus the effective tax rate in the country where loss payments are received. The tax rate shall be corporate tax rate in effect for the fiscal year when the loss occurred.

C      Actual loss otherwise payable under this policy, except for the operation of this clause.

Should the effective local tax rate where the loss occurs be equal to or greater than the effective tax rate in the country where loss payments are to be received, then the formula stated in Clause A. above shall not apply. The tax rates applicable shall be the respective corporate tax rates in effect for the fiscal year when the loss occurred.

**35.  TAX TREATMENT OF PROFITS:**  This policy is extended to cover the additional loss sustained by the Insured resulting from a peril insured against in the event the tax treatment of:

A.     The profit portion of a loss recovery involving finished stock manufactured or purchased by the Insured, and/or

B.     The profit portion of business interruption loss proceeds,

differs from the tax treatment of profits that would have been incurred had no loss occurred.

**36.  DIFFERENCE IN CONDITIONS / DIFFERENCE OF CONDITIONS:**  Applicable only to direct physical loss or damage occurring within the Policy Territory but outside of the United States and Canada, and only when there is primary insurance (whether admitted or not and whether or not required by law) in effect and intended to apply to claims in that other country, and covering in whole or in part the same interests as covered herein:

The Insurer shall be liable for direct physical loss or damage when the perils, definitions, limit(s) of liability and/or other terms of this Policy are broader in meaning or scope, or greater in limit available, than those of such primary insurance, including when recovery under such primary insurance is reduced by the application of a coinsurance (or similar) clause therein.  The Insurer shall be liable for the amount of loss covered under the terms and conditions of this policy in excess of the recovery which can be obtained from such primary insurance.  However, in no event will this policy apply to the deductible(s) of such other insurance, nor respond to any coverage of such other insurance that is not covered by this policy.

This does not apply to separate terrorism insurance.

As used in this policy, Primary Insurance shall mean locally admitted and/or non-admitted policies issued to the Insured.

Ins-Sure

G.C.D.

37. **FOREIGN CURRENCY:** Privilege is granted the Insured to insure in foreign currencies. Loss, if any, is to be paid in such currencies as directed by the Insured at the time of loss adjustment, or at the rate of exchange current at the date of settlement, all at the option of the Insured.

In the event of loss adjustment involving local currency, conversion into the currency of the United States of America shall be at the New York Foreign Exchange selling rate published in the Wall Street Journal.

If, however, any part of or all of the adjustment is based on the cost of replacement or reconditioning, then that amount of the settlement so based shall be converted into the currency of the United States of America at the New York Foreign Exchange selling rate published in the Wall Street Journal at the time the cost of the replacement or reconditioning is incurred.

In the event of a business interruption or extra expense loss adjustment involving local currency, conversion into the currency of the United States of America shall be the average of the daily New York Foreign Exchange selling rate published in the Wall Street Journal in effect during the month the actual loss is incurred.

Local currency, wherever used in this policy, shall mean currency of the country where loss occurs. This definition shall also include local currency equivalent.

38. **DEVALUATION:** This insurance covers any deficiency in the amount of collectible loss under primary insurance caused by devaluation of the currency in which it is written. However, the Insured agrees to adjust such deficiencies as soon as practicable after the date of the currency's devaluation.

39. **ASSISTANCE AND COOPERATION OF THE INSURED:** The Insured shall reasonably cooperate with this Insurer and, upon this Insurer's reasonable request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

40. **REINSTATEMENT:** With the exception of loss subject to annual aggregate limits no loss hereunder shall reduce the amount of this policy.

41. **GENERAL AVERAGE:** General Average, Salvage and Special Charges, as per foreign custom, payable according to foreign statement, and/or per York-Antwerp Rules and/or in accordance with the contract of affreightment, if and as required, or, failing any provision in or if there is no contract of affreightment, payable in accordance with the Laws and Usages of the destination. These losses will be payable in full irrespective of insured or contributory values.

42. **SUE & LABOUR / PRESERVATION OF PROPERTY:** In case of any imminent or actual loss or misfortune, it shall be lawful and necessary to and for the Insured, his or their factors, servants and assigns, to sue, labour and travel for in and about the defence, safeguard and recovery of the said goods and /or merchandise, or any part thereof without prejudice to this insurance, nor shall the acts of the Insured or Insurers, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of abandonment, to the charges whereof the said Insurers will contribute according to the rate and quantity of the sum herein insured.

43. **DELAY:** Warranted free of claim for loss of market or for loss, damage or deterioration arising from delay, unless such delay be caused by a peril insured against.

44. **WAIVER AND/OR RELEASE:** As respects all shipments of goods covered in Clause 1, privilege is given the Insured to accept Contracts of Carriage, Charters and/or Bills of Lading and/or Receipts from common and/or contract carriers and/or owners and/or operators of vessels, tugs, barges and/or lighters and/or aircraft and/or conveyances (including terminals and/or warehouses) containing waivers and/or releases of liabilities. Privilege is also granted the Insured to execute railroad sidetrack agreements with or without a release of liability.

The use of the aforementioned conveyances and/or terminals which may be owned in whole or in part by the Insured and/or its subsidiaries and/or affiliated companies or corporations shall not prejudice this insurance.

**45. CARRIER AND BAILEE:** The Insured may waive right(s) of recovery against private and contract carriers and accept bills of lading or receipts from carriers, bailees, warehousemen or processors limiting their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor.

With respect to shipments made under F.O.B. or similar terms the Insurer agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

**46. DEBRIS REMOVAL:** This policy covers expenses incurred for the removal of all debris of the property covered hereunder which may be occasioned by loss caused by any of the perils insured except that the Insurers shall not be liable under this clause for more than twenty five (25%) percent of the insured value of the damaged goods and/or merchandise. In no event shall these Insurers be liable for more than the limit(s) of liability contained elsewhere herein. Nothing contained herein shall be construed to cover any clean up expenses for which the Insured may be liable under any pollution statute.

**47. OTHER INSURANCE:** In case the interest hereby insured is covered by other insurance (except as hereinafter provided) the loss shall be collected from the several policies in the order of the date of their attachment, insurance attaching on the same date to be deemed simultaneous and to contribute pro rata, provided, however, that where any fire insurance, or any insurance (including fire) taken out by any carrier or bailee (other than the Insured) is available to the beneficiary of this policy, or would be so available if this insurance did not exist, then this insurance shall be void to the extent that such other insurance is or would have been available.

**48. EXCESS INSURANCE:** Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

**49. UNDERLYING INSURANCE:** Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered other insurance as defined in the Other Insurance clause.

**50. UNINTENTIONAL ERRORS OR UNINTENTIONAL OMISSIONS:** Any unintentional error or unintentional omission made by the Insured shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery by:

The Boeing Company
Senior Director of Risk Management and Insurance
World Headquarters
100 North Riverside Plaza
MC5003-3357
Chicago, Illinois 60606-1596

**51. NOTICE OF LOSS:** The Insured shall report to Marsh, Inc. (for transmission to the Insurers), or to the agents of the Insurer if there be one at or near the place where the loss occurs or the expenses are incurred, or if there be none in the vicinity to the correspondent of the American Institute of Marine Underwriters or to Lloyd's Agent every loss or damage which may become a claim under this insurance as soon as may be practicable after it becomes known to them.

**52. PROOF OF LOSS:** It shall be necessary for the Insured to render a signed and sworn proof of loss to this Insurer or its appointed representative stating: the place, time, and cause of the loss, damage, or expense, the interest of the Insured and of all others, the value of the property involved in the loss, and the amount of loss, damage, or expense.

ns-sure

53. **LOSS ADJUSTMENT:**
McLarens Young International
11808 Northup Way, Suite W-320
Bellevue, WA 98005

or

VeriClaim
233 South Wacker Drive, Suite 2430
Chicago, Illinois, 60606-6308

as chosen by the Insured at the time of loss, will represent this Insurer in the investigation and adjustment of any loss under this policy.

54. **CONFORMANCE:** The terms of this policy which are in conflict with the applicable statutes of the territory wherein this policy is issued are hereby amended to conform to such statutes, unless the statutes narrow or limit the coverage afforded by this policy and bar a policy from providing broader coverage.

55. **PAYEE:** Loss, if any, payable to Insured or to whomever the Insured designates.

56. **PARTIAL LOSS:** In all cases of damage caused by perils insured against, the loss shall, as far as practicable, be ascertained by a separation and a sale or appraisement (cost of which to become part of the claim) of the damaged portion only of the contents of the packages so damaged and not otherwise.

57. **PARTIAL PAYMENT OF LOSS:** In the event of a loss covered by this policy, it is understood and agreed that this Insurer shall allow partial payment(s) of the claim subject to the policy provisions, and shall not be less than the undisputed estimate of loss or damage between the Insured and the Insurer.

58. **CLAIM PAYMENT:** Claims recoverable hereunder to be paid within thirty (30) days after filing satisfactory proof-of-loss after full agreement of valid claim by Insurers hereon.

59. **LOSS ADJUSTMENT EXPENSE:** This policy is extended to include expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. However, this Insurer shall not be liable under this clause for expenses incurred by the Insured in utilizing the services of a public adjuster.

60. **APPRAISAL:** If the Insured and the Insurers fail to agree on the amount of loss, each, upon the written demand made by Insured or the Insurers within sixty (60) days after receipt of proof of loss by the Insured, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for fifteen (15) days to agree upon such umpire, then upon the request of the Insured or of the Insurers such umpire shall be selected by a judge of a court of record in the country and state in which such appraisal is pending. Then at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Insurers shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

61. **SUBROGATION:** Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, affiliated, subsidiary, and associated companies or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and, if mutually agreed between Insured and the Insurer against a tenant, vendor, supplier or customer of the Insured.

In the event of any payment under this policy, this Insurer shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of this Insurer to secure such right. This Insurer will act in concert with all other interests concerned, i.e., the Insured and any other Insurer(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne by the party initiating the proceedings.

62. **SUIT AGAINST THE INSURER** No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy, however, if there is any dispute between the Insured and the Insurer as to whether the Insured has fully complied with all the requirements of this policy, such a dispute may be resolved in a suit or action on the policy for recovery of any claim. The Insurer agrees that any action or proceedings against it for recovery of any loss under this policy shall not be barred if commenced within two years and one day after the Insured provides notice to the Insurer in accordance with General Conditions Clause 48 (Notice of Loss) and General Conditions Clause 49 (Proof of Loss) above, which period shall be tolled from the date of notice until the date that the Insured receives the Insurer's final coverage decision (this two year and one day period is referred to as the "limitations period"). However, the limitations period shall not apply if by the laws of the State of the address of the Insured such a limitation is invalid or if the laws of the state in which any such action is brought permit a longer period of time within which to commence such a suit. Furthermore, any tolling of the limitations period shall not preclude the Insured from bringing a suit or any other proceeding regarding recovery for any loss or of any claim hereunder during the period of tolling or at any other time. Prosecution of a suit by the Insured shall not be barred due to the failure of the Insurer to timely advise and notify the Insured of the expiration of any applicable dates to file and commence said suit.

It is agreed that in the event of the failure of the Insurer to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law. The Insurer shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the Insured in any such court.

63. **CAPTIONS / TITLES OF PARAGRAPHS:** The captions / titles of the paragraphs of this policy and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

64. **CANCELLATION:** This policy may be canceled at any time at the request of the Insured or the Insurer. Written notice of cancellation may be given by the Insurer by mailing to:

> The Boeing Company
> World Headquarters
> Attention: Senior Director of Risk Management and Insurance
> 100 North Riverside Plaza, MC5003-3357
> Chicago, IL 60606-1596

and to the additional insureds / loss payees indicated on any certificates of insurance issued during the term of this policy, written notice stating the effective date and hour of cancellation which shall not be earlier than ninety (90) days after mailing of said notice. The earned premium shall be computed on a pro-rata basis. In the event of non-payment of premium, twenty (20) days notice of cancellation will be given, and reinstatement of coverage shall be effective immediately upon receipt of premium by the Insurer.

The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Insurer shall be equivalent to mailing. Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will continue in full force until such property is delivered and accepted at place of final destination.

65. **LABELS:** In case of damage from perils insured against affecting labels, capsules or wrappers, the loss to be limited to an amount sufficient to pay the cost of new labels, capsules or wrappers and the cost of re-labeling and reconditioning the goods and/or merchandise provided same amounts to a claim under the terms of the policy.

66.  **BRANDS AND TRADEMARKS:** In case of damage to goods and/or merchandise and/or property insured under this policy bearing a brand or trademark, the sale of which in any way carries or implies a guarantee, the salvage value of such damaged goods and/or merchandise and/or property shall be determined after removal of all brands and trademarks.

With respect to packaging from which the brand or trademark cannot be removed, the contents shall be transferred into plain packaging, subject always to the consent of The Insured.

With respect to any goods and/or merchandise and/or property for which it is deemed by The Insured to be impractical to destroy all evidence of The Insured's connection therewith, This Insurer agrees to waive its right to salvage and The Insured is granted the option to destroy such damaged goods and/or merchandise and/or property. If the Insured exercises its option to destroy any damaged goods and/or merchandise and/or property This Insurer shall be given the opportunity to have a representative in attendance during such destruction.

The cost to remove brands and trademarks, as well as the cost to remove the contents from their original packaging and transfer them into plain packaging, shall be borne by This Insurer, but in no event shall This Insurer be liable for more than the insured value of the damaged goods and/or merchandise and/or property.

67.  **CONTROL OF DAMAGED GOODS AND/OR MERCHANDISE AND/OR PROPERTY:**
Notwithstanding anything to the contrary contained elsewhere in this policy, it is understood and agreed that in case of damage, or if The Insured reasonably suspects damage may exist, to goods and/or merchandise and/or property insured under this policy, The Insured is to retain full and absolute discretion and control over the disposition of all such goods and/or merchandise and/or property. It is understood that The Insured shall be the sole judge as to whether disposal or sale of such goods and/or merchandise and/or property is detrimental to its interest.

It is unable to sell or dispose of under its agreement with any trade association or other entity, shall be treated as a constructive Any goods and/or merchandise and/or property which The Insured deems unfit for sale or which total loss, and The Insured shall dispose of the goods and/or merchandise and/or property to its best advantage with This Insurer being entitled to its share of the net proceeds resulting from such disposition, or the goods and/or merchandise and/or property shall be destroyed after notification to This Insurer and any expenses incurred in connection with such destruction shall be borne by This Insurer. This Insurer shall be given the opportunity to have a representative in attendance during such destruction.

68.  **SALVAGE AND RECOVERIES:** All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received subsequent or prior to a loss settlement under this policy shall reduce the loss accordingly. Where, in the sole opinion of the Insured, property cannot be made available for salvage because of US Government security requirements or potential damage to the Insured due to disclosure of proprietary information, the Insurer agrees to accept the reasonable amount determined by the Insured for any retained salvage.

69.  **LAW AND JURISDICTION:** Subject to Illinois Law and Practice.

**DEFINITIONS**

The following terms wherever used in this policy shall mean as follows:

1.  **Occurrence:** An accident, incident or a series of accidents or incidents arising out of a single event or originating cause and includes all resultant or concomitant insured losses. The term "loss occurrence" shall mean the sum of all individual losses directly occasioned by any one disaster, accident or loss or series of disasters, accidents or losses arising out of one event which occurs anywhere within the policy territory. However, the duration and extent of any one "loss occurrence" shall be limited to all individual losses sustained by the Insured occurring during any period of 168 consecutive hours arising out of and directly occasioned by the same event, except the term "loss occurrence" shall be further defined as follows:

    1.1. As regards named or unnamed windstorm, hail, tornado, hurricane, typhoon, cyclone including ensuing collapse and water damage, all individual losses sustained by the Insured occurring during any period of 72 consecutive hours arising out of and directly occasioned by the same event.

    1.2. As regards the perils of riot, riot attending a strike, civil commotion, vandalism and malicious mischief, including losses from all other perils covered hereunder following as a result of the aforesaid perils, "loss occurrence" shall mean all losses or series of losses occurring during any period of 72 consecutive hours arising out of and directly occasioned by the same event. The maximum duration of 72 consecutive hours may be extended in respect of individual losses, which occur beyond such 72 consecutive hours during the continued occupation of the Insured's premises by strikers, provided such occupation commenced during aforesaid period.

    1.3. As regards earthquake, seaquake, tidal wave, volcanic action, including losses from all other perils covered hereunder following as a result of the aforesaid perils, only those individual losses covered hereunder, which commence during the period of 72 consecutive hours, may be included in the Insured's "loss occurrence".

    1.4. As regards the peril of freeze, only those individual losses directly occasioned by collapse, breakage of glass, water and/or liquid damage due to burst pipes, tanks or pressure vessels, damage to machinery or equipment, stock and/or work in progress due to freeze, and/or individual losses arising directly out of the lack of supply of power, current, coolant and/or fuel due to frozen pipes and/or frozen feedlines may be included in the Insured's "loss occurrence".

    1.5. Except for those "loss occurrences" referred to in paragraph 1.2 and 1.3 above, the Insured may choose the date and time when such period of consecutive hours commences, provided that it is not earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising out of that disaster, accident or loss and provided that only one such period of 168 consecutive hours shall apply with respect to one event.

    1.6. However, as respects those "loss occurrences" referred to in paragraph 1.2 and 1.3 above, if the disaster, accident or loss occasioned by the event is of greater duration than 72 consecutive hours, then the Insured may divide that disaster, accident or loss into two or more "loss occurrences", provided no two periods overlap and no individual loss is included in more than one such period and provided that no period commences earlier that the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising from that disaster, accident or loss.

    1.7. No individual losses occasioned by an event that would be covered by the 72 hours clauses may be included in any "loss occurrence" claimed under the 168 hour provision.

    1.8. This clause does in no way alter any policy limit or policy sub-limit expressed in other parts of this policy.

2.  **Flood Loss:** Loss or damage caused by surface waters and other bodies of water that rise and overflow onto normally dry land resulting from any of the forgoing regardless of any other cause or event contributing concurrently or in any sequence. However, physical damage by fire, explosion, collapse, electrical injury or sprinkler leakage resulting from flood will not be considered loss by flood within the terms of this policy.

3.  **Earthquake Loss:** Loss or damage caused by the shaking or trembling of the earth that is seismic in origin, regardless of any other cause or event contributing concurrently or in any sequence. However, physical damage by fire, explosion, electrical injury, water damage, or sprinkler leakage resulting from earthquake will not be considered loss by earthquake within the terms of this policy.

4.  **Volcanic Action:** Loss or damage caused by, resulting from, contributed to or aggravated by lava or other material expelled by volcanic action and including but not limited to landslide, mudflow, earth sinking, earth rising or shifting.

    Ensuing loss resulting from, contributed to or aggregated by volcanic action by a peril not otherwise excluded under this policy shall not be considered volcanic action loss.

5.  **Valuable Papers and Records:** Written, printed, or otherwise inscribed documents and records, including but not limited to accounts receivable, books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts, and media, but not including money and/or securities.

6.  **Contributing Property:** Property of a supplier that directly contributes to the supply of goods and /or services to the Insured, and property of a receiver that, if damaged, could prevent a direct receiver of goods and/or services from the Insured from accepting the Insured's goods and /or services, all subject to the provisions of Property Excluded.

7.  **Named Windstorm:** the direct action of wind when such wind is associated with, or occurs in conjunction with a storm or weather disturbance which has been named or declared by the U.S. National Weather Service, the World Meteorological Organization Regional Specialized Meteorological Center (RSMC) or Tropical Cyclone Warning Center (TCWC) having regional responsibility, or any governmental agency or body having the authority to make such naming or declaration to be a hurricane, typhoon, tropical storm, or cyclone. Such definition shall also include any storm or weather disturbance designated by the Property Claims Service – American Insurance Services Group, Inc. as a numbered catastrophe.

8.  **Launch Pad Perimeter Fence:** Per Appendix SLC (Space Launch Complex):
    **2W Fence Description**
    **37 Fence Description**
    **6 Fence Description**
    **17 Fence Description**

9.  **Pollution:** the actual, alleged, or threatened discharge, dispersal, release, leakage, seepage, migration, or escape of pollutants.

    **Pollutants:** any solid, liquid, gaseous or thermal irritant, or contaminant including smoke, vapors, soot fumes, acids, alkalis, chemicals, waste or waste pollutants. Waste includes materials to be recycled, reconditioned or reclaimed. Waste pollutants means those pollutants which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any other person or organization for whom you're legally responsible.

10. **Stock:**

    A.  Raw Stock (materials and supplies in the state in which the Insured received them for conversion by the insured into finished stock, including supplies consumed in such conversion or in the service rendered by the Insured).

    B.  Stock in process (ra w stock which has undergone any aging, seasoning, or other processing by the Insured but which has not become finished stock).

    Finished stock (stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale) and merchandise, including suppliers used in their packing or shipping.

**11. Business Interruption:**

**As respects Ocean Marine, International and Domestic Air and Inland Transit only:**

Except as hereinafter excluded, this policy covers loss resulting from necessary interruption of business conducted by the Insured, whether total or partial, and caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property as described in Declaration Clause 6 (Goods Covered) of this policy.

If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED by the Insured, consisting of (a) the net profit which is thereby prevented from being earned and of all charges and expenses including the entire payroll expense of officers, executives, department managers, employees under contract, and other important employees as determined by the Insured, (b) the entire ordinary payroll (meaning the entire payroll expense for all employees of the Insured except for those specified in subparagraph (a) above) including taxes and charges dependent on payment of wages, for a period of time not in excess of 30 consecutive days immediately following such loss or damage by a peril insured against by this policy, which continues during the period the property is wholly or partially prevented from producing goods or from continuing business operations or services (if the Insured reduces the daily losses covered under this item, either by providing gainful employment for or paying less than the normal salary rate to all or part of their employees, then the number of consecutive days herein before provided may be extended, but in no case shall this provision increase the total liability of the Insurer beyond the amount for which it would have been liable under this item without this additional provision), all only to the extent that these must necessarily continue during the interruption of business and only to the extent to which such charges and expenses would have been earned had no loss occurred.

In the event of direct physical loss, damage, or destruction to property described in Declaration Clause 6 (Goods Covered) caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the Period of Recovery, this policy shall cover the ACTUAL LOSS SUSTAINED of the continuing fixed charges and expenses, including ordinary payroll for a period of time not in excess of 30 consecutive days immediately following such loss or damage by a peril insured against by this policy, directly attributable to such research and development activities.

However, this Insurer shall not be liable for any loss resulting from damage to or destruction of finished stock nor for the time required to reproduce said finished stock. Finished stock shall mean stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

Resumption of Operations: If the Insured, by reasonable means within its control, could reduce the loss resulting from the interruption of business: (a) by a complete or partial resumption of operation of the property insured, whether damaged or not, or (b) by making use of available stock, merchandise, or other property, such reduction shall be taken into account in arriving at the amount of loss hereunder.

Experience of the Business: In determining the amount of net profit, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

Extra Expense: In the event of Business Interruption, and the Insured, by reasonable means within its control, could continue or reinstate operations by making use of available stock, merchandise, or other property, the Extra Expense shall be insured hereunder.

"Extra expense" means the excess of the total cost during the period of restoration of the damaged property chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss or damage occurred.

**PERILS EXCLUDED**

**NUCLEAR EXCLUSION:**

The following clause shall be paramount and shall not be modified or superseded by any other provision included herein or stamped or endorsed hereon.

This policy shall not apply to any loss, damage, or expense due to or arising out of, whether directly or indirectly, nuclear reaction, radiation, or radioactive contamination, regardless of how it was caused. However, subject to all provisions of this policy, if this policy insures against fire, the direct physical damage to the property insured located within the United States, or any territory of the United States or Puerto Rico by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation, or radioactive contamination was not caused, whether directly or indirectly, by any of the perils excluded by the F.C.&S. Warranty of this policy.

Nothing in this clause shall be construed to cover any loss, damage, liability, or expense caused by nuclear reaction, radiation, or radioactive contamination arising directly or indirectly from the fire mentioned above.

As respects Stock, Satellite Transit and Sea Launch coverage only, this policy does not insure against:

1. any fraudulent or dishonest act or acts committed by the Insured or any of the Insured's employees meaning only dishonest or fraudulent acts committed by the Insured or the Insured's employees with the manifest intent to:

   A. cause the Insured to sustain such loss, and

   B. obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the Insured or employees to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment.

   This exclusion does not apply to acts of damage or destruction by employees, but theft by employees is not covered,

2. the cost of making good defective design or specifications, faulty material, or faulty workmanship, however, this exclusion shall not apply to covered direct physical loss or damage from a peril insured herein resulting from such defective design or specifications, faulty material, or faulty workmanship,

3. errors in processing or manufacture of the Insured's product unless direct physical loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage, this exclusion does not apply to Insured property undergoing wind tunnel testing or being elevated, lowered or moved,

4. delay or loss of market share,

5. wear and tear, inherent vice, latent defect, depletion or erosion, corrosion, insects or vermin, texture, or gradual deterioration unless other direct physical loss or damage from a peril insured against herein ensues and then this policy shall cover for such ensuing loss or damage,

6. indirect or remote loss,

7. loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto,

8. unexplained or mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss,

Policy Number: JC487006

9.    loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this policy an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This policy also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Insurer alleges that by reason of the above, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Insured.

In the event any portion of this clause is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

10.   War, hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

    i.    by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces,

    ii.    or by military, naval, or air forces,

    iii.    or by an agent of any such government, power, authority, or forces,

11.   any weapon employing atomic fission or fusion,

12.   rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence,

13.   seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control, or minimize loss, damage, or destruction which occurs due to a peril insured against under this policy,

14.   risks of contraband or illegal trade,

15.   loss or damage occasioned by confiscation, commandeering, requisition, or destruction of or damage to insured property or Contributing Properties by order of the government, de jure or defacto, or any public, municipal or local authority of the country or area in which the Properties are situated. This exclusion shall not apply to destruction by order of public authority to prevent the spread of, or to otherwise contain, control, or minimize loss, damage, or destruction which occurs due to a peril insured against under this policy.

Ins-Su
G.C.

Policy Number: JC487006

## PROPERTY EXCLUDED
### (Applicable to Stock loss only)

This policy does not cover loss or damage to:

1.   Money, securities, notes, accounts, bills, currency, deeds, evidences of debt or title (except as provided for under the Valuable Paper and Records or the Accounts Receivable coverage provided in this policy), furs, and jewelry. Bullion, precious stones and metals except when used as part of the manufacturing process,

2.   aircraft except for aircraft wholly within aircraft assembly buildings,

Aircraft means the airframe including the engines, machinery, equipment, instruments and all other parts designed for use with the airframe which are actually connected to, in contact with, or inside of the airframe (hereinafter "attached"), or, after having first been attached, are subsequently detached from the airframe and not replaced by similar engines, machinery, equipment, instruments and other parts. For purpose of this clause aircraft does not mean aircraft while in due course of transit as cargo, or while undergoing fatigue test or structural test of the hulls while located in the open on the Insured's premises, or testing instrumentation temporarily used on or installed in/on the aircraft. Aircraft does mean the space shuttle,

3.   aircraft listed in the Aviation Corporate Hull Policy No. BH-159353, Financial Institution FI-159354 or renewal/replacement thereof,

4.   loss of use arising out of loss or damage to aircraft not owned by the Insured,

5.   property owned or possessed by the United States or any of its agencies or any foreign government, but only to the extent the Insured is relieved from liability for risk of loss by an assumption of liability for risk of loss by such government, and which assumption may be conditioned upon the absence of insurance available to the Insured covering such property. This assumption of liability for risk of loss by any government is conditioned upon the assumption being a valid and enforceable provision in the jurisdiction in which a claim is brought, whether that jurisdiction applies its own laws or the laws of another jurisdiction. Notwithstanding this exclusion, this policy does cover property owned by the United States or any of its agencies located at Cape Canaveral Air Force Station, FL or Vandenberg Air Force Base, California that is specifically leased by The Boeing Insurer or that is used in the Insured's operations and resulting business interruption, contingent business interruption, extra expense, contingent extra expense, rental value and expediting expense coverage incurred by the Insured under this policy,

6.   land and land values but this exclusion shall not apply to land improvements, meaning pavements, roadways, parking lots, sidewalks, underground piping, wiring, landscaping and fences,

7.   animals, except animals used for research,

8.   air, water, except water which is normally contained within any type of tank, piping system or other processing equipment.

# VALUATION

At the time of loss, the basis of adjustment unless otherwise endorsed herein shall be as follows:

A.

1.   Property in transit, at the amount of invoice price, any and all freight charges in the invoice including prepaid and/or advanced and/or guaranteed freight, if any, plus 25%, or, if there is no invoice at actual selling price at point of destination less any charges saved which would have become due and payable upon delivery at destination, or if there is no selling price, at replacement cost including such freight charges as may have accrued and become legally due thereon. or, the amount required by instructions received by the Insured or at the amount declared, provided such instructions or declarations are made, but in no event to be less than the foregoing. Containers owned by the Insured: The value is agreed to be the purchase price less depreciation,

2.   stock in process, at the value of materials and labor expended plus that proportion of total overhead as normally apportioned through Insured's accounting system, but not to exceed the replacement cost to the Insured,

3.   raw stock and finished stock, at replacement cost,

4.   valuable papers at the cost to repair or replace the property with other of like kind and quality including the cost of gathering and/or assembling information, or if not so replaced, actual cash value,

5.   tooling, at replacement cost using Boeing's Tooling Wrap Rates if the Insured can show within two years after date of loss need for immediate or future use,

6.   property of others which the Insured is required to insure to a stipulated value, at the replacement cost as of the date of replacement, if replaced at the Insured's option, otherwise at the stipulated value,

7.   fine arts at the appraised value, or, if there is no appraisal, at the market value at the time of the loss,

8.   electronic data processing media, at the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any electronic data processing media contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed USD 25,000,000 any one loss, incurred by the Insured in recreating, gathering and assembling such electronic data processing media. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such electronic data to the Insured or any other party, even if such electronic data processing media cannot be recreated, gathered or assembled.

B.

As used in this valuation section, replacement cost means the smallest of the following amounts: (1) the amount of this policy applicable to the damaged or destroyed property, or (2) the cost to repair, or (3) the cost to rebuild or replace, within 2 years time after the loss or damage unless extended by mutual agreement between the Insured and the Insurer, on the same site, with new materials of like size, kind and quality, or (4) the actual expenditure incurred in rebuilding, repairing or replacing on the same or another site.

To the extent the Insured provides its own general contracting, engineering, design construction services, or procures materials for repair or reconstruction, the costs incurred by or on behalf of the Insured shall include:

i.    Overhead charges as defined by the Insured's regular accounting practice in place at the time of loss, and

ii.   The share of corporate general and administrative costs allocated to the division involved as prescribed in the Insured's regular accounting practice in place at the time of the loss for determining its costs for providing labor, general contracting, engineering, design, construction services or materials.

If the property damaged or destroyed is not in use by the Insured or is not repaired, rebuilt or replaced, on the same or another site within 2 years time after the loss or damage unless extended by mutual agreement between the Insured and the Insurer, this Insurer shall not be liable for more than the actual cash value (ascertained with proper deduction for depreciation) of such property. However, limitations imposed by federal, state or municipal building codes shall not result in actual cash valuation.

Policy Number: JC487006

**ENDORSEMENT NO. 1**
**American Institute**
**Endorsement for Open Policies (Cargo)**
**Strikes, Riots & Civil Commotions**
**(December 2, 1993)**

THIS INSURANCE ALSO COVERS:

(1) physical loss of or damage to the property insured directly caused by strikers, locked-out workmen, or persons taking part in labor disturbances or riots, or civil commotions, and,

(2) physical loss of or damage to the property insured directly caused by vandalism, sabotage or malicious acts, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional, PROVIDED that any claim to be recoverable under this sub-section (2) be not excluded by the F.C.&S. Warranty in the Policy to which this endorsement is attached.

While the property insured is at risk under the terms and conditions of this insurance within the United States of America, the Commonwealth of Puerto Rico, the US Virgin Islands and Canada, this insurance is extended to cover physical loss of or damage to the property insured directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or other warlike operations, provided such agent is acting secretly and not in connection with any operation of military or naval armed forces in the country where the described property is situated.

Nothing in this endorsement shall be construed to cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:

a.   change in temperature or humidity,

b.   the absence, shortage, or withholding or power, fuel, or labor of any description whatsoever during any strike, lockout, labor disturbance, riot or civil commotion,

c.   loss of market or loss, damage or deterioration arising from delay,

d.   hostilities, warlike operations, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, except to the limited extent that the acts of certain agents acting secretly have been expressly covered above, or,

e.   nuclear reaction, radiation or radioactive contamination.

The Insured agrees to report all shipments attaching under this cover and to pay premiums therefor at the rates established by the Insurer from time to time.
This endorsement may be cancelled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any risks which have already attached hereunder.

Policy Number: JC487006

**ENDORSEMENT NO. 2 –Applies to all Sections and Endorsements**

TERMINATION OF TRANSIT CLAUSE (TERRORISM)

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1. Notwithstanding any provisions to the contrary contained in this Policy or the Clauses referred to therein, it is agreed that in so far as this Policy covers loss of or damage to the subject-matter insured caused by any terrorist or any person acting from a political motive, such cover is conditional upon the subject-matter insured being in the ordinary course of transit and, in any event, SHALL TERMINATE.

Either

    1.1   as per the transit clauses contained within the Policy,

or

    1.2   on delivery to the Consignee's or other final warehouse or place of storage at the destination named herein,

    1.3   on delivery to any other warehouse or place of storage, whether prior to or at the destination named herein, which the Insured elect to use either for storage other than in the ordinary course of transit or for allocation or distribution

or

    1.4   in respect of marine transits, on the expiry of 60 days after completion of discharge, overside of the goods hereby insured from the oversea vessel at the final port of discharge,

    1.5   in respect of air transits, on the expiry of 30 days after unloading the subject-matter insured from the aircraft at the final place of discharge,

whichever shall first occur

If this Policy or the Clauses referred to therein specifically provide cover for inland or other further transits following on from storage, or termination as provided for above, cover will re-attach, and continues during the ordinary course of that transit terminating again in accordance with Clause 1.

This clause is subject to English law and practice.

JC2001/056

Policy Number: JC487006

**THE BOEING COMPANY**
**ENDORSEMENT NUMBER 3**
**LAUNCH VEHICLE AND SPACECRAFT COVERAGE**
**EFFECTIVE FEBRUARY 15, 2006**

All terms, conditions, exclusions and provisions of this endorsement shall replace and supersede comparable clauses of the attached manuscript form. All other policy conditions not in conflict herewith are incorporated into this endorsement, including PARTICIPATION/LIMIT, EXCESS/DEDUCTIBLE, PERILS EXCLUDED and PROPERTY EXCLUDED clauses.

1. This policy covers:

   A. Launch Vehicles intended to be launched, Spacecraft intended to be launched, and Related Launch Equipment.

   B. Extra Expense resulting from physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property as described in Part A. above, including costs incurred to determine that the property is still suitable for use.

   C. Incentives which are prevented from being earned due to physical loss damage, or destruction by any of the perils covered herein during the term of this policy to property insured by this endorsement. This extension does not apply to incentives that are prevented from being earned as a result of loss or damage to property of the United States of America, hereinafter referred to as the "government" to the extent that the government has assumed the risk of loss of or damage to such property under any contract or agreement between the Insured and the government, or between the Insured and a prime contractor to the government.

   D. General average and salvage charges required according to United States laws and usage and/or foreign statement and/or York-Antwerp rules (as prescribed in whole or in part) if in accordance with the contract of affreightment.

   Further, it is understood and agreed that in the event of a loss or damage to property, coverage of (A), (B), (C), and (D) shall apply whether or not the Insured is held responsible for such loss or damage.

2. <u>TERRITORY</u>— This policy covers loss to the Insured wherever the covered property is located anywhere in the world.

3. <u>ATTACHMENT AND TERMINATION OF INSURANCE</u> — This insurance attaches under this section with respect to each Launch Vehicle and/or Spacecraft and/or Related Launch Equipment from the time of completion, including, but not limited to, loading and unloading, during transit, while located at Cape Canaveral Air Force Station, while located at Vandenberg Air Force Base, or other launch site, while located at the Insured's premises or temporary locations, or while at any storage facility.

   As respects all Launch Vehicles and/or Spacecraft, the coverage under this section shall cease on each Launch Vehicle and/or Spacecraft at the earlier of Launch or at the point in time prior to Launch that the risk of loss to the Launch Vehicle and/or the Spacecraft, respectively, transfers from the Insured as per the relevant contract, however, in the event of an Abort, coverage shall remain in effect and continue in force until a successful subsequent Launch. It is further provided that this insurance on Launch Vehicles and/or Spacecraft will terminate at such time as the Insured shall no longer have an insurable interest in this property, at intentional ignition of solid boosters, if any, or release of clamps, whichever is earlier.

   In the event the Insured shall become liable for risk of loss under contract for the insurance of a Launch Vehicle and/or Spacecraft subsequent to title passing, such coverage shall be afforded by this policy subject to its terms, conditions, and limitations and provided always that such insurance shall terminate no later than at Launch. In the event that no deployment of a Spacecraft has taken place from the Shuttle, coverage hereunder will reattach when the Shuttle has come to the end of the Landing Roll.

In the event the Launch Vehicle and/or Spacecraft is returned for any reason to its original manufacturing or assembly building, or placed into storage at a Boeing location other than Cape Canaveral Air Force Station, Vandenberg Air Force Base, or other launch site, coverage under this Endorsement will terminate when the Launch Vehicle and/or Spacecraft is wholly within such building, at which time the Insured property policy coverage shall re-attach, but insurance under this Endorsement will re-attach when, after packing for transportation, the Launch Vehicle and/or Spacecraft is moved for the purpose of loading for shipment.

4. <u>PERILS INSURED</u>—This policy covers against all risks of direct physical loss or damage from any cause whatsoever except as hereinafter excluded occurring during the term of this policy.

5. <u>PERILS EXCLUDED</u>—In addition to the perils excluded in the policy form, this policy does not insure:

loss or damage to Launch Vehicles and/or Spacecraft to the extent such loss or damage is covered under a separately purchased launch insurance policy.

6. <u>VALUATION</u>—In the event of loss or damage, this Company will pay:

A. The selling price at the time and place of loss, however, in the event that the property is subsequently repaired or replaced due to contractual requirements then the Company shall be liable in addition for the amount of the cost of such repair or replacement which is in excess of the aforementioned selling price. Any such repair or replacement shall be with property of like kind and quality and shall include but not necessarily be limited to the cost of the property, modifications, transportation costs, cost of range, launch and associated services, cost of labor, materials and overheads as normally apportioned through the Insured's accounting system, and all other costs incurred.

B. The cost of removal of material and debris or removal or demolition of any portion of the insured property no longer useful for the purpose for which it was intended.

7. <u>DEFINITIONS</u>—When used in this policy:

A. "Launch Vehicle" shall mean those Launch Vehicles, including, but not limited to, all component parts and sub-assemblies forming a part of a Launch Vehicle, including propellants, owned by, used by, or assigned to clients of the Insured.

B. "Related Launch Equipment" shall mean property owned by the Insured or property of others for which the Insured may be liable, or in which the Insured may have an insurable interest, or for the insurance of which the Insured is responsible, intended for use in connection with a launch of a Launch Vehicle or Spacecraft.

C. "Landing Roll" shall mean the point in time when the Shuttle comes to a complete stop at the end of its landing roll on a runway upon return to earth.

D. "Launch" shall mean as defined by the relevant contract on file with the Insured, but not later than liftoff.

E. "Abort" shall mean terminated ignition as defined by the relevant contract or the termination of ignition by the launch control equipment.

F. "Spacecraft" shall mean those satellites or other objects and payloads launched into space, including, but not limited to, all component parts and sub-assemblies forming a part of a Spacecraft in which the Insured has an insurable interest.

G. "Shuttle" shall mean any of the reusable Shuttles/Orbiters operated by or on behalf of the government.

Policy Number: JC487006

**THE BOEING COMPANY**
**ENDORSEMENT NUMBER 4**
**SEA LAUNCH SPACECRAFT COVERAGE**
**EFFECTIVE FEBRUARY 15, 2006**

All terms, conditions, exclusions and provisions of this endorsement shall replace and supersede comparable clauses of the attached manuscript form. All other policy conditions not in conflict herewith are incorporated into this endorsement, including PARTICIPATION/LIMIT, EXCESS/DEDUCTIBLE, PERILS EXCLUDED and PROPERTY EXCLUDED clauses.

1. This policy covers:

    A. Spacecraft intended to be launched, and Related Launch Equipment.

    B. Extra Expense resulting from physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to property as described in Part A. above, including costs incurred to determine that the property is still suitable for use.

    C. Incentives which are prevented from being earned due to physical loss damage, or destruction by any of the perils covered herein during the term of this policy to property insured by this endorsement. This extension does not apply to incentives that are prevented from being earned as a result of loss or damage to property of the United States of America, hereinafter referred to as the "government" to the extent that the government has assumed the risk of loss of or damage to such property under any contract or agreement between the Insured and the government, or between the Insured and a prime contractor to the government.

    D. General average and salvage charges required according to United States laws and usage and/or foreign statement and/or York-Antwerp rules (as prescribed in whole or in part) if in accordance with the contract of affreightment.

    Further, it is understood and agreed that in the event of a loss or damage to property, coverage of (A), (B), (C) and (D) shall apply whether or not the Insured is held responsible for such loss or damage.

2. TERRITORY— This policy covers loss to the Insured wherever the covered property is located anywhere in the world.

3. ATTACHMENT AND TERMINATION OF INSURANCE —As respects Sea Launch, this insurance with respect to each Spacecraft and/or Related Launch Equipment and related ground support equipment attaches from the time of commencement of loading operations at Boeing's Facility (ies), El Segundo, CA. and continues while in transit to the Sea Launch Facility at Long Beach CA, while there undergoing pre-flight checks, preparation, and storage, then while moved to Sea Launch Command Vessel for integration with launch vehicle and subsequent transfer to Launch Platform for voyage to launch site, and until termination of risk as defined herein, including all intermediate transits at storage.

    2. Risk of loss under this policy shall terminate upon the earliest of the following:

    A. The payment of the maximum loss payable insured hereunder as set forth in the Declarations,

    B. at Launch,

    However, notwithstanding the above, coverage in respect of related ground support equipment includes return transit to the manufacturer's site and terminates upon completion of unloading operations at the manufacturing site.

    It is agreed that, in the event the Spacecraft has to be returned to the manufacturer at any time prior to Launch, coverage shall continue and terminate upon the completion of unloading operations at the manufacturing site subject to applicable additional premium.

    It is agreed that, in the event of Abort whether resulting in a claim or not, coverage shall continue and terminate upon the earliest of the following:

ins-sur
TW

H.  "Extra Expense" shall mean expenses actually incurred, including but not limited to expenses such as modification and transportation of Launch Vehicle and/or Spacecraft, range and associated services, launch services, project management and engineering support, and all other costs payable to any facility for the launch support services, leased launch services, any payments to contractors, customers or vendors under launch service contracts, and other direct launch costs payable to other contractors, customers or vendors above the Insured's normal operating expenses, caused by physical loss or damage to a Spacecraft and/or Related Launch Equipment when said physical loss or damage results in the deferral or termination of the scheduled launch.

## RATES APPLICABLE TO SEA LAUNCH

It is understood and agreed that Sea Launch coverage is subject to reporting payable at the following rates:

From commencement of loading at pre-flight facility and transfer to platform including integration with launch vehicle and intermediate transits – TBD.

Voyage time of leaving Long Beach to Launch site and up to commencement of intentional ignition – rate TBD

In the event of Launch being aborted, the following rates will apply:

1.  "short delay" @ no A.P. – where there is no return to the platform and no movement of launch vehicle or fuel,

2.  "major delay" @ TBD A.P. – where there is a return to the platform, movement of launch vehicle and fuel and re-establishment of procedure,

3.  "total abort": @ TBD A.P. – as (2) above, and return to home port.

Policy Number: JC487006

**THE BOEING COMPANY**
**ENDORSEMENT NUMBER 5**
**CARGO WAR RISKS**
**(Applicable to transit risks only)**
**EFFECTIVE FEBRUARY 15, 2006**

This policy also covers loss or damage, for account of whom it may concern, against War Risks, in accordance with the terms and conditions hereinafter set forth.

To apply to shipments made on or after February 15, 2006.

The Insurer shall not be liable hereunder for more than the applicable limit stated elsewhere in this endorsement.

In cases where the total value(s) at risk on any one vessel exceed(s) the limit of liability as set forth in this Endorsement, the Insured agrees, nevertheless, to report to the Insurer full value(s) at risk and to pay premium thereon at the agreed rates. The Insured further agrees that acceptance of such reports and premium by the Insurer shall not serve to revoke or to overrule the limit of liability set forth in this Endorsement, however, subject to the limit of liability, the Insurer in accepting these reports agrees to pay partial losses covered by this Endorsement without reduction by reason of any coinsurance which otherwise may have existed in the absence of this special agreement.

Subject to the provisions of Clause 5 of this Endorsement, should there be an accumulation of interests exceeding the above limit of liability by reason of any interruption of transit beyond the control of the Insured or by reason of any casualty, and/or after the interests have been discharged from the incoming overseas Vessel at an intermediate port or place for on-carriage from that or any other port or place by another overseas Vessel, and/or on the on-carrying overseas Vessel, this Endorsement shall attach for the full amount at risk (but in no event for more than twice the Endorsement limit which would be applicable to any one vessel) provided written notice be given to Underwriters as soon as known to the Insured.

This endorsement shall cover only those shipments which are insured against marine risks under the policy to which this endorsement is attached, it being agreed that the description of such shipments, the valuations thereof, the voyage, the designation of the overseas Vessel (which shall be construed to include aircraft if included under the marine policy) on which the goods are to be carried and the ports and/or places of loading and discharge, as reported under the said Policy against marine risks, shall be deemed incorporated herein. Notwithstanding the foregoing, this policy shall not cover purely domestic shipments by air between points in the United States of America (excluding Alaska and Hawaii).

Any loss payable hereunder shall be payable in funds current in the United States, to the order of insured or order thirty days after full proofs of loss and proofs of interest have been filed with the Insurer.

1.   (a)   This insurance is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, the imposition of martial law, military or usurped power, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes. Warranted not to abandon (on any ground other than physical damage to ship or cargo) until after condemnation of the property insured.

     (b)   This insurance also covers, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under this Policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

2.  Warranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments.

3.  This insurance does not cover any loss, damage or expense directly or indirectly arising from, contributed to, or caused by any of the following, whether due to a peril insured against or otherwise:

    (a) commandeering, pre-emption, requisition or nationalization by the government (defacto or otherwise) of the country to or from which the goods are insured.

    (b) seizure or destruction under quarantine, environmental or customs regulations.

    (c) Delay, deterioration and/or loss of market.

    (d) Nuclear reaction, radiation or radioactive contamination, regardless of how it was caused.

4.  (a) The insurance against the risks enumerated in clause 1, except the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged referred to in (b) below, shall not attach to the interest hereby insured or to any part thereof:

    (i)   prior to being on board an overseas Vessel (for the purpose of this Clause 4 an overseas Vessel shall be deemed to mean a Vessel carrying the interest from one port or place to another where such voyage involves a sea passage by that Vessel),

    (ii)  after being discharged overside from an overseas Vessel at the intended port or place of discharge,
          or
          after the expiry of 15 days from midnight of the day of arrival of the overseas Vessel at the intended port or place of discharge, whichever shall first occur,

    (iii) after expiry of 15 days from midnight of the day of arrival of the overseas Vessel at an intermediate port or place to discharge the interest for on-carriage from that or any other port or place by another overseas Vessel, but shall reattach as the interest is loaded on the on-carrying overseas Vessel. During the said period of 15 days the insurance remains in force whether the interest is awaiting transit or in transit between the overseas Vessels.

    (iv)  For the purpose of this Clause 4 arrival at the intended port or place of discharge shall be deemed to mean that time when the overseas Vessel first berths, anchors, moors or is secured in an area subject to regulation by the authorities of such port or place.

    (b) The insurance against the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged, attaches as the interest hereby insured is first loaded on a lighter, craft or vessel after leaving the warehouse at point of shipment in transit for the destination declared hereunder, and ceases to attach as the interest is finally landed from the vessel, craft or lighter prior to delivery to warehouse at such destination.

    (c) If the contract of affreightment is terminated at a port or place other than the destination named therein such port or place shall be deemed the intended port or place of discharge for the purpose of this Clause 4.

    (d) Shipments by mail, if covered by this Policy are insured continuously from the time of leaving the sender's premises until delivered to the place of address.

    (e) Shipments by air (other than air mail) if covered by this Policy are insured subject to the same terms and conditions as shipments by overseas Vessel.

    (f) It is a condition of this insurance that the Insured shall act with reasonable dispatch in all circumstances within their control.

    (g) If anything contained in this Policy shall be inconsistent with this Clause 4 it shall to the extent of such inconsistency be null and void.

5.  This insurance shall not be vitiated by deviation, overcarriage, change of voyage, or by any error or unintentional omission in the description of interest, vessel or voyage provided the same be communicated to the Insurer as soon as known to the Insured and an additional premium paid if required.

6.  And in case of any loss or misfortune, it shall be lawful and necessary to and for the Insured his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods, and merchandises, or any part thereof, without prejudice to this insurance, nor shall the acts of the Insured or Insurer, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of an abandonment, and to the charges whereof, the said Insurer will contribute according to the rate and quantity of the sum hereby insured.

7.  General Average and Salvage Charges payable according to United States laws and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

8.  It is agreed that the reports of shipments made under the Policy against marine risks mentioned above shall be deemed to be reports under this Policy also, and the Insured agrees to pay premium on all shipments insured under this Policy at the war risk rates of the Insurer as fixed from time to time.

9.  No claim shall be payable hereunder which arises from collision, contact with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather or fire unless caused directly (and independently of the nature of the voyage or service which the Vessel concerned, or in the case of a collision, any other Vessel involved therein, is performing) by a hostile act by or against a belligerent power, and for the purpose of this paragraph "power" includes any authority maintaining naval, military or air forces in association with a power.

10. No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.

11. It is agreed that this Policy is a separate and wholly independent contract and is not subject to any terms or conditions of the Policy against marine risks above mentioned (whether physically attached thereto or not) except as such terms or conditions shall have been expressly incorporated herein by reference.

12. This insurance may be canceled by either party upon forty-eight hours written, telegraphic, or telefaxed notice to the other party, but such cancellation shall not affect any shipment on which this insurance has attached under the terms of Clause 4 hereof but for which, prior to the effective date of such notice. Shipments on which insurance has not so attached but for which, prior to the effective date of such notice, bills of lading have been issued and (in the case of exports) Certificates or Special Policies have been issued and negotiated, shall be covered from the time of loading on the overseas Vessel, as provided in Clause 4, at the rates of the Insurer, provided that, prior to said effective date, such shipments were at the risks of the Insured and were covered under this Policy against marine risks.

In the event of loss which may give rise to a claim under this Policy, prompt notice shall be given to the Insurer.

Any provisions required by law to be stated in policies issued by a Subscriber hereto, shall be deemed to have been stated herein.

This policy is subject to the Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical And Electromagnetic Weapons Exclusion Clause 10/11/03 (RACCBE). The inclusion of RACCBE in this policy is material to underwriters' willingness to provide coverage at the quoted terms, conditions and rates.

It is the intent of the parties to give maximum effect to RACCBE as permitted by law.

In the event that any portion of RACCBE may be found to be unenforceable in whole or in part under the law of any state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, the remainder shall remain in full force and effect under the laws of that state, territory, district, commonwealth or possession, province or territory. Further, any such finding shall not alter the enforceability of RACCBE under the laws of any other state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, to the fullest extent permitted by applicable law.

USCAN B
29/01/04

## SURVEY CLAUSE

No survey is required for claims that appear on first notification unlikely to exceed USD 10,000 (or the equivalent in any other currency) such figure being determined after application of any contract excess or deductible if applicable.

In such circumstances the Assured's or Consignee's statement of the loss and, where applicable and available, independent documentary evidence to be accepted as sufficient proof of loss.

In the event of loss or damage which may result in a claim amounting to USD 10,000 or over (or the equivalent in any currency) under this insurance, immediate notice should be given to the appropriate Underwriter's agent at the port or place where the loss or damage is discovered in order that he may examine the goods and issue a survey report.

## APPROVED RECOVERY AGENTS:

It is agreed that Reclaim Ltd is authorised to pursue recovery action as appropriate in respect of claims settled hereunder.

## CANCELLATION CLAUSE

This insurance may be cancelled by either party having given in writing:

Marine Risks:           90 days to anniversary.

War and Strikes Risks:   7 days but 48 hours for shipments to/from USA.

Such cancellation, however, shall not prejudice any transit risk or risks which shall have attached at the time such cancellation becomes effective.

## CESSATION/SUSPENSION OF UNDERWRITING

Other than in respect of War, Strikes, Riots and Civil Commotions Risks, it is hereby noted and agreed that in circumstances where Underwriters have ceased or suspended underwriting and wish to amend their participation, notwithstanding the cancellation provisions contained elsewhere in this contract, Underwriters' Notice of Cancellation (if given) is deemed to apply to anniversary date (or, where applicable, first review date), unless such Notice is accepted by the Assured as applying to another more specific date.

In all other circumstances, the cancellation provisions contained in any specific contract shall continue to apply.

## PROFIT COMMISSION CLAUSE

Underwriters shall allow the Assured in respect of each annual period of this Insurance a commission of 3.5% of the profit as defined hereunder accruing to the Underwriters from the operation of this Insurance.

Credit  :    80% of gross premiums paid hereon, after deduction of all return premiums.

Debit  :

1.    Claims and expenses less refunds and salvage recoveries,

2.    Estimated liability in respect of claims outstanding, and

3.    Debit balance, if any, as ascertained from the Profit Commission statement of the previous period.

The excess of Credit over Debit shall represent the profit.

Within twelve (12) months of the close of each annual period, MARSH LTD shall produce a Statement detailing the items set out above.

In the event of the profit commission calculation showing a deficit in any year, such deficit shall be carried forward to the profit commission accounts of succeeding years, but each year's deficit shall not be carried forward for more than three successive years' profit commission accounts after the year of account in which the deficit was incurred.

In the event of claims being settled or recoveries effected after a Profit Commission has been paid in respect of the period to which such claims or recoveries attach, the Profit Commission shall be subject to readjustment.

Policy Number: JC487006

**CHOICE OF**
**LAW AND**
**JURISDICTION:** Institute Service of Suit Clause (U.S.A.) CL355 dated 1.11.92.

Subject to Illinois Jurisdiction and Law and Practice.

**PREMIUM/RATES**
**(100%):**

### 1) Stock

In full premium USD 3,750,000 payable at inception.

In the event that stock exposures are reduced hereon following the formation of the United Launch Alliance Underwriters agree a pro-rata return of premium.

### 2) Marine Cargo / Inland Transit/Business Interruption

In full premium USD 900,000 payable at inception.

### Sea Launch

Payable quarterly at the following rates on amounts exposed.

From commencement of loading at pre-flight facility and transfer to platform including integration with launch vehicle and intermediate transits – 0.1011%.

Voyage time of leaving Long Beach to Launch site and up to commencement of intentional ignition - rate 0.2021%.

In the event of launch being aborted, the following rates will apply:

1)   "short delay" @ no A.P. - where there is no return to the platform and no movement of launch vehicle or fuel

2)   "major delay" @ 0.1011% A.P. - where there is a return to the platform, movement of launch vehicle and fuel and re-establishment of launch procedure

3)   "total abort" @ 0.2021% A.P. - as (2) above, and return to home port.

### Satellites

From commencement of loading for transit to final destination until completion of unloading at final destination.

Payable quarterly at the following rate:

0.135% on exposed values hereon.

### United States Terrorism Risk Insurance Act

The Assured has been offered the optional additional coverage required under the US Terrorism Risk Insurance Act of 2002, as amended by the US Terrorism Risk Insurance Extension Act of 2005, but has declined this cover.

Policy Number: JC487006

<u>United States Terrorism Risk Insurance – Acts of Terrorism already included</u>

It is agreed that in accordance with the provisions and limitations of the US Terrorism Risk Insurance Act of 2002, as amended by the US Terrorism Risk Insurance Extension Act of 2005, where coverage for acts of terrorism is already included in this policy, the portion of the annual premium stated elsewhere in this policy attributable to coverage for such acts of terrorism is USD 5,000 per annum.

Marsh are authorized by Underwriters to transmit notification to the Assured in conjunction with the NAIC approved Policy Holder Disclosure Notice of Terrorism Insurance Coverage Form as currently issued which is deemed to be included in the policy.

**PAYMENT TERMS:**     Premium payable on 15th February 2006.

PREMIUM PAYMENT CLAUSE

The Insured undertakes that premium will be paid in full to Underwriters within 60 days of inception of this policy (or, in respect of instalment premiums, when due).

If the premium due under this policy has not been so paid to Underwriters by the 60 day from the inception of this policy (and, in respect of instalments premiums, by the date they are due) Underwriters shall have the right to cancel this policy by notifying the Insured via the broker in writing.  In the event of cancellation, premium is due to Underwriters on a pro rata basis for the period that Underwriters are on risk but the full policy premium shall be payable to Underwriters in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this policy.

It is agreed that Underwriters shall give not less than 15 days prior notice of cancellation to the Insured via the broker.  If premium due is paid in full to Underwriters before the notice period expires, notice of cancellation shall automatically be revoked.  If not, the policy shall automatically terminate at the end of the notice period.

Unless otherwise agreed, the Leading Underwriter (and Agreement parties if appropriate) are authorised to exercise rights under this clause on their own behalf and on behalf of all Underwriters participating in this contract.

If any provisions of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

Where the premium is to be paid through a London Market Bureau, payment to Underwriters will be deemed to occur on the day of delivery of a premium advice note to the Bureau.

11/01
LSW3000

Policy Number: JC487006

## INSTITUTE MARINE POLICY GENERAL PROVISIONS (CARGO)

The following general provisions are incorporated in this contract:

### ENGLISH LAW AND PRACTICE CLAUSE

This insurance is subject to English Law and practice.

### INSURABLE INTEREST CLAUSE

1    In order to recover under this insurance the Assured must have an insurable interest in the subject-matter insured at the time of the loss.

2    Subject to 1 above, the Assured shall be entitled to recover for insured loss occurring during the period covered by this insurance, notwithstanding that the loss occurred before the contract of insurance was concluded, unless the Assured were aware of the loss and the Underwriters were not.

### DUTY OF ASSURED CLAUSE

It is the duty of the Assured and their servants and agents in respect of loss recoverable hereunder

1    to take such measures as may be reasonable for the purpose of averting or minimising such loss,

and

2    to ensure that all rights against carriers, bailees or other third parties are properly preserved and exercised

and the Underwriters will, in addition to any loss recoverable hereunder, reimburse the Assured for any charges properly and reasonably incurred in pursuance of these duties.

### WAIVER CLAUSE

Measures taken by the Assured or the Underwriters with the object of saving, protecting or recovering the subject-matter insured shall not be considered as a waiver or acceptance of abandonment or otherwise prejudice the rights of either party.

### WAR EXCLUSION CLAUSE

In no case shall this insurance cover loss damage or expense caused by

1    war civil war revolution rebellion insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power

2    capture seizure arrest restraint or detainment (piracy excepted), and the consequences thereof or any attempt thereat

3    derelict mines torpedoes bombs or other derelict weapons of war.

### ATOMIC AND NUCLEAR EXCLUSION CLAUSE

In no case shall this insurance cover loss damage or expense arising from the use of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

**The following provision shall be paramount and shall override anything which may appear elsewhere in this contract:-**

Should this insurance be extended to cover any loss damage or expense excluded by the above War Exclusion Clause, such war risks cover shall not extend to any claim based upon loss of or frustration of the insured voyage or adventure.

1/10/82
CL269  © Copyright The Institute of London Underwriters

## AMERICAN INSTITUTE CARGO CLAUSES
### (September 1, 1965)

1.  A  This insurance attaches from the time the goods leave the warehouse or place of storage at the place named in the certificate, declaration or special policy for the commencement of the transit and continues until:

    1.  the goods are delivered to the Consignee's or other final warehouse or place of storage at the destination named in the certificate, declaration or special policy, or

    2.  the goods are delivered to any other warehouse or place of storage, whether prior to or at the destination named in the certificate, declaration or special policy, which the Assured elects to use either

        (a)  for storage other than in the ordinary course of transit, or

        (b)  for allocation or distribution, or

    3.  the expiry of 60 days (30 days on air shipments) after completion of discharge from the overseas vessel or aircraft,

whichever shall first occur.

    In the event of delay in excess of the limits specified in (3) above arising from circumstances beyond the control of the Assured, held covered at a premium to be named for an additional 30 days provided the Assured give notice thereof to these Assurers as promptly as possible but in any event prior to the expiry of the said 30 days period.

**Warehouse to Warehouse/ Transit Clause**

B  This insurance specially to cover the goods during deviation, delay, forced discharge, re-shipment, transhipment and any other variation of the adventure arising from the exercise of a liberty granted to the shipowner or charterer under the contract of affreightment.

C  In the event of the exercise of any liberty granted to the shipowner or charterer under the contract of affreightment whereby such contract is terminated at a port or place other than the original insured destination, the insurance continues until the goods are sold and delivered at such port or place; or, if the goods be not sold but are forwarded to the original insured destination or to any other destination this insurance continues until the goods have been delivered to the warehouse or place of storage as provided in paragraph 1.A.

D  If while this insurance is still in force and before the expiry of 15 days from midnight of the day on which the discharge overside of the goods hereby insured from the overseas vessel at the final port of discharge is completed, the goods are re-sold (not being a sale within the terms of paragraph 1.C) and are to be forwarded to a destination other than that covered by this insurance, the goods are covered hereunder while deposited at such port of discharge until again in transit or until the expiry of the aforementioned 15 days whichever shall first occur. If a sale is effected after the expiry of the aforementioned 15 days while this insurance is still in force the protection afforded hereunder shall cease as from the time of the sale.

E  Held covered at a premium to be named in case of change of voyage or of any omission or error in the description of the interest, vessel or voyage.



F   It is a condition of this insurance that there shall be no interruption or suspension of transit unless due to circumstances beyond the control of the Assured and that the Assured shall act with reasonable dispatch in all circumstances within their control.

2.  Including transit by craft and/or lighter to and from the vessel. Each craft and/or lighter to be deemed a separate insurance. The Assured are not to be prejudiced by any agreement exempting lightermen from liability.

Craft, &c., Clause.

3.  Warranted free from Particular Average unless the vessel or craft be stranded, sunk, or burnt, but notwithstanding this Warranty these Assurers are to pay any loss of or damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyance with any external substance (ice included) other than water, or to discharge of cargo at port of distress. **The foregoing Warranty, however, shall not apply where broader terms of Average are provided for hereon or in the certificate, declaration or special policy to which these clauses are attached.**

F.P.A. Clause.

4.  General Average and Salvage Charges payable according to United States laws and usage and/or as per foreign statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

G/A Clause.

5.  Where goods are shipped under a Bill of Lading containing the so-called "Both to Blame Collision" Clause, these Assurers agree, as to all losses covered by this insurance, to indemnify the Assured for this policy's proportion of any amount (not exceeding the amount insured) which the Assured may be legally bound to pay to the shipowners under such clause. In the event that such liability is asserted the Assured agree to notify these Assurers who shall have the right, at their own cost and expense, to defend the Assured against such claim.

Both to Blame Clause.

6.  Notwithstanding any average warranty contained herein:-

Shore Clause.

A   Where this insurance by its terms covers while on docks, wharves or elsewhere on shore, and/or during land transportation, it shall include the risks of collision, derailment, overturning or other accident to the conveyance, fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters), and/or collapse or subsidence of docks or wharves.

B   This insurance includes the risk of explosion, howsoever or wheresoever occurring during the currency of this insurance, unless excluded by the F. C. & S. Warranty or the S. R. & C. C. Warranty set forth herein.

Explosion Clause.

C   These Assurers agree to pay any landing, warehousing, forwarding and special charges for which this policy in the absence of such warranty would be liable. Also to pay the insured value of any package or packages which may be totally lost in loading, transhipment or discharge.

Warehousing & Forwarding Clause.

D   This insurance is also specially to cover any loss of or damage to the interest insured hereunder, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation or management of the Vessel (within the meaning of Section 3 of the Harter Act, 1893) by the Master, Mariners, Mates, Engineers or Pilots.

Inchmaree Clause.

7.  The Assured are not to be prejudiced by the presence of the negligence clause and/or latent defect clause in the Bills of Lading and/or Charter Party. The seaworthiness of the vessel as between the Assured and these Assurers is hereby admitted and the wrongful act or misconduct of the shipowner or his servants causing a loss is not to defeat the recovery by an innocent Assured if the loss in the absence of such

Bill of Lading &c. Clause.

wrongful act or misconduct would have been a loss recoverable on the policy. With leave to sail with or without pilots, and to tow and assist vessels or craft in all situations, and to be towed.

8. In case of damage affecting labels, capsules or wrappers, these Assurers, if liable therefor under the terms of this policy, shall not be liable for more than an amount sufficient to pay the cost of new labels, capsules or wrappers, and the cost of reconditioning the goods, but in no event shall these Assurers be liable for more than the insured value of the damaged merchandise.   **Labels Clause.**

9. When the property insured under this policy includes a machine consisting when complete for sale or use of several parts, then, in case of loss or damage covered by this insurance to any part of such machine, these Assurers shall be liable only for the proportion of the insured value of the part lost or damaged, or at the Assured's option, for the cost and expense, including labor and forwarding charges, of replacing or repairing the lost or damaged part, excluding loss, if any, sustained by payment of additional duty unless the full duty is included in the amount insured; but in no event shall these Assurers be liable for more than the insured value of the complete machine.   **Machine Clause.**

10. No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.   **Constructive Total Loss Clause.**

11. It is the duty of the Assured and their Agents, in all cases, to take such measures as may be reasonable for the purpose of averting or minimizing a loss and to ensure that all rights against carriers, bailees or other third parties are properly preserved and exercised.   **Duty of Assured.**

12. Warranted that this insurance shall not inure, directly or indirectly, to the benefit of any carrier or bailee.   **Carrier Clause.**

13. **The following Warranties shall be paramount and shall not be modified or superseded by any other provision included herein or stamped or endorsed hereon unless such other provision refers specifically to the risks excluded by these Warranties and expressly assumes the said risks:-**

    A  Notwithstanding anything herein contained to the contrary, this insurance is warranted free from capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise; also warranted free, whether in time of peace or war, from all loss, damage or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter or by any mine or torpedo, also warranted free from all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this Warranty shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purposes of this Warranty "power" includes any authority maintaining naval, military or air forces in association with a power.   **F. C. & S. Warranty.**

    Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy.

B  Warranted free of loss or damage caused by or resulting from strikes, lockouts,     S. R. & C. C.
labor disturbances, riots, civil commotions or the acts of any person or persons     Warranty.
taking part in any such occurrence or disorder.

C  Warranted free of claim for loss of market or for loss, damage or deterioration     Delay Warranty.
arising from delay, whether caused by a peril insured against or otherwise.

## NOTE

**It is necessary for the Assured when they become aware of an event which is "held covered" under this insurance to give prompt notice to these Assurers and the right to such cover is dependent upon compliance with this obligation.**

32B-10
Sept. 1, 1965
CLA214

Policy Number: JC487006

### INSTITUTE SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to remove an action to a United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

Subject to the Underwriters' rights set forth above:

(a)    It is further agreed that the Assured may serve process upon any senior partner in the firm of:

**Mendes & Mount (Attorneys), 750 Seventh Avenue, New York, N.Y. 10019-6829**

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

(b)    The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

(c)    The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgagee under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgagee.

(d)    Further, pursuant to any statute of any state, territory or district of the United States of America which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office (the Officer), as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the Officer is authorized to mail such process or a true copy thereof.

**If this clause is attached to a contract of reinsurance the terms insurance and Assured shall mean reinsurance and Reassured respectively.**

1/11/92
CL355  © Copyright The Institute of London Underwriters

Policy Number: JC487006

10/11/2003

## INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, BIOCHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.  In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1  ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2  the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3  any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

    1.4  the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes

    1.5  any chemical, biological, bio-chemical, or electromagnetic weapon.

CL 370

## Several Liability

The subscribing Insurers' obligations under this contract are several and not joint and are limited solely to the extent of their individual signed subscriptions. The subscribing Insurers are not responsible for the subscription of any co-subscribing Insurer who for any reason does not satisfy all or part of its obligations.

**BUREAU REFERENCE**      PMC060659510706

| PROPORTION % | CODE | MEMBER COMPANY AND REFERENCE |
|---|---|---|
| 51.2820000 | 3319 04 1 | ROYAL & SUN ALLIANCE INSURANCE PLC<br>C066278L06AA |
| 12.8205000 | 3162 02 9 | MARITIME INSURANCE COMPANY LIMITED<br>NOW KNOWN AS CNA INSURANCE COMPANY LTD<br>069LM05188 |
| 12.8205000 | 3798 01 5 | GE FRANKONA REINSURANCE LIMITED<br>IZ13976B06 |
| 8.5470000 | 4002 01 7 | TOKIO MARINE EUROPE INSURANCE LIMITED<br>UK5102540600MB |
| 2.5641000 | 3367 01 7 | NEW HAMPSHIRE INSURANCE COMPANY<br>C0663107823 |
| 1.7094000 | 3282 01 3 | FEDERAL INSURANCE COMPANY<br>OMC274480 |
| 8.5470000 | 3741 01 9 | GROUPAMA TRANSPORT<br>9400506 |

98.2905000 **% TOTAL**

Definit... mbers of the Syndicates and proportions



| BUREAU REFERENCE | 51108 04/05/06 | BROKER NUMBER | 0509 |
|---|---|---|---|

| PROPORTION % | SYNDICATE | UNDERWRITER'S REFERENCE |
|---|---|---|
| 1.7095 | 1414 | CA06CF773R1X |

| TOTAL LINE | No. OF SYNDICATES |
|---|---|
| 1.7095 | 1 |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS IN RESPECT OF 2006
YEAR OF ACCOUNT

BUREAU USE ONLY
USF1 57  1414

Page 1 of 1

The List of Underwriting Members of Lloyd's mentioned in the above Table shows their respective Syndicates and Shares therein, and is deemed to be incorporated in and to form part of this Policy. It is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of it certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

*IN WHITNESS WHEREOF*, the Subscribers hereunder each severally, but now jointly, and not on the part of one for the other or any of the others have caused this policy to be signed by a duly authorized officer, attorney or agent this 15th day of February, 2006

| SUBSCRIBER INSURERS AUTHORIZED SIGNATURE | | LIMIT | PREMIUM |
|---|---|---|---|
| **London Underwriters Lloyds and Lloyds of London** Policy No.  JC 487006 | Limit | $58,500,000 | $2,244,204 |
| per attached policy | | | |
| **Zurich Global Corporate, UK Limited** Policy No. JC692706 | Limit | $ 10,000,000 | $   383,625 |
| **XL Specialty Insurance Company** Policy No. UM00012841CR06A | Limit | $ 10,000,000 | $    383,625 |
| **Mitsui Sumitomo** Policy No. OCMM001130 | Limit | $ 5,000,000 | $    191,813 |
| **Tokio Marine & Nichido Fire Insurance Co.** Policy No. T06-0010666 | Limit | $ 5,000,000 | $    191,813 |

*IN WHITNESS WHEREOF,* the Subscribers hereunder each severally, but now jointly, and not on the part of one for the other or any of the others have caused this policy to be signed by a duly authorized officer, attorney or agent this 15th day of February, 2006.

| SUBSCRIBER INSURES AUTHORIZED SIGNATURE | | LIMIT | PREMIUM |
|---|---|---|---|
| **The Baloise Insurance Co Limited** Policy No. 97.5801789 | Limit | $ 4,000,000 | $  153,450 |
| **RLI Insurance Company** Policy No. CAR0300010 | Limit | $ 2,500,000 | $  95,906 |
| **Fireman's Fund Insurance Company** Policy No. OC96079200 | Limit | $ 2,000,000 | $  76,725 |
| **St. Paul Fire & Marine Insurance Company** Policy No. OC01200749 | Limit | $ 1,000,000 | $  38,363 |
| **Great American Insurance Company** Policy No. OMC5389697 | Limit | $ 1,000,000 | $  38,363 |

*IN WHITNESS WHEREOF,* the Subscribers hereunder each severally, but now jointly, and not on the part of one for the other or any of the others have caused this policy to be signed by a duly authorized officer, attorney or agent this 15th day of February, 2006.

| SUBSCRIBER INSURES AUTHORIZED SIGNATURE | | LIMIT | PREMIUM |
|---|---|---|---|
| Hartford Fire Insurance Company Policy No. 83CTPAJ7978 | Limit | $ 1,000,000 | $    38,683 |
| | | | |
| Total | Limit | $100,000,000 | $3,836,250 |