UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNETT HOLDINGS, INC. d/b/a TMC TRANSPORTATION, INC. and YELLOWSTONE TRUCKING, INC., <br><br>     Plaintiffs, <br><br>v. <br><br>CERTAIN UNDERWRITERS AT LLOYDS AND THOSE COMPANIES SEVERALLY SUBSCRIBING TO BOEING POLICY NUMBER 509/JC487006, RLI INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, TOKIO MARINE & NICHIDO FIRE INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, ROYAL & SUN ALLIANCE INSURANCE PLC, ST. PAUL FIRE & MARINE INSURANCE COMPANY, MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA, XL SPECIALTY INSURANCE COMPANY, THE BALOISE INSURANCE COMPANY, LTD., HARTFORD FIRE INSURANCE COMPANY, ZURICH GLOBAL CORPORATE, UK LTD., <br><br>     Defendants. | CASE NO.:  08 C 1106 (JHL) (NRN) <br><br> **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THIS ACTION DUE TO A PRIOR ACTION PENDING** |

Defendants, Certain Underwriters at Lloyds and those companies severally subscribing to Boeing Policy Number 509/JC487006, Royal & Sun Alliance Insurance plc, RLI Insurance Company, St. Paul Fire & Marine Insurance Company, Great American Insurance Company, Mitsui Sumitomo Insurance Company of America, Tokio Marine & Nichido Fire Insurance Company, XL Specialty Insurance Company, Fireman's Fund Insurance Company,

The Baloise Insurance Company, Ltd., Hartford Fire Insurance Company and Zurich Global Corporate, UK Ltd. (hereinafter "Defendants"), do hereby respectfully submit this Reply Memorandum in further support of our motion to dismiss this action due to the fact that there is an action pending in the Western District of Washington.

## REPLY MEMORANDUM OF LAW

The issue on this motion is now clearly framed: which action is to be deemed the first filed action, the action duly filed by the proper Plaintiffs in the Western District of Washington, or this action filed for Declaratory Judgment by certain Defendants who were under an indisputable obligation at the time to mediate and arbitrate.

Defendants submit that if the Court finds that the Plaintiffs herein were under a duty to mediate and arbitrate at the time that this action was filed, it cannot be deemed a good-faith filing, and thus the Western District of Washington action has to be deemed the first-filed action. In short, an action filed in bad faith when a party knows it is under a duty to mediate and arbitrate must be, in order to preserve the integrity the first-filed action doctrine, be deemed no action at all.

Plaintiffs attempt to confuse the issue by pointing out that at the same time that they were agreeing to a schedule for the mediation, and causing Defendants to incur expenses and to prepare a mediation memorandum, they were also putting in some of their letters in reservation of rights that they might not proceed with the mediation. That fact is of no consequence. Whether Plaintiffs reserved their rights once or ten times, the fact is that they were under a legal obligation to mediate and arbitrate, and filing this action was in derogation of that legal obligation. A hundred reservation of rights can not change that. Plaintiffs claim that Defendants unilaterally selected Washington for mediation and unilaterally selected the

mediator, retired Judge Robert F. Utter, are equally frivolous. Washington was selected because the Plaintiffs refused to even discuss a place to mediate, so we had to pick some place. We were open-minded as to the place. Plaintiffs flatly refused to mediate anywhere! (See Exhibit A to Eagan Declaration)And Judge Utter was selected by the American Arbitration Association, pursuant to their normal procedure, from a list of choices, and only after plaintiffs refused to provide any names at all! (See Exhibit B).

After evidently canvassing the fifty states, the Plaintiffs found only a single case from Texas with which to purportedly challenge their binding mediation and arbitration obligation.  See *ASW Allstate Painting & Const. Co., Inc. v. Lexington Ins. Co.,* 94 F.Supp.2d 782 (W.D. Tex. 2000).  In that case, however, there was flatly "no cause of action against the Defendant." *Id.* at 786.  In contrast, here Plaintiffs themselves admit that there is a valid cause of action, the only issue for the arbitration being the validity of a damages limitation, upon which reasonable Courts (and mediators, and arbitrators) can and have differed many times, depending on the facts of the case, the viability of the deviation doctrine, the potential existence of gross negligence and the choice of law, among a long list of issues.  It would certainly be premature for this Court, having had no discovery, to make any finding of the viability of the Plaintiffs' limitation of liability-- except to say that **it is a matter that should have been mediated and arbitrated.**[1]

The *ASW* case is also distinguishable in numerous other respects, already set forth in our initial memorandum of law at pages 6-8.  There are also serious issues in this case as to (i) whether or not Yellowstone was a party to any contract (as the transportation contract, Exhibit A to Barton Declaration, only names TMC), and (ii) whether the bill of lading and TMC contracts

---

[1] Defendants did not in the end move to compel mediation because after Plaintiffs sued it became clear that there never would be realistic good faith negotiations in any mediation.

3

are separate contracts for each trucker--thus resulting in a minimum limitation of $100,000, not $50,000.

Finally, Plaintiffs further contend that they were not forum shopping, arguing that the Ninth Circuit decision in *Vision Air Flight Service, Inc. v. M/V National Pride*, 155 F.3d 1165 (9th Cir. 1998) involved an ocean shipment and thus is not applicable to the instant action.[2] In point of fact, it is commonplace for a federal court, once it establishes that the deviation doctrine applies in admiralty, to extend it inland. *See Praxair, Inc. v. Mayflower Transit, Inc.*, 919 F.Supp. 650, 654 (S.D.N.Y. 1996) (noting that "material deviation" doctrine for trucking was directly imported by Court from "doctrine in admiralty cases"). Moreover, courts in the Ninth Circuit have also at times directly extended the maritime deviation doctrine to cover non-maritime laws. *Coughlin v. Trans World Airlines, Inc.* 849 F.2d 1432 (9th Cir. 1988). **It is in fact a matter of common knowledge, known to every experienced transportation lawyer in the country, that the Seventh Circuit is the only Circuit in the country that has considered the issue and has not (to date) accepted the deviation doctrine so as to throw out a limit of liability, in the event of extreme willful conduct by a carrier of one form or another (the various Circuits have various tests).** See Exhibit C to this memorandum. So the fact of forum shopping here is obvious.

Discovery here is expected to establish that the Plaintiff TMC herein ordered their truck driver to deliver the goods in question on a dangerous two day schedule, deviating from the normal schedule, and resulting in the truck driver driving all night, intentionally passing numerous rest stops (Exhibit D), falling asleep and coming within inches of killing innocent

---

[2] The question of whether federal or state law will apply here is a contested one, but plaintiffs have repeatedly contested that only federal law applies, making their view of it evidently paramount as an as an issue to them. As discussed in previous memos, under state law (Washington) even gross negligence voids any limit of liability.

4

people including, potentially, herself and her husband. The record will also show that TMC had a history (at least 49 convictions) of their drivers similarly rushing, intentionally driving in excess of the federal hours of service limits and falsifying their logs, and will further show that the same trucking company had no fewer than 15 fatalities and a highly deficient safety record on their watch (see Exhibits E and F to the Eagan Declaration submitted herewith). Driving while dozing is scientifically well-established to be an intentional act (see Expert Report, Exhibit G). In fact, despite being requested in the mediation (see Exhibit H), the Plaintiffs have failed to produce to Defendants the hours of service records and other supporting documents establishing whether or not the truck drivers in question here were driving beyond their hours illegally. (Numerous statements from actual truckers on http://www.thetruckersreport.com allege that TMC in 2005 was not enforcing the law concerning its drivers driving illegally.) Indeed, it was only after such request, in the course of the mediation, that this preemptive action was filed. The bottom line is that the Plaintiffs did not want this highly unusual state of affairs submitted to a court in the Ninth Circuit wherein a limitation of liability would likely not be allowed to be enforced.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that their motion be granted.

Respectfully Submitted,

MALOOF BROWNE & EAGAN, LLC

By: ___s/ David T. Maloof___
David T. Maloof, Esq.
Thomas M. Eagan, Esq.
411 Theodore Fremd Avenue, Suite 190

5

Rye, New York 10580
Tel: (914) 921-1200
Fax: (914) 921-1023
Email: dmaloof@maloofandbrowne.com

and

SCHOEN MANGAN & SMITH
Thomas P. Mangan, Esq.
200 W. Adams, Suite 1005
Chicago, IL 60606
Tel: (312) 726-5151
Fax: (312) 726-0884
Email: tmangan@schoenmslaw.com
*Attorneys for Defendants*

F://WP-Docs/2401.03/ Motion to Dismiss (Prior Action Pending)/060508 Reply Memo of Law in Further Support of Motion to Dismiss.doc

Case 1:08-cv-01106 Document 40 Filed 06/09/2008 Page 6 of 6