**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANNETT HOLDINGS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Case No. 08-cv-1106 |
| | ) | |
| **CERTAIN UNDERWRITERS AT** | ) | Judge Joan H. Lefkow |
| **LLOYDS AND THOSE COMPANIES** | ) | |
| **SEVERALLY SUBSCRIBING TO** | ) | |
| **BOEING POLICY NUMBER** | ) | |
| **509/JC487006, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Annett Holdings, Inc. d/b/a TMC Transportation, Inc. and Yellowstone Trucking, Inc. filed their complaint for declaratory judgment in this court seeking, *inter alia*, a declaration that their liability for damages resulting from a truck accident is limited pursuant to a limitation of liability provision in a service contract between TMC and the Boeing Company. Defendants are various insurance companies that insured Boeing and that collectively paid the sum of 5.75 million dollars to cover damages that resulted from the accident. They are certain Underwriters at Lloyds and those Companies Severally Subscribing to Boeing Policy Number 509/JC487006, RLI Insurance Company, Great American Insurance Company, Tokio Marine & Nichido Fire Insurance Company, Fireman's Fund Insurance Company, Royal & Son Alliance Insurance PLC, St. Paul Fire & Marine Insurance Company, Mitsui Sumimoto Insurance Company of America, XL Specialty Insurance Company, The Baloise Insurance Company, Ltd., Hartford Fire Insurance Company, and Zurich Global Corporate, UK Ltd. Defendants have filed counterclaims of breach of bailment or carrier obligations, negligence, and breach of contract.

Defendants have filed motions to transfer this case to the Western District of Washington [#14] and to dismiss this case due to a prior action pending [#29]. For the following reasons, their motions will be denied.[1]

## I.   Background

On February 1, 2006, TMC entered into a Freight/Transportation Services Agreement ("the Service Contract") with Boeing pursuant to which it agreed to transport cargo for Boeing throughout the United States. Complaint ¶ 18; Response to Motion to Transfer at 3.[2] The Service Contract included a limitation of liability provision that stated, "Liability of [TMC] for goods lost or damaged in transit shall be $2.50 per pound based on total weight of shipment." Complaint ¶ 20. It also included a choice of law provision designating Washington law. Motion at 3. Pursuant to the Service Contract and to two Bills of Lading issued by Boeing, TMC arranged for the shipment of two new Boeing jet engines from a General Electric facility in Ohio to Boeing's facilities in Tukwila, Washington. Motion, at 2; Complaint ¶¶ 21-22. On June 13, 2006, while transporting the jet engines from Ohio to Washington, a TMC truck was involved in an accident that defendants believe caused damage to the jet engines. Complaint ¶ 23.

Defendants paid Boeing $5.75 million to cover the alleged damage to the engines. Complaint ¶ 24. They made a claim against TMC for recovery of that amount. Complaint ¶ 25. Plaintiffs denied liability beyond $50,000, which they computed pursuant to the limitation of liability provision in the Service Contract. Complaint ¶ 31; Response at 2. On November 13,

---

[1] This court has subject matter jurisdiction under 28 U.S.C. § 1337(a) because the issues raised in plaintiffs' complaint arise under the Carmack Amendment, 49 U.S.C. § 14706.

[2] The facts as stated here are stated solely for the purpose of resolving these motions. They are taken from the complaint and from the parties' briefs, which are supported by affidavits and other documents, and they are undisputed except where specifically noted.

2007, defendants filed a demand for mediation against TMC with the American Arbitration Association (AAA). Complaint ¶ 28. A mediation was scheduled for March 4, 2008 in Washington. Motion at 3. Plaintiffs filed their complaint in this case on February 22, 2008.

Plaintiffs are Iowa corporations with their principal place of business in Des Moines, Iowa. Complaint ¶ 1. Defendant RLI Insurance Company is an Illinois corporation with its principal place of business in Peoria, Illinois. Complaint ¶ 3. The other defendants are incorporated and have their principal places of business in various states around the country (and the world, in the case of defendant Tokio Marine). Complaint ¶¶ 4-14. Defendants have not identified any of their number as Washington corporations or as having their principal place of business in Washington. Boeing is a Delaware corporation with its corporate headquarters in Chicago, Illinois. Boeing Homepage, http://www.boeing.com/companyoffices/aboutus/ (last visited June 10, 2008); *Vivas* v. *Boeing Co.*, 486 F. Supp. 2d 726, 728 (N.D. Ill. 2007).

## II. Motion to Transfer

This motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As a practical matter, "[t]he moving party must show that (1) venue is proper in this district; (2) venue [and jurisdiction are] proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev* v. *Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007) (citing *Bryant* v. *ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999)). The moving party bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc.* v. *Midwhey*

*Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey* v. *Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)). Since the weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, the decision to transfer is committed to the sound discretion of the trial court. *Coffey*, 796 F.2d at 219; *see also Van Dusen* v. *Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (noting that the remedial purpose of § 1404(a) requires "individualized, case-by-case consideration of convenience and fairness"); *N. Shore Gas Co.* v. *Salomon Inc.*, 152 F.3d 642, 648, n.3 (7th Cir. 1998). Each factor should be given the appropriate weight under the circumstances of the case. *Gueorguiev*, 526 F. Supp. 2d at 857.

     First, the court will address the first two factors in the test set out by *Gueorguiev*: whether venue is appropriate in the Northern District of Illinois and whether venue and jurisdiction are both appropriate in the Western District of Washington. Defendants do not dispute that venue is appropriate in the Northern District of Illinois, so that requirement is satisfied. In their opening brief in support of their motion, defendants discuss the appropriateness of venue and jurisdiction with respect to the *plaintiffs* in the Western District of Washington. They say, "This action could have been brought in the Western District of Washington because both Yellowstone and TMC have sufficient contacts with said district to subject them to personal jurisdiction there as if it were a separate state." Motion at 7 (citing 28 U.S.C. § 1391(c) ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.")). As plaintiffs point out in their response, the relevant consideration, which the defendants have the burden to show, is whether venue and jurisdiction

4

in Washington would have been appropriate as to the *defendants* when plaintiffs filed their complaint. Response, at 5 (citing, *inter alia*, *RWM Kinetics Enterprises, Inc.* v. *Kinetic Concepts, Inc.*, 1996 WL 238753, at *2 (N.D. Ill. May 7, 1996)).

In their reply, defendants cite cases that stand for the general proposition that "in many actions for declaratory judgment the realistic positions of the parties is reversed." Reply at 4 (citing, *inter alia*, *Debartolo* v. *Healthsouth Corp.*, 2006 WL 2989290, at *6 (N.D. Ill. Oct. 17, 2006) (explaining that subject matter jurisdiction over a declaratory judgment suit can be determined by examining what the nominal defendant's claims would have been in the expected suit)). This doctrine applies to subject matter jurisdiction, however, not to personal jurisdiction, which is the relevant consideration. Defendants have not cited any authority for their proposition that on a motion to transfer a declaratory judgment action, the court should examine venue and personal jurisdiction according to the alignment of the expected suit by the nominal defendants. Moreover, defendants' representation that "well before the present action was filed, counsel for Defendants proposed to consent to personal jurisdiction in Washington federal court," is not supported by their citation, which merely shows that they had suggested discussing the possibility of agreeing on a Washington forum. Additionally, their argument that they would be subject to specific jurisdiction in Washington based solely on the fact that they are insurers for Boeing and for cargo transported to its facility in Washington is not supported by their citations to the facts or to the applicable law. Because the court does not have enough

information to determine whether this case could have been brought by the plaintiffs in the Western District of Washington on February 22, 2008, the motion to transfer must be denied.[3]

In the alternative, and for purposes of providing context for the motion to dismiss, the court will also address the factors of convenience and the interests of justice. "When evaluating the convenience of the parties and witnesses – a factor that is sometimes referred to as the private interests at stake – a district court considers: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties." *Washington Nat. Life Ins. Co.* v. *Calcasieu Parish School Bd.*, 2006 WL 1215413, at *8 (N.D. Ill. May 2, 2006) (citing *Coleman* v. *Bucheit, Inc.*, 2004 WL 609369, at *1 (N.D. Ill. Mar. 22, 2004) (citing *Plotkin* v. *IP Axess, Inc.*, 168 F. Supp. 2d 899, 902) (N.D. Ill. 2001))). A declaratory judgment plaintiff's choice of forum is entitled to some weight, but not as much as is given to a plaintiff in a non-declaratory judgment suit. *Washington Nat. Life. Ins.*, 2006 WL 1215413, at *9 (citing *Hyatt Int'l Corp.* v. *Coco*, 302 F.3d 707, 718 (7th Cir. 2002)).

Plaintiffs' choice of forum is entitled to some weight, but less than it would have been entitled to if they were not declaratory judgment plaintiffs or had brought suit in their home state of Iowa. Plaintiffs persuasively explain that they filed their complaint in Illinois because it was the closest state to Iowa where they were certain that the court would have personal jurisdiction over the defendants. While defendants focus on the fact that Boeing's Commercial Airplanes Division is located in Washington, Motion at 3; Boeing Homepage,

---

[3] In the alternative, these new arguments raised by the defendants in their reply were waived. *Black & Decker Inc.* v. *Robert Bosch Tool Corp.*, 2007 WL 108412, at *11 (N.D. Ill. Jan. 12, 2007) (citing *Kelso* v. *Bayer Corp.*, 398 F.3d 640, 643 (7th Cir. 2005) (arguments made for the first time in reply brief are waived leaving the non-movant no opportunity to respond)).

http://www.boeing.com/commercial/overview/index.html (last visited June 10, 2008), the court has noted that Boeing's corporate headquarters is located in Chicago.  None of the defendants have Washington as a home state, and in fact, Illinois is the home state of the defendant RLI.  This factor weighs against granting the motion to transfer.  For the same reasons, consideration of the convenience to the parties would also weigh against granting the motion.

The material events in this case are the pickup of the engines in Ohio and the crash in Illinois.  The Service Contract was signed in Kansas and Missouri and the insurance contracts between defendants and Boeing were signed in Chicago.  The engines were destined for Boeing's facility in Washington.  Although Boeing's facility in Washington certainly had an important interest in the engines, this factor focuses on the "events" in the case, and the crash is certainly the most important event.  This is bolstered by the defendants' own contention that "[a] central issue to be determined in this case is whether or not the truck driver's conduct – intentionally driving after becoming fatigued (for an additional 139 miles past three rest stops) – a charge to which the driver did plead guilty in court – constitutes gross negligence under Washington law...." Motion at 4.  Resolution of this issue will require the court to consider testimony from witnesses located in Illinois.  This factor weighs against granting the motion to transfer.

With regard to ease of access to sources of proof, defendants state in their motion only that "No quantum of documents or other sources of proof are located in Illinois.  Instead, most of Boeing's documents regarding, *inter alia*, damages applicable to this loss are presumably located in Washington.  Furthermore, any corporate records Plaintiffs will rely on presumably will be found at their headquarters in Iowa.  Therefore, Washington is clearly the most convenient forum

with regard to access to proof." Motion at 9 (citation omitted). Stating where documents might be located is insufficient to comply with their burden to show that transfer is "clearly more convenient." The additional contentions included in defendants' reply are similarly speculative and vague. Furthermore, defendants have not shown that any documents located in Washington could not be easily transported to Illinois. *See* Response at 8-9, n.3 (citing cases). This factor weighs against granting the motion to transfer.

  The witnesses in this case, as described by the parties, are the following:

- The Boeing representative who attended an inspection of the damaged jet engines, who is located in Seattle, Washington;
- Boeing's document custodians, presumably located in Washington;
- The insurance adjustor of the claim, located in Lynnwood, Washington;
- The truck drivers, located in Oregon City, Oregon;
- One of defendant's expert witnesses, located in Northern California;
- Officer Underwood, the Illinois State Police officer who arrived at the scene of the accident, located in Illinois;
- Boeing employees who signed the Service Contract, located in Kansas and Missouri;
- TMC employees who signed the Service Contract, located in Iowa;
- A TMC employee who investigated the crash, located in Iowa;

Regardless of whether or not defendants have fulfilled their burden to show who these witnesses are and what the nature of their testimony will be, and even assuming all of their testimony will be important, there is no strong indication that either Washington or Illinois would be more convenient for the witnesses. Therefore, this factor weighs against granting the motion.

  The final consideration is whether granting the motion to transfer would serve the interests of justice. Defendants generally argue that plaintiffs are forum shopping to avoid Washington state law and that they preemptively filed this case in bad faith when they had already agreed to go forward with the mediation. "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system." *Coffey* v. *Van*

*Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). For example, "[i]n a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law." *Id*. Plaintiffs contend that they were not forum shopping, because "this lawsuit will be governed by the Carmack Amendment to the Interstate Commerce Act, which fully preempts any state laws regarding liability of carriers for loss or damage to cargo." Response at 1. They also cite and attach communications between themselves and defendants in which they repeatedly notified defendants' counsel that they did not believe they were obligated to participate in the mediation. Response at 14. It is not necessary for the court to determine at this juncture whether the Carmack Amendment completely preempts all state law because every other factor in the analysis of this motion to transfer has weighed against granting the motion, and if Washington law is ultimately found to apply, this court can interpret and apply it. Finally, the court has reviewed the communications between the parties provided by both sides and is not persuaded by defendants' allegations that plaintiffs misrepresented their intentions regarding the mediation. For all of the reasons mentioned above, defendants' motion to transfer will be denied.

**III.    Motion to Dismiss**

Plaintiffs filed their declaratory judgment complaint in this case on February 22, 2008. On April 2, 2008 (approximately six weeks later), a group of insurance companies composed of the defendants in this case filed a complaint in the United States District Court for the Western District of Washington against the plaintiffs in this case alleging breach of duties under the Carmack Amendment as well as various tort and breach of contract claims under Washington law. Ex. D to Response to Motion to Dismiss. On April 29, 2008, defendants moved to dismiss

9

this case under the "first-to-file" doctrine due to a "prior action pending" (the Washington complaint).  On May 7, 2008, the defendants filed a motion in the Washington action in which they asked that court to defer the deadline to respond to plaintiffs' motion to dismiss filed therein until after this court rules on all pending motions before it.  On May 21, 2008, the Washington court entered an order staying that case.  Ex. C to Response to Motion to Dismiss.

The parties agree that this case was filed before the Washington case.  Defendants argue that although the Washington case was filed later in time, as an equitable matter it should be deemed the first-filed action and this case should then be dismissed as the second-filed action.

The standard governing the first-to-file rule was aptly stated by Judge St. Eve in *Schwarz* v. *National Van Lines, Inc*., 317 F. Supp. 2d 829, 832-33 (N.D. Ill. 2004):

> When two similar actions are filed, the general rule favors the forum of the first-filed suit.  *MLR, LLC* v. *U.S. Robotics Corp*., 2003 WL 685504, *1 (N.D. Ill. Feb. 26, 2003) (citations omitted); *Barrington Group, Ltd.* v. *Genesys Software Systems, Inc*., 239 F. Supp. 2d 870, 873 (E.D. Wis. 2003) (citing *Warshawsky & Co.* v. *Arcata Nat. Corp*., 552 F.2d 1257, 1263 (7th Cir. 1977)).  Under this "first to file" rule, district courts normally stay or transfer a federal suit "for reasons of wise judicial administration ... whenever it is duplicative of a parallel action already pending in another federal court."  *Serlin* v. *Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (citations omitted); *Barrington Group*, 239 F. Supp. 2d at 873 (citations omitted).
>
> The Seventh Circuit, however, does not rigidly adhere to a "first to file" rule[.]  *Trippe Mfg. Co.* v. *American Power Conversion Corp*., 46 F.3d 624, 629 (7th Cir. 1995) (citations omitted).  Second-filed actions may proceed where favored by the interests of justice.  *Tempco Elec. Heater Corp*. v. *Omega Eng'g, Inc*., 819 F.2d 746, 749-750 (7th Cir. 1987).  Similarly, courts refuse to enforce the first to file rule where forum shopping motivated the first-filed action or the first-filed action constitutes an "improper anticipatory filing" made under threat of an imminent suit and asserting the mirror-image of that suit in another district.  *Barrington Group*, 239 F. Supp. 2d at 873; *MLR*, 2003 WL 685504 at *1 (citations omitted).

The equitable factors to be considered in determining whether to find an exception to the first-to-file rule track those considered in ruling on a motion to transfer under 28 U.S.C. § 1404(a). *Vanguard Products Group, Inc.* v. *Protex Int'l Corp.*, 2006 WL 695700, *4 (N.D. Ill. March 14, 2006) ("the relevant equitable considerations to be considered are (1) jurisdiction over the parties; (2) judicial efficiencies and economies; (3) convenience to the parties; (4) availability and convenience of witnesses; and (5) the extent to which the declaratory judgment action filed in another forum is anticipatory and motivated by forum shopping."); *see also Schwarz*, 317 F. Supp. 2d at 833.  Declaratory judgment actions should not always be characterized as anticipatory; and even if one is anticipatory, that does not alone warrant making an exception to the general first-to-file rule.  *Vanguard*, 2006 WL 695700, at *6.

Defendants' specific arguments are that plaintiffs did not have a good faith basis to dispute their contractual duty to mediate, permitted the planning of the mediation to proceed in bad faith, and filed the present action for the purpose of forum shopping.  They contend, "a mediation was <u>mutually</u> scheduled for March 4, 2008, in Seattle, Washington ....  Plaintiffs permitted the planning of the mediation to go forward.  However, it appears they never harbored any intention of complying with their contractual duty; instead, on the eve of the scheduled mediation and without warning, they filed the instant action to avoid their obligations."  Motion to Dismiss at 6 (emphasis in original).

As discussed above, the court is not persuaded that plaintiffs misled the defendants regarding their intention to mediate.  Plaintiffs cite six instances between November 20, 2007 and February 15, 2008 when they advised the defendants that they did not believe they had an obligation to mediate.  For example, on January 7, 2008, plaintiffs advised, "Not to belabor this

11

issue, but I want to remind everyone that we do not agree that there is an absolute obligation to engage in mediation under the circumstances of this case. As indicated in my prior letter, we are willing to identify a date in March for a possible mediation, but reserve the right to decline to participate in the mediation." Response to Motion to Transfer at 14 (citing Exhibit G thereto).

Defendants next argue that plaintiffs have no good faith basis to refuse to mediate and that their filing of this complaint is itself proof of bad faith. They cite a mediation provision in the Service Contract and contend that they are subrogated to Boeing's rights under that provision. Plaintiffs respond that they do not have a duty to mediate because they have already offered to pay $50,000 pursuant to the Service Contract and defendants do not have the right to coerce any further reimbursement from them. The parties disagree about whether defendants demanded that the mediation take place on their terms, contrary to the mediation provision's requirement that it take place at a mutually agreed upon location, or whether plaintiffs were at fault for refusing to cooperate with the preparations.

It is not necessary for the court to determine whether there was a duty to mediate in this case because none of the other factors weigh heavily in favor of dismissal, and even if there was such a duty, the filing of a lawsuit cannot alone be sufficient for a finding of bad faith. Furthermore, defendants have decided to waive mediation and arbitration and proceed in court. Motion to Transfer at 6 n.5. Finally, defendants argue that plaintiffs are forum shopping to avoid Washington law and Ninth Circuit law. For the reasons stated above, plaintiffs had legitimate reasons for filing their complaint in this court. The interests of justice do not favor dismissal and defendants' motion to dismiss will be denied.

**IV.    Order**

Defendants' motions to transfer [#14] or to dismiss [#29] are denied. This case will be called for status on June 24, 2008 at 9:30 A.M.

Dated: June 12, 2008            Enter: _____
                                       Joan H. Lefkow
                                       United States District Judge